## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELLEN MACKLIN DIMURO and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ESTĒE LAUDER, INC. and CLINIQUE LABORATORIES, LLC,<br><br>Defendants. | Civil Action No._____<br><br><br><br>**CLASS ACTION COMPLAINT and<br>DEMAND FOR JURY TRIAL**<br><br><br>Dated:  December 20, 2012 |

Plaintiff, by her attorneys, on behalf of herself and all others similarly situated, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      The search for eternal youth and beauty is hardly new.  For centuries men and women have attempted to forestall the inevitable aging process by cosmetic and surgical means.  Indeed, throughout history there has been no shortage of products, including the infamous "snake oil" tonic from a by-gone era, that purport to "cure" the "disease of old age."

2.      Today, the search for a youth potion continues and, like a modern-day snake oil salesman, Estēe Lauder, Inc. through its Clinique branded products, and/or manufactured by Clinique Laboratories LLC and/or Clinique Laboratories

Dist. ("Estēe," "Clinique," or "Defendants"[1]) preys on consumers' primal fear of aging and their eternal hope that products exist that can eliminate the signs of aging and effectively turn back time.

3.      In fact, Estēe goes so far as to claim on the product packaging for its Youth Surge Night Age Decelerating Moisturizer that the product's "youth conserving agents" are "quite like a fountain of youth."

4.      Estēe engages in such false, deceptive, or misleading conduct because it profits handsomely from its claims that its products, including those from the Repairwear collection, specifically Zero Gravity Repairwear Lift Firming Cream, Repairwear Laser Focus Wrinkle & UV Wrinkle Damage Corrector, Repairwear Uplifting Firming Cream, Repairwear Uplifting Firming Cream Broad Spectrum SPF 15, Repairwear Intensive Night Cream, Repairwear Intensive Eye Cream, Repairwear Laser Focus Wrinkle Correcting Eye Cream (collectively "Repairwear Products"), the Youth Surge collection, specifically Youth Surge Night Age Decelerating Moisturizer, Youth Surge Age Decelerating Moisturizer Broad Spectrum SPF 15, (collectively "Youth Surge Products"), and the Turnaround Collection, specifically Turnaround Concentrate, Turnaround Overnight Radiance Moisturizer, and Turnaround Instant Facial (collectively "Turnaround Products")

---

[1] As the precise corporate structure of Defendants is unclear at the time of filing, Plaintiff reserves the right to add additional Defendants should it become necessary as discovery progresses.  In addition, because the products themselves reference Clinique Laboratories Dist., while the advertisements and websites do not, the use herein of one of the Defendants shall not be deemed to exclude any other.  The Defendants have made it impossible for a consumer to determine which entity in fact produces, distributes, and sells the various Clinique Products.

(together, "Clinique Products") have specific, age-negating effects on the human skin.

5.     As explained more fully herein, Estēe has made, and continues to make, deceptive, false, or misleading claims and promises to consumers about the efficacy of its Clinique Products in a pervasive, nation-wide marketing scheme that confuses and misleads consumers about the true nature of the products and the results they provide.  In reality, the Clinique Products do not live up to the efficacy claims made by Estēe.

6.     Estēe knows this, yet designs its marketing and advertising campaign to include indicia of scientific research and discovery alongside promises of specific results for the sole purpose of misleading and deceiving consumers.  As a result, Estēe's marketing pitch is the same as that of the quintessential snake-oil salesman – Estēe dupes consumers with false and misleading promises of results it knows it cannot deliver, and does so with one goal in mind – reaping enormous profits.

7.     Indeed, the only reason a consumer would purchase the Clinique Products instead of lower-priced moisturizers, which are readily available, is to obtain the unique results that Estēe promises.

8.     A direct effect of this pervasive and deceptive marketing campaign is that consumers across the country, including Plaintiff and the proposed Class, relied upon Estēe's false, deceptive, or misleading misrepresentations and purchased skin-care products that do not, and cannot, provide the results promised.

9.     Estēe's false, deceptive, or misleading statements about the efficacy of a particular product are equally applicable to each of the products within that specific collection.  For example, for the Repairwear Products, Estēe specifically promises that the unique Repairwear formula will rebuild firming collagen and cause wrinkles to "disappear" by 63% (face) and 54% (eye area) respectively.  Accordingly, because Estēe repeats essentially the same misleading efficacy promises for each of the Repairwear Products, the misleading claims touting the supposed benefits are equally applicable to all of the Repairwear Products.  The same holds true for the Youth Surge and Turnaround lines of products.

10.     In addition, Estēe frequently markets across its Clinique Products product lines.  For example, on the web page extolling the efficacy claims for Youth Surge Age Decelerating Moisturizer Broad Spectrum SPF 15, Estēe also suggests using Repairwear Intensive Eye Cream.

11.     Moreover, on the Clinique web page that comes up when a consumer clicks on the concern "De-Aging" (see screen shot below), Estēe makes the following efficacy claims without regard to any one specific product: "Defend & Rescue: Protect skin from the visible effects of emotional and environmental stresses"; "Repair Lines & Wrinkles: De-aging powerhouses work to repair and help slow visible aging 24/7"; "Firm & Lift Contours: Help skin rebuild firming natural collagen to appear smoother, more lifted."  Because none of these efficacy claims are product specific, consumers seeking information about products which purport to

4

address "De-Aging" concerns are exposed to broad-based efficacy claims that encompass multiple Clinique Products.



12.    Estēe's marketing campaign for each of the Clinique Products also follows the same deceptive pattern and practice – Estēe makes specific efficacy promises supported, for example, by pseudo-scientific references or purported "Before and After" photos that deceive and mislead consumers into believing that Clinique Products will provide the promised results.  Such promises are deceptive and misleading.

13.    Another example of Estēe's pattern and practice of deceptively marketing Clinique Products is the misleading claim that the products address the

concern of "De-Aging."  This claim suggests to consumers that the Clinique Products are actually able to reverse the aging process and/or the signs of aging.[2]  Estēe makes this misleading claim despite knowing full-well that no ingredient in its Clinique Products is able to reverse the signs of aging.

14.   Estēe sells its Clinique Products to consumers in a different manner than less expensive wrinkle creams or moisturizers, which affects the manner in which Plaintiff and the Class are exposed to the false and deceptive claims.  While lower-priced consumer products are available on the shelves of drug stores and supermarkets, the Clinique Products are sold mainly over counters at high-end department stores.  Sales persons who are specifically trained and compensated by Estēe to sell its Clinique Products and who are provided with a regularly updated reference "Sourcebook" touting the efficacy claims for each of its products, routinely occupy the counters, where Estēe also provides consumers access to product displays and sales brochures.  Accordingly, instead of making a side-by-side comparison of product packaging on store shelves, consumers of the Clinique Products decide to purchase these products almost exclusively by virtue of marketing campaigns that reach consumers before they enter the retail outlets (i.e., print media advertisements, television commercials or internet marketing) or over-the-counter sales and advertising.

---

[2] The prefix "de" means to reverse the action of or to remove.  *See* The American Heritage Dictionary, available at http://americanheritage.yourdictionary.com/de-prefix, last accessed 12/20/12; Webster's New World Dictionary, available at http://websters.yourdictionary.com/de-prefix, last accessed 12/20/12.

15.     Plaintiff and the Class were exposed to Estēe's pervasive, deceptive, or misleading advertising messages and material omissions regarding the efficacy promises of the Clinique Products and relied on those material misstatements and omissions in deciding to purchase Clinique Products.

16.     Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers in the United States of at least one of the Clinique Products ("the Class") at any time from the date of product launch for each of the Clinique Products to the present (the "Class Period") for violation of consumer protections laws including, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§42-110a, *et seq.*,  breach of express warranty, unjust enrichment and for violations of the consumer fraud laws of the various states.  Pending completion of discovery, Plaintiff may seek leave to amend the Class definitions.

17.     Plaintiff seeks relief individually and on behalf of a nationwide class and a subclass of residents of her home state of Connecticut.

## THE PARTIES

18.     Plaintiff Ellen Macklin DiMuro is a citizen of the State of Connecticut, residing in New Haven County.  Plaintiff purchased Repairwear Intensive Night Cream from Macy's department store in Milford, CT at the Westfield Shopping Town mall and on the Clinique website at www.clinique.com during the Class Period for personal use.  As set forth in greater detail below, Plaintiff saw, read, and received Estēe's material misrepresentations as described more fully herein, including Estēe's many false and misleading product claims and relied on those

material mis-statements in making her decision to purchase the Clinique Products. Plaintiff would not have purchased Repairwear Products had Estēe not made such false and deceptive claims and instead disclosed the true nature of its products.

19.     Defendant Estēe Lauder, Inc. is a Delaware corporation with its principal place of business in New York, New York.

20.     Defendant Clinique Laboratories, LLC is a Delaware limited liability company with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)   because   there   are   more   than   100   class   members   and   the   aggregate amount in controversy exceeds $5 million exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

22.     Pursuant to 28 U.S.C. §1391, venue is proper in this Court because Defendants conduct business in this District and a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## GENERAL FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### I.  Estēe's Misleading Efficacy Claims

23.     A central theme of Estēe's deceptive marketing campaign for Clinique Products, which permeates throughout its print and web-based advertisements, product packaging, sales brochures, and in-store displays is that the Clinique Products, and the results promised, will provide specific age-negating benefits.

24.     For example, among other things, Estēe specifically promises:

Zero Gravity Repairwear Lift Firming Cream

- To firm up, you don't have to move a muscle – just let this power formula help skin "defy" gravity.  It achieves this uplifting feat by helping skin rebuild firming natural collagen.  Skin appears smoother, more lifted.
- An instant firming sensation goes on to deliver visible, measurable lift and firming cushion, fueled by a Peptide complex. (That's proteins, if you didn't know.) Patented* formula helps block and mend the look of lines and wrinkles.

Repairwear Uplifting Firming Cream

- Helps restore dermal cushion in as little as 4 weeks.
- Moisture-rich cream boosts natural elastin and collagen – the stuff that gives skin its snap
- Helps organize skin into a tighter, stronger network.
- Helps rebuild elasticity and firmness, helps visibly smooth out laugh lines from nose to mouth
- New firmness helps visibly sculpt jawline
- Strengthen and rebuild skin's elasticity and resistance to gravity

Repairwear Uplifting Firming Cream Broad Spectrum SPF 15

- Light, richly moisturizing cream that visibly tightens, lifts and firms the face and neck to rebuild skin's youthful appearance with the added important SPF15 protection benefit.
- The unique formula helps empower skin to "defy" gravity by helping rebuild firming natural collagen.

Repairwear Intensive Night Cream

- Works all night to help block and mend the look of lines and wrinkles.
- Rebuilds stores of firming natural collagen.
- Fuels 24-hour antioxidant replenishment that arms skin for tomorrow.

Repairwear Laser Focus Wrinkle & UV Wrinkle Damage Corrector

- In 4 weeks, this product delivers an obvious reduction in lines and wrinkles while improving skin's overall texture.
- Based on decades of scientific research, this potent serum enlists peptides to visibly help repair lines and wrinkles.
- A patented enzyme blend also works to mend sun's visible damage.

- At 12 weeks, its visible wrinkle-reducing power comes remarkably close to the profound wrinkle repairing results of a dermatological laser procedure.
- Clinique guarantees impressive results and your best, most beautiful skin.
- **Research results:**
  Proven to deliver 63 percent of the visible wrinkle-reducing power of a laser procedure at 12 weeks.
- Wrinkle and UV damage corrector.

Repairwear Laser Focus Wrinkle Correcting Eye Cream

- See your entire eye area visibly improved starting in 4 weeks.
- Then, we went beyond our usual clinical testing and invented a unique test to prove "smile lines" around eyes disappear by 54% in 12 weeks.

Repairwear Intensive Eye Cream

- **What it is formulated to do:**
  This potent antiaging eye cream stimulates skin's natural repair functions, specifically targeting the appearance of eye-area lines and wrinkles. It replenishes antioxidants to strengthen vulnerable skin for a brighter, more vibrant, and refreshed look.
  Potent moisturizer to repair and prevent the appearance of lines, wrinkles.
- **What else you need to know:**
  This patent pending product is ophthalmologist tested and ideal for all skin types.

Youth Surge Night Age Decelerating Moisturizer

- **What it is:**
  A youth-extending moisturizer with repair-boosting ingredients that go to work while you're at rest.

  **What it is formulated to do:**
  This nightly moisturizer uses Sirtuin, a patent-pending technology from Clinique that intensifies the nightly cycle of natural repair. This product's potent, youth-extending agents boost collagen and calm the effects of environmental irritants – helping skin to reset the clock. Lines and wrinkles appear to evaporate. By morning, skin gains an energized "eight-hour effect."
- Clinique science uses youth-conserving agents for a nightly moisturizer quite like a fountain of youth.
- Intensifies natural cellular repair.
- The hard work of lifting lines and wrinkles takes time. In about 4 weeks you will begin to see measurable, visible improvement.

<u>Turnaround Concentrate</u>

- **What it is:**
  A concentrated serum that instantly reveals healthy radiance so skin seems
  to glow from within. Instantly reveals newborn skin.  This high-performance
  serum brings fresh, vibrant cells to the surface.
- **What it is formulated to do:**
  This silky, oil-free serum gently replaces dull, worn-out surface cells with
  livelier, more luminous ones. Skin breathes and accepts moisture better.
  Then it optimizes up-and-coming cells to help the best and brightest emerge.
  Day after day, skin becomes smoother, younger-looking, and more radiant.

<u>Turnaround Overnight Radiance Moisturizer</u>

- An overnight moisturizer that tones, retexturizes, and plumps skin.
- **What it is formulated to do:**
  This moisturizer goes to work while you sleep to optimize new cell turnover
  and help the best and brightest emerge. It pumps in moisture to help tone,
  retexturize and plump skin from the inside out.

<u>Turnaround Instant Facial</u>

- In 5 minutes, this high-performance facial delivers all the radiance and
  smoothness of microdermabrasion-with significantly less irritation and stress
  to skin.
- Promotes surface cell turnover on multiple levels to instantly unveil skin
  that's fresher, more vibrant and even-toned.

25.     The foregoing efficacy claims are false, deceptive or misleading.

26.     In fact, while such science-oriented claims provide Estēe's Clinique

Products with an increased level of credibility among unsuspecting consumers, and

therefore increased sales, the purported scientific-sounding claims are simply part

and parcel of Estēe's deceptive and misleading advertising campaign.

27.     One of the reasons Estēe saturates its marketing campaigns with

misleading scientific references, such as references to patents and dermatologic

procedures, is that it knows that such repeated and pervasive references makes it

11

more likely that consumers will believe that its products are approved by the Food and Drug Administration ("FDA"), when in fact they are not. Estēe knows that consumers who believe that the Clinique Products have received FDA approval are more likely to believe Estēe's false efficacy promises and therefore more likely to purchase the Clinique Products. Indeed, if Clinique Products actually "deliver 63 percent of the visible wrinkle-reducing power of a laser procedure," "rebuild elasticity or firmness," "rebuild stores of natural collagen," "empower skin to defy gravity," "organize skin into a tighter, stronger network," "rescue skin from the visible effects of emotional and environmental stresses," "help slow visible aging 24/7," "intensif[y] natural cellular repair," or provide the other promised age-negating results described herein, they would trigger regulation by the FDA as a drug.

28.   Estēe relies on promises of specific results backed up by the indicia of scientific reliability (*e.g.*, patents, tests, "dermatological solutions," and comparison to cosmetic procedures, like laser treatment) because it knows that such science-oriented claims render consumers more likely to believe the empty efficacy promises, and therefore more likely to purchase its products.

29.   Even if one or more of Clinique's claims is literally true, when viewed in their totality, the promises made by Estēe regarding the efficacy of the Clinique Products are nevertheless misleading to the average consumer and are therefore actionable regardless of their literal truthfulness.

30.     Moreover, to the extent that the Clinique Products provide any of the promised results, such results are merely temporary.  Estēe knows this, yet fails to disclose it to consumers, leaving Plaintiff and the Class with the belief that the promised age-negating benefits will be permanent.

## II.   Clinique's Misleading and Deceptive Visualization and Before and After Tools

31.     Estēe compounds its false, misleading and deceptive efficacy claims by providing consumers with illustrations of the results consumers can expect from using its products.   Indeed, a central component of Clinique's website allows consumers to visualize their specific results through Clinique's "Virtual Skin Care Tool."



32.     This online marketing tool purports to allow consumers to:

See for yourself what Repairwear Laser Focus can do for your
skin.  This virtual preview will show you the potential wrinkle
reducing effects after 12 weeks of consistent use.  What you'll
notice: a softening of lines, wrinkles, sun damage.  Get started
now and discover results remarkably close to a dermatological
laser procedure – 63% to be exact.

33.     In order to "see for themselves" consumers have the option to upload a

photograph so that they can see the personal changes that Estēe promises by using

the Repairwear Product.

34.     If the customer does not have a picture available, Estēe provides the

option of "selecting a model" to see the Before and After results.   The results are

then presented as a series of pictures that purport to show how the Estēe product

eliminates wrinkles:



35.     While Estēe claims, via an asterisk with microscopically small type at the bottom of the page, that its "Visualize Your Results" section is a mere "dramatization," and that "actual result[s] may vary," Estēe affirmatively claims that the results "dramatiz[ed]" actually do "represent[] average results."

36.     The combination of these two contradictory concepts – a dramatization that supposedly represents actual average results – is deceptive and misleading to reasonable consumers, because a dramatization cannot depict actual or real results – it can only depict someone's fictional interpretation of results.   Thus, even if consumers read the small print in asterisk, they are left with the impression that they will obtain, on average, the results "dramatized" in the picture, which is impossible.

37.     Estēe further compounds this deception by providing consumers with what it claims are "real Before and After" results over time and instantly:

Over Time:



Instant Results:



38.    These "Real Before-and-Afters," which are also found in the product brochures provided at Clinique's in-store sales counters, do not have any disclaimers and therefore leave consumers with the impression that the results pictured can be expected when consumers decide to purchase the Clinique Products.

39.    Such before and after pictures and visualizations further reinforce the deceptive, false, and misleading efficacy promises made by Estēe and leave consumers with the mistaken belief that the use of the Clinique Products will erase or remove their wrinkles.

40.    Unfortunately for consumers, these promises are illusory.    Clinique Products cannot remove wrinkles.

### III.    Guaranteed Results



41.     Clinique outfits its sales counters at many department stores with displays (such as the one appearing above) that include IPADs with an application devoted to assisting consumers in their selection of Clinique Products.   The application, which is also accessible to consumers on the Clinique website, asks a series of questions pertaining to skin concerns, processes over 180,000 product combinations, and culminates in a "Skin Consultation Printout" that identifies Clinique-recommended products and a "customized plan with results guaranteed."

42.     Thus, through the use of this marketing tool, Estēe promises that no matter what combination of answers a consumer gives to the application questions, the recommended Clinique Products (out of more than 180,000 possible combinations) will provide results that are guaranteed.

43.     Estēe makes similar guaranteed results promises for other products, including Repairwear Laser Focus Wrinkle & Damage Corrector, for which it states "Clinique guarantees impressive results and your best, most beautiful skin."

## IV.     Product Cycles

44.     To perpetuate its deceptive and misleading scheme, Clinique has a short product cycle, releasing new products every few years based upon some new "research" or purported new ingredient.   Clinique does so in order to falsely tout its new products via a re-imagined marketing campaign in order to keep driving sales and profits that would otherwise stagnate once consumers used the products and realized that they do not perform as promised.   This scheme is evidenced by the fact that Clinique discontinues sales and production of its older products once new

18

products are introduced to the market, despite the fact that the claims made on the discontinued products are seemingly amazing scientific breakthroughs.

45. For example, Clinique's Zero Gravity Repairwear Lift Firming Cream has been discontinued despite the fact that it was made of a patented formula that purportedly "deliver[ed] visible, measureable lift and firming cushion, fueled by a Peptide complex."

46. Estēe's discontinuation of purportedly effective products, like Zero Gravity Repairwear Lift Firming Cream, from the market demonstrates that Estēe's promised benefits are illusory and nothing more than deceptive marketing.

## IV. Clinique's Pervasive and Misleading National Marketing Campaign

47. Clinique's pervasive false, deceptive, or misleading national marketing campaign includes the dissemination of deceptive advertising through a variety of mediums including, but not limited to, internet, television, and print media. Many of the same deceptive and misleading statements are also printed on the product handouts, product packaging, and sales brochures available to consumers at Clinique counters in department stores.

### A. Internet and Television Marketing

48. Clinique's internet marketing includes, among other things, video presentations, statistical data, and question and answer information on its own website, Clinique.com. Many of its commercials and promotional videos are also readily accessible on youtube.com and on third party websites such as Macys.com.

Each of these sources provides consumers access 24 hours a day, 7 days a week, to Estēe's deceptive advertising.

49.    Examples of the online videos include the video below, which is currently available on Clinique.com, youtube.com, and other third party websites, and which purports to show the benefits of the Turnaround products, including their ability to "speed fresh cells to the surface":



## Say goodbye to dullness.
How our Turnaround team transforms skin from dull to vibrant.

USE THE SLIDER BELOW TO SEE THE BENEFITS OF VIBRANT SKIN



### Turnaround products
- Sweep away skin's dull, flaky, tired surface.
- Speed fresh cells to the surface, revealing your brightest, smoothest, healthiest skin.

DULL                    VIBRANT

## Say goodbye to dullness.
How our Turnaround team transforms skin from dull to vibrant.

USE THE SLIDER BELOW TO SEE THE BENEFITS OF VIBRANT SKIN

### Turnaround products
- Sweep away skin's dull, flaky, tired surface.
- Speed fresh cells to the surface, revealing your brightest, smoothest, healthiest skin.

DULL                    VIBRANT



50.    Similarly, this television commercial for Repairwear Laser Focus, which is also currently available on Clinique.com, youtube.com, and other third party websites purports to show the benefits of using the Repairwear Products, which include the ability of Repairwear to "smooth lines" and "repair UV damage." The commercial goes on to direct consumers to Clinique.com where they can see for themselves the "proof" of the benefits of Repairwear, which, as discussed above, includes use of the misleading Virtual Skin Care tool (as discussed in part II above):



Now Clinique says, forgive the past



Protect the future



A serum that helps visibly…



…repair UV damage



Improves skins' texture



And smoothes eye-area lines and wrinkles.  The difference will astound you.



See 63% of…



…the visible wrinkle reducing power of a dermatological laser procedure.



Now a second chance for every skin.



Repairwear Laser Focus from Clinique.



B. <u>Print Media and Sales Brochures</u>

51.     Estēe markets its Clinique Products in print media, including the placing of advertisements in such widely circulated magazines as Glamour, Cosmopolitan, Allure, among others.

52.     The specific dates and places of each of Estēe's advertisements for Clinique Products are in the possession of Defendant.

53.     Estēe also makes sales brochures and product handouts available at Clinique counters in department stores.  These sales brochures and product handouts contain much of the same deceptive or misleading efficacy claims as those that appear on the Clinique website and in other advertising media.  For example, in one sales brochure, Estēe touts that Repairwear Intensive Eye Cream will "repair and prevent the appearance of lines, wrinkles."  This efficacy claim is misleading to consumers on multiple levels.  First, it makes no sense to claim that a product can "repair" the *appearance* of something, so the logical interpretation of this claim is

that the product can actually repair the lines and wrinkles themselves (compared to "reducing" the appearance of lines, wrinkles). Similarly, the "prevent" claim only makes sense if consumers conclude that Estēe is promising that the product can prevent lines and wrinkles from appearing in the first instance, as opposed to preventing the appearance of lines and wrinkles that already exist (an obvious impossibility). In fact, while the use of the "appearance of lines, wrinkles" language is an attempt to remedy the deceptive nature of the marketing message, the attempt fails because it conveys a conflicting and misleading message. Consumers are left with the false and misleading impression that Repairwear Intensive Eye Cream will actually "repair" their lines and wrinkles and/or "prevent" their lines and wrinkles from appearing in the first place.

54.     The use of the "repair" and "prevent" language is a clear attempt by Estēe to separate itself from more common efficacy claims such as "reduces the appearance of lines and wrinkles." Estēe intentionally makes the choice to convey a more highly efficacious – and more misleading – message in order to convince consumers that its products are superior to its competitors, and therein drive sales and profits.

55.     Another example of the in-store sales brochures provided by Estēe for the Clinique Products is the following, which regurgitates many of the same efficacy claims made elsewhere:



A second chance for every skin.

"Today, it's possible to use skin care products to treat the visible signs of aging, resist irritation and prevent further UV-damage."

— Clinique guiding dermatologist

**CLINIQUE**

Allergy Tested. 100% Fragrance Free.

### What ages my skin?

Our guiding dermatologists believe that genes play a smaller role than many factors you can control. To start, daily sun protection. Did you know as much as 80% of all skin damage before age 60 is considered sun-related?

Then, lifestyle choices of diet, exercise, smoking, etc. speed or slow the clock. So do stress and erratic daily skin care.

### Can I age-proof my skin… or slow the clock?

Look younger, longer. It really can be done. And it's a lot simpler than you might think. Clinique has customized solutions to address your concerns at every age.

Our dermatologist-developed daily care routine is a simple, efficient way to get skin into top working order. And our gentle, everyday sun protection helps skin escape the damage from aging (UVA) and burning (UVB) rays.

### Let's get you started.



### Repair lines and wrinkles.

**Day and night**

☐ **Repairwear Laser Focus Wrinkle & UV Damage Corrector**
In 4 weeks, see obvious reduction in wrinkles and improved texture from sun damage. At 12 weeks, see 63% of the wrinkle-reducing power of a dermatological laser procedure. Different commitment, different results, and yet impressive results guaranteed.

**By day**

☐ **Youth Surge Age Decelerating Moisturizer Broad Spectrum SPF 15**
Thanks to youth-extending agents, lines and wrinkles seem to evaporate, replaced by plump, vibrant skin. With UVA/UVB protection.

My Skin-Typed formula _____

**By night**

☐ **Youth Surge Night Age Decelerating Night Moisturizer**
Intensifies the natural nightly cycle of natural repair to visible effect. Skin looks rested, vibrant.

My Skin-Typed formula _____



How Repairwear Laser Focus softens the look of lines, wrinkles and sun damage.

Before

After 12 weeks



C. <u>Sales Representatives</u>

56.    Upon  information  and  belief,  Estēe  also  provides  training  and disseminates  uniform  information,  including  a  regularly  updated  "Sourcebook" detailing the false or deceptive efficacy claims, to Clinique sales persons who work the  Clinique  counters  at  department  stores,  like  Macy's  and  others.    These department store sales representatives, to whom Estēe provides a portion of their compensation,  are  trained  by  Estēe  to  parrot  and  reinforce  the  same  purported benefits  of  using  the  Clinique  Products  as  contained  in  Estēe's  other  forms  of advertising.

D.    Use of Models

57.    Estēe makes further use of print, television, and internet advertising, wherein Estēe touts the benefits of its Clinique Products using models who claim to exemplify the results of the products.

58.    What Estēe fails to disclose is that the images of the models it uses are airbrushed, digitized, embellished, "Photo-shopped," or otherwise altered and, therefore, contrary to the claims made by Estēe, cannot and do not illustrate the effectiveness of its products.  In sum, the images used by Estēe to sell its Clinique Products have nothing to do with the effectiveness of the products themselves.

59.    Most recently, the National Advertising Division in the United States has taken a stance against the use of Photoshop in cosmetics advertising, noting that "[a]dvertising self-regulatory authorities recognize the need to avoid photoshopping in cosmetics advertisements where there is a clear exaggeration of potential product benefits."

60.    Such deceptive use of models only further illustrates the lengths to which Estēe will go to trick consumers to make a profit.

**V.   The Results of Clinique's Deceptive Conduct**

61.    Ignoring the inability of the Clinique Products to provide the promised results, Estēe's pervasive false and misleading marketing campaign leaves consumers with the impression that its products are uniquely able to provide certain age-negating effects on human skin.

62. Estēe also is aware that, because of the aging population, consumers are increasingly susceptible to such deceptive marketing and advertising and that such marketing and advertising will continue to yield it ever-greater profits.

63. Estēe is in a position to actually know, or should know, that the promised results are not possible, *i.e.* its Clinique Products cannot "deliver 63 percent of the visible wrinkle-reducing power of a laser procedure," "rebuild elasticity or firmness," "rebuild stores of natural collagen," "empower skin to defy gravity," "organize skin into a tighter, stronger network," "rescue skin from the visible effects of emotional and environmental stresses," "help slow visible aging 24/7," "intensif[y] natural cellular repair," or provide the other promised age-negating results described herein. Estēe fails to disclose that its Clinique Products do not perform as promised.

64. Clinique compounds this deception with misleading Before and After photos and the personal visualization of results via the Virtual Skin Care Tool that purport to demonstrate expected results, further enticing consumers to purchase and use the product. The claims of efficacy based on "dramatized" promises of actual performance are a material and important factor in its marketing campaign because Estēe knows that consumers are more likely to believe efficacy promises, and purchase Clinique Products, when consumers see purported Before and After results.

65. In addition to the material misrepresentations as described herein, Defendants' actions are likewise actionable based on their material omissions,

which similarly induced Plaintiff and the Class to purchase the Clinique Products. For example, Defendants have failed to disclose the following:

- That none of the Clinique Products provide unique benefits that cannot be found in other, less expensive products; and

- That any benefits actually provided by the use of the Clinique Products are only temporary.

66.    As a result of its deceit, Estēe has reaped massive profits.   Such enormous profits would not have occurred but for Estēe's deceptive and misleading marketing and advertising campaign.

67.    Estēe charges a premium for its Clinique products.  Plaintiff and the Class would not have paid premium prices for the Clinique Products had they known the truth regarding the deceptive marketing promises.

68.    Moreover, Plaintiff and the Class believed they were purchasing Clinique Products that would provide the promised age-negating benefits as detailed herein.  In reality, although Plaintiff and the Class paid for these unique Clinique Product benefits, they did not get what they paid for.   Instead, the products Plaintiff and the Class purchased did not provide the promised age-negating results.

69.    As a result and because of Estēe's deceptive marketing, Plaintiff and the Class have been and continue to be harmed in their purchases of the Clinique Products.

## CLASS ACTION ALLEGATIONS

70.   Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3) on behalf of the following nationwide consumer class (the "Class"):

> All purchasers of at least one of the Clinique Products in the United States from date of product launch to the present (the "Class Period").  Excluded from the Class are Defendants, their parent, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

71.   Plaintiff also seeks to represent a subclass defined as all members of the Class who purchased one or more Clinique Products in Connecticut (the "Connecticut Subclass").

72.   Members of the Class and the Connecticut Subclass are so numerous that their individual joinder herein is impracticable.  Members of each of these classes number in the tens of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party sales people.

73.   Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

> (a)    whether Defendants were unjustly enriched by their conduct;

(b)     whether Defendants breached an express warranty made to Plaintiff and the Class;

(c)     whether Defendants advertise or market the Clinique Products in a way that is false or misleading;

(d)     whether Defendants concealed from Plaintiff and the Class that its Clinique Products do not provide the promised results;

(e)     whether, by the misconduct set forth in this Complaint, Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sales of its Clinique Products;

(f)     whether Defendants violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§42-110a, *et seq.*;

(g)     whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

74.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct. Plaintiff has no interests antagonistic to the interests of the other members of the Class.  Plaintiff and all members of the Class have sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

75.     Plaintiff is an adequate representative of the Class because her interest does not conflict with the interests of the Class members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

76.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.   Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violations of Connecticut General Statutes §§42-110a, *et seq*.
### The Connecticut Unfair Trade Practices Act ("CUTPA")

77.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

78.     Plaintiff brings this action on behalf of herself and on behalf of members of a Connecticut state-wide class.

79.     The actions of Defendants alleged herein were carried out in the conduct of its primary business described above, which includes "the offering for sale … [of a] commodity or thing of value in this state."  Conn. Gen. Stat. §42-

110a(4).  Thus, the actions of Defendants occurred "in the conduct of any trade or commerce."  Conn. Gen. Stat. §42-110b(a).

80.    The actions of Defendants alleged herein have violated CUTPA in that they constituted unfair acts and/or deceptive practices prohibited by CUTPA because Estee is in a position to actually know, or should know, that the promised results are not possible, *i.e.* its Clinique Products cannot "deliver 63 percent of the visible wrinkle-reducing power of a laser procedure," "rebuild elasticity or firmness," "rebuild stores of natural collagen," "empower skin to defy gravity," "organize skin into a tighter, stronger network," "rescue skin from the visible effects of emotional and environmental stresses," "help slow visible aging 24/7," "intensif[y] natural cellular repair" or provide the other promised age-negating results described herein. Thus, Defendants' acts and/or practices as alleged herein were unfair and/or deceptive, in part, because:

    a.    they violate Conn. Agencies Regs. §42-110b-18, which prohibits false advertising in that Defendants made untrue and misleading efficacy statements relating to the Clinique Products, made with intent to induce consumers to purchase the Clinique Products, regarding which statements Defendants knew, or which by the exercise of reasonable care should have known, to be untrue and misleading;

    b.    they offended public policy or within at least the penumbra of common laws or statutes and/or other established concepts of unfairness, were immoral, unethical, oppressive or unscrupulous; and

c.      they were done with a reckless indifference to the rights of Plaintiff and the Subclass or were an intentional and wanton violation of those rights.

81.     Plaintiff and the Subclass suffered ascertainable loss of money or property as a result of Defendants' unfair acts and/or deceptive practices – specifically, Plaintiff and Subclass members suffered injury as a result of Defendants' false advertising because they were induced to purchase or paid a price premium due to the misleading advertising, marketing, packaging, labeling and other promotion of Clinique Products.  Because of Defendants' false advertising, Plaintiff and the Subclass did not receive what they bargained for.  Defendants' conduct is the sole proximate cause of the harm suffered by Plaintiff and the Subclass.

82.     Upon filing the instant complaint, Plaintiff shall mail a copy of the complaint to the Attorney General and the Commissioner of Consumer Protection.

## COUNT II
**Unjust Enrichment**

83.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

84.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

85.     Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the

defendant was *unjustly* enriched.   At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.   The focus of the inquiry is the same in each state.   Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, Connecticut law applies to those claims.

86.   Plaintiff and Class members conferred a benefit on Defendant by purchasing one or more of the Clinique Products.

87.   Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Clinique Products, which retention under these circumstances is unjust and inequitable because Defendants misrepresented the efficacy of the Clinique Products, which caused injuries to Plaintiff and Class members because either they paid a price premium due to the deceptive advertising and false promises of efficacy or they purchased products that did not perform as promised and were therefore of no value to Plaintiff and Class members.

88.   Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

## COUNT III
## Breach of Express Warranty

89.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

90.     Plaintiff brings this Count on her own behalf under the law of the state in which she purchased Clinique Products and on behalf of: (a) all other persons who purchased Clinique Products in the same State; and (b) all other persons who purchased Clinique Products in States having similar laws regarding express warranty.

91.     Defendants' representations that the Clinique Products "deliver 63 percent of the visible wrinkle-reducing power of a laser procedure," "rebuild elasticity or firmness," "rebuild stores of natural collagen," "empower skin to defy gravity," "organize skin into a tighter, stronger network," "rescue skin from the visible effects of emotional and environmental stresses," "help slow visible aging 24/7," "intensif[y] natural cellular repair,"  or provide the other promised age-negating results as described herein are affirmations by Defendants that the Clinique Products would deliver the age-negating benefits promised.

92.     Defendants made express representations that Clinique Products would provide "results guaranteed."

93.     Defendants' representations regarding the Clinique Products are made to Plaintiff and members of the Class at the point of purchase, are part of the description of the goods, and the bargain upon which they are offered for sale and purchased by Plaintiff and members of the Class.

41

94.    In addition, or in the alternative, Defendants' representations are made to induce Plaintiff and members of the Class to rely on such representations, and Plaintiff and members of the Class did so rely on said representations as a material factor in his/her decision to purchase the Clinique Products.  Plaintiff and the members of the Class would not have purchased the Clinique Products but for these representations and warranties.

95.    The Clinique Products did not, in fact, meet the representations Defendants made about the Clinique Products, as described herein.

96.    At all times relevant to this action, Defendants falsely represented that its Clinique Products  "deliver 63 percent of the visible wrinkle-reducing power of a laser procedure," "rebuild elasticity or firmness," "rebuild stores of natural collagen," "empower skin to defy gravity," "organize skin into a tighter, stronger network," "rescue skin from the visible effects of emotional and environmental stresses," "help slow visible aging 24/7," "intensif[y] natural cellular repair," or provide the other promised age-negating results as described herein when they do not, in breach of these express warranties.

97.    At all times relevant to this action, Defendants made false representations in breach of the express warranties and in violation of state express warranty laws, including:

       a.    Ak. St. §42.02.313.

       b.    Ariz. Rev. Stat. Ann. §47-2313.

       c.    Ark. Code Ann. §4-2-313.

       d.    California Commercial Code §2313.

e.    Colo. Rev. St. §4-2-313.

f.    Conn. Gen. Stat. Ann. §42a-2-313.

g.    D.C. Stat. §28:2-313.

h.    Haw. Rev. Stat. §490:2-313.

i.    Ind. Code §26-1-2-313.

j.    Kansas Stat. Ann. §84-2-313.

k.    La. Civ. Code. Ann. Art. 2520

l.    11 Maine Rev. Stat. Ann. §2-313.

m.    Mass. Gen. Laws Ann. 106 §2-313.

n.    Minn. Stat. Ann. §336.2-313.

o.    Miss. Code Ann. §75-2-313.

p.    Missouri Rev. Stat. §400.2-313.

q.    Mont. Code Ann. 30-2-313.

r.    Neb. Rev. Stat. §2-313.

s.    Nev. Rev. Stat. §104.2313.

t.    N.H. Rev. Stat. §382-A:2-313.

u.    N.J. Stat. Ann. 12A:2-313.

v.    N.M. Stat. Ann. §55-2-313.

w.    N.Y. U.C.C. Law §2-313.

x.    N.C. Gen. Stat. Ann. §25-2-313.

y.    Okla. Stat. Ann. Tit. 12A, §2-313.

z.    Or. Rev. Stat. §72.3130.

aa.    Pa. Stat. Ann. Tit. 13, §2313.

bb.    R.I. Stat. §6A-2-313.

cc.    S.C. §36-2-313.

dd.    S.D. Cod. Laws. §57A-2-313.

ee.    Tenn. Code Ann. §47-2-313.

ff.    Tex. Bus. & Com. Code Ann. §2.313.

gg.    Ut. Code Ann. §70A-2-313.

hh.   Vt. Stat. Ann. §2-313.

ii.   Wa. Ann. 62A.2-313.

jj.   W. Va. Code §46-2-313.

kk.   Wyo. Stat. 34.1-2-313.

98.   The above statutes do not require privity of contract in order to recover for breach of express warranty.

99.   As a result of Defendants' conduct, Plaintiff and members of the Class were damaged.

100.   Within a reasonable time after she knew, or should have known, of such breach, Plaintiff, on behalf of herself and members of the Class, placed Defendants on notice thereof.

<u>**COUNT IV**</u>
**Violation of the Consumer Fraud Laws of the Various States**

101.   Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

102.   In addition to and/or in the alternative to the foregoing causes of action, Plaintiff brings this cause of action on her own behalf under the law of the State in which she purchased Clinique Products and on behalf of:  (a) all other persons who purchased Clinique Products in the State where Plaintiff purchased Clinique Products; and (b) all other persons who purchased Clinique Products in States with similar consumer protection laws.

103.   Plaintiff and each member of the Class is a consumer, purchaser, or other person entitled to the protection of the consumer protection laws of the State in which he or she purchased the Clinique Products.

44

104.    The consumer protection laws of the State in which each Plaintiff and member of the Class purchased the Clinique Products declares that unfair or deceptive acts or practices, in the conduct of trade or commerce are unlawful.

105.    Forty States and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

a.    Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1, et seq.;

b.    Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code §45.50.471, et seq.;

c.    Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, et seq.;

d.    California Consumer Legal Remedies Act, Cal. Civ. Code §1750, et seq., and California's Unfair Competition Law, Cal. Bus. & Prof Code §17200, et seq.;

e.    Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101, et seq.;

f.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat §42-110a, et seq.;

g.    Delaware Deceptive Trade Practices Act, 6 Del. Code §2511, et seq.;

h.    District of Columbia Consumer Protection Procedures Act, D.C. Code §§28 3901, et seq.;

i.    Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201, et seq.;

j.    Georgia Fair Business Practices Act, §10-1-390 et seq.;

k.    Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues §480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, et seq.;

l.    Idaho Consumer Protection Act, Idaho Code §48-601, et seq.;

m.    Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/1, et seq.;

n.    Kansas Consumer Protection Act, Kan. Stat. Ann §§50 626, et seq.;

o.    Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§367.110, et seq., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§365.020, et seq.;

p.    Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§51:1401, et seq.;

q.    Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. §205A, et seq., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, §1211, et seq.,

r.    Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.    Michigan Consumer Protection Act, §§445.901, et seq.;

t.    Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§325F.68, et seq.; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43, et seq.;

u.    Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1, et seq.;

v.    Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010, et seq.;

w.    Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, et seq.;

x.     Nebraska Consumer Protection Act, Neb. Rev. Stat. §59 1601, et seq., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, et seq.;

y.     Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§598.0903, et seq.;

z.     New Hampshire Consumer Protection Act,  N.H. Rev. Stat. §358-A:1, et seq.;

aa.    New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, et seq.;

bb.    New Mexico Unfair Practices Act, N.M. Stat. Ann. §§57 12 1, et seq.;

cc.    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§349, et seq.;

dd.    North Dakota Consumer Fraud Act, N.D. Cent. Code §§51 15 01, et seq.;

ee.    Ohio Rev. Code Ann. §§1345.02 and 1345.03; Ohio Admin. Code §§109:4-3-02, 109:4-3-03, and 109:4-3-10;

ff.    Oklahoma Consumer Protection Act, Okla. Stat. 15 §751, et seq.;

gg.    Oregon Unfair Trade Practices Act, Ore. Rev. Stat §646.608(e) & (g);

hh.    Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1, et seq.;

ii.    South Carolina Unfair Trade Practices Act, S.C. Code Laws §39-5-10, et seq.;

jj.    South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§37 24 1, et seq.;

kk.    Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 et seq.;

ll.   Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, §2451, et seq.;

mm.   Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010, et seq.;

nn.   West Virginia Consumer Credit and Protection Act, West Virginia Code §46A-6-101, et seq.;

oo.   Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§100.18, et seq.

106.   The Clinique Products constitute products to which these consumer protection laws apply.

107.   In the conduct of trade or commerce regarding their production, marketing, and sale of the Clinique Products, Defendants engaged in one or more unfair or deceptive acts or practices, including, but not limited to, uniformly representing to Plaintiff and each Class member by means of its advertising, marketing and other promotional materials, and on the packaging and labeling of the Clinique Products that Clinique Products would "deliver 63 percent of the visible wrinkle-reducing power of a laser procedure," "rebuild elasticity or firmness," "rebuild stores of natural collagen," "empower skin to defy gravity," "organize skin into a tighter, stronger network," "rescue skin from the visible effects of emotional and environmental stresses," "help slow visible aging 24/7," "intensified natural cellular repair," or provide the other promised age-negating results as described herein.

108.   Defendants' representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

109.    Defendants knew, or should have known, that their representations and omissions were false, untrue, misleading, deceptive and/or likely to deceive.

110.    Defendants used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and members of the Class rely thereon.

111.    Plaintiff and the other members of the Class did so rely.

112.    Each Plaintiff and member of the Class purchased Clinique Products produced by Defendants which misrepresented the characteristics and nature of the products.   Plaintiff and members of the Class would not have purchased the Clinique Products but for the deceptive and unlawful acts of Defendants.

113.     As a result of Defendants' conduct, Plaintiff and members of the Class were damaged.

114.    Defendants conduct showed complete indifference to, or conscious disregard for, the rights and safety of others such that an award of punitive and/or statutory damages is appropriate.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.    For an order certifying the nationwide Class and the Connecticut Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and her attorneys as Class Counsel to represent the Class members;

B.    For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.      For an order finding in favor of the Plaintiff, the nationwide Class, and the Connecticut Subclass on all counts asserted herein;

D.      For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiff, the nationwide Class, and the Connecticut Subclass their reasonable attorneys' fees and expenses and costs of suit.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.


Dated:  December 20, 2012                    SCOTT+SCOTT,
                                             Attorneys at Law, LLP


                                             By:   /s/ Joseph P. Guglielmo
                                             Joseph P. Guglielmo (CT 27481)
                                             David R. Scott (CT 16080)
                                             Erin Green Comite (CT 24886)
                                             156 South Main Street
                                             P.O. Box 192
                                             Colchester, CT  06415
                                             Telephone:   (860) 537-5537
                                             Facsimile:    (860) 537-4432
                                             jguglielmo@scott-scott.com
                                             david.scott@scott-scott.com
                                             ecomite@scott-scott.com

James E. Cecchi
Caroline F. Bartlett
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone:   (973) 994-1700
Facsimile:    (973) 994-1744

Paul M. Weiss
Julie D. Miller
COMPLEX    LITIGATION    GROUP,
LLC
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
Telephone:   (847) 433-4500
Facsimile:    (847) 433-2500

Stephen A. Weiss
Jonathan Shub
Scott A. George
SEEGER WEISS LLP
77 Water Street
New York, New York 10005
Telephone:   (212) 584-0700
Facsimile:    (212) 584-0799

Jay W. Eisenhofer
Robert G. Eisler
GRANT & EISENHOFER, P.A.
123 Justison Street
Wilmington, Delaware 19801
Telephone:  (302) 622-7000
Facsimile:    (302) 622-7100

Joe R. Whatley, Jr.
Patrick J. Sheehan
WHATLEY KALLAS
380 Madison Avenue, 23rd Floor
New York, New York 10017
Telephone:   (212) 447-7060
Facsimile:    (800) 922-4851

Mark Gardy
Charles Germershausen.
GARDY & NOTIS, LLP
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337