## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
          :

ELLEN DIMURO, MARGARET OHAYON,  :
DANA STEIN and all others similarly situated,
          :

        Plaintiffs,
          :    3:12-cv-1789 (AVC)

    - against -
          :    May 21, 2013

THE ESTÉE LAUDER COMPANIES, INC.
and CLINIQUE LABORATORIES, LLC,  :

        Defendants.    :

          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ..........................................................................1

    Plaintiffs' Complete Failure To  Provide Plausible Factual Assertions ..............2

    Lack of Standing...............................................................................................3

    Failure To Plead Fraud With Particularity.......................................................3

    Other Reasons Asserted Claims Are Legally Insufficient .................................3

    The Amended Complaint Should Be Dismissed With Prejudice ........................4

STATEMENT OF FACTS ..................................................................................5

    A.    The Parties .............................................................................6

    B.    Nature of Plaintiffs' Allegations ............................................7

    C.    Procedural Background ...........................................................8

ARGUMENT: DEFENDANTS' MOTION TO DISMISS THE AMENDED
COMPLAINT WITH PREJUDICE SHOULD BE GRANTED .................................8

I.    LACK OF STANDING ...........................................................................8

    A.    Plaintiffs Lack Standing to Challenge Advertising Claims Made For
Products Other Than the Ones They Allegedly Purchased ...................8

    B.    Plaintiffs Lack Standing to Assert a Claim Under the Illinois UDTPA...............11

II.    PLAINTIFFS' ALLEGATIONS FAIL TO SATISFY TWOMBLY
PLAUSIBILITY STANDARDS ......................................................................12

    A.    Legal Standards Applicable to a Motion to Dismiss Under Rule 12(b)(6) .........12

    B.    Plaintiffs Have Failed To Provide A Plausible Basis For The Allegations
That Defendants Made False Or Misleading Advertising Claims.......................14

III.    PLAINTIFFS' CLAIMS UNDER EACH OF THE ENUMERATED
CONSUMER PROTECTION/FRAUD STATUTES ARE LEGALLY
INSUFFICIENT AND SHOULD BE DISMISSED.............................................17

    A.    Elements Of Claims Asserted Under The Relevant Consumer
Protection/Fraud Statutes.....................................................................17

    B.    Plaintiffs' Amended Complaint Lacks The Requisite Specificity
Mandated By Rule 9(b) ........................................................................19

C.    Certain of the Allegedly Deceptive Claims Cited by Plaintiffs Constitute Nonactionable Puffery ...............................................................................24

D.    Plaintiffs' Omissions-Based Allegations Should Be Dismissed .........................27

IV.    PLAINTIFFS' CLAIM FOR BREACH OF EXPRESS WARRANTY IS LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED ...................................28

A.    Legal Standards ..................................................................................................28

B.    Plaintiffs' Express Warranty Claim Should be Dismissed..................................29

V.    PLAINTIFFS' CLAIM FOR BREACH OF IMPLIED WARRANTY IS LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED ...................................30

A.    Legal Standards ..................................................................................................30

B.    Plaintiffs' Implied Warranty Theories Should Be Dismissed .............................32

VI.    PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT IS LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED..................................................33

A.    Legal Standards ..................................................................................................33

B.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed................................33

VII.    THE DISMISSAL SHOULD BE WITH PREJUDICE.......................................35

CONCLUSION ........................................................................................................37

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

Abrahams v. Young & Rubicam, Inc.,
240 Conn. 300, 692 A.2d 709 (1997) ............................................................................ 17, 23

Adamson v. Ortho-McNeil Pharm., Inc.,
  463 F. Supp. 2d 496 (D.N.J. 2006) ................................................................................... 28

Agostino v. Quest Diagnostics, Inc.,
  No. 04-4362 SRC, 2011 WL 5410667 (D.N.J. Nov. 3, 2011)....................................... 33, 34

Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,
  436 F.3d 82 n.6 (2d Cir. 2006)............................................................................................. 8

Allstate Ins. Co. v. Advanced Health Professionals, P.C.,
  256 F.R.D. 49 n.3 (D. Conn. 2008)..................................................................................... 19

Andreo v. Friendlander, Gaines, Cohen, Rosenthal & Rosenberg,
  651 F. Supp. 877 (D. Conn. 1986)................................................................................. 24, 37

Arcand v. Brother Int'l Corp.,
  673 F. Supp. 2d 282 (D.N.J. 2009) ..................................................................................... 27

Argueta v. United States Immigration & Customs Enforcement,
  643 F.3d 60 (3d Cir. 2011).................................................................................................. 13

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)............................................................................................................ 13

Avery v. State Farm Mut. Auto. Ins. Co.,
  835 N.E.2d 801 (Ill. 2005) ................................................................................................. 28

Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.,
  No. 3:08-CV-1958(CFD), 2010 WL 1882316 (D. Conn. May 10, 2010) ............................. 19

Benchmark Bldg. Corp. v. United Builders Supply Co.,
  1992 Conn. Super. LEXIS 1629 (May 28, 1992) ................................................................ 29

Benzman v. Whitman,
  523 F.3d 119 (2d Cir. 2008)................................................................................................ 13

Bologna v. Allstate Ins. Co.,
  138 F. Supp. 2d 310 (E.D.N.Y. 2001) ................................................................................ 25

Burnett v. Mortg. Elec. Registration Sys., Inc.,
  706 F.3d 1231 (10th Cir. 2013) .......................................................................................... 36

Caldor, Inc. v. Heslin,
  215 Conn. 590, 577 A.2d 1009 (1990) ........................................................................... 18, 25

Caleb & Co. v. E.I. DuPont de Nemours & Co.,
   599 F. Supp. 1468 (S.D.N.Y. 1984)..................................................................... 28

Camasta v. Jos. A. Bank Clothiers, Inc.,
   No. 12 C 7782, 2013 WL 474509 (N.D. Ill. Feb. 7, 2013)...................................... 12, 19

Chiste v. Hotels.com L.P.,
   756 F. Supp. 2d 382 (S.D.N.Y. 2010)................................................................... 15

Chow v. Neutrogena Corp..,
   No. CV 12-04624 R (JCx) .................................................................................. 24

Coal. for a Level Playing Field, L.L.C. v. Autozone, Inc.,
   813 F. Supp. 2d 557 (S.D.N.Y. 2011)............................................................... 14, 15

Colucci v. ZonePerfect Nutrition Co.,
   No. 12-2907-SC, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ............................. 10

Connick v. Suzuki Motor Co.,
   675 N.E.2d 584 (Ill. 1996)................................................................................. 32

Cooper v. Samsung Elecs. Am., Inc.,
   No. 07-3853 (JLL), 2008 WL 4513924 (D.N.J. Sept. 30, 2008)............................. 34

Crete v. Resort Condos. Int'l, LLC,
   No. 09-5665, 2011 WL 666039 (D.N.J. Feb. 14, 2011) ........................................ 35

Crozier v. Johnson & Johnson Consumer Cos.,
   No. 12-0008 (JBS/KMW), 2012 WL 4507381 (D.N.J. Sept. 28, 2012)................... 19

Cytyc Corp. v. Neuromedical Sys., Inc.,
   12 F. Supp. 2d 296 (S.D.N.Y. 1998)................................................................... 25

D'Amore v. Stangle & DeNigris, Inc.,
   Civ. No. 3:94CV01087(AVC), 1995 WL 704687 (D. Conn. May 19, 1995) ............. 1

Dewey v. Volkswagen AG,
   558 F. Supp. 2d 505 (D.N.J. 2008) .................................................................... 23

DiLeo v. Ernst & Young,
   901 F.2d 624 (7th Cir. 1990) ............................................................................ 20

DM Research, Inc. v. Coll. of Am. Pathologists,
   170 F.3d 53 (1st Cir.1999)............................................................................... 14, 15

In re Eaton Vance Corp. Sec. Litig.,
   219 F.R.D. 38(D. Mass. 2003) ( ....................................................................... 10

Empire Today, LLC v. Nat'l Floors Direct, Inc.,
   788 F. Supp. 2d 7 (D. Mass. 2011) .................................................................... 18

Ferrari v. Am. Honda Motor Co.,
  2009 WL 211702 (N.J. Super. Ct. Jan. 30, 2009) ....................................................... 31

Frederico v. Home Depot,
  507 F.3d 188 (3d Cir. 2007) .............................................................................. 17, 18

Gennari v. Weichert Co. Realtors,
  691 A.2d 350 (N.J. 1997) ....................................................................................... 28

Gillette Co. v. Wilkinson Sword, Inc.,
  No. 89 CIV. 3586 (KMW), 1989 WL 82453 (S.D.N.Y. July 6, 1989) ..................... 25

Gray v. Abbott Labs., Inc.,
  No. 10 cv 6377, 2011 WL 3022274 (N.D. Ill. July 22, 2011) ................................. 31

Greene v. BMW of N. Am.,
  No. 2:11-04220 (WJM), 2012 WL 5986457 (D.N.J. Nov. 28, 2012) ................ 14, 32

Grimaldi v. Paggioli,
  No. 3:08CV599 (SRU), 2010 WL 2698284 (D. Conn. July 8, 2010) ...................... 13

H.J. Inc. v. Nw. Bell Tel. Co.,
  492 U.S. 229 (1989) .................................................................................................. 5

Hammer v. Vital Pharmaceuticals, Inc.,
  No. 11-4124, 2012 WL 1018842 (D.N.J. Mar. 26, 2012) ................................. 25, 33

Hartford Cas. Ins. Co. v. PureTech Waters of Am., LLC,
  No. CV116021419S, 2012 WL 1435221 (Conn. Super. Ct. Mar. 30, 2012) ........... 32

Hoffman v. UBS-AG,
  591 F. Supp. 2d 522 (S.D.N.Y. 2008) ...................................................................... 10

HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,
  545 N.E.2d 672 (Ill. 1989) ....................................................................................... 33

Hughes v. Panasonic Consumer Elects. Co.,
  No. 10-846 (SDW), 2011 WL 2976839 (D.N.J. July 21, 2011) ........................ 31, 32

Ibarolla v. Nutrex Research, Inc.,
  No. 12 C 4848, 2012 WL 5381236 (N.D. Ill. Oct. 31, 2012) ................................. 27

Jamison v. Summer Infant (USA), Inc.,
  778 F. Supp. 2d 900 (N.D. Ill. 2011) ...................................................................... 18

Johnson v. Sears Roebuck & Co.,
  2007 U.S. Dist. LEXIS 63657 (D. Conn. Aug. 29, 2007) ........................................ 30

Khalik v. United Air Lines,
  671 F.3d 1188 (10th Cir. 2012) ............................................................................... 13

Koronthaly v. L'Oréal USA, Inc.,
  No. 07-CV-5588, 2008 WL 2938045(D.N.J. July 29, 2008) (citation omitted),........................ 9

Latraverse v. Kia Motors of Am., Inc.,
  No. 10-6133 (RBK/AMD), 2011 WL 3273150 (D.N.J. July 27, 2011) ................................... 28

Lieberson v. Johnson & Johnson Consumer Cos.,
  865 F. Supp. 2d 529 (D.N.J. 2011) ............................................................................. 10, 31

Lowden v. T-Mobile USA Inc.,
  378 Fed. App'x 693 (9th Cir. 2010) ................................................................................... 36

Luce v. Edelstein,
  802 F.2d 49 (2d Cir. 1986)............................................................................................ 19, 23

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992)................................................................................................................ 9

Madonna v. United States,
  878 F.2d 62 (2d Cir. 1989)..................................................................................................... 23

Malaco Leaf, AB v. Promotion In Motion, Inc.,
  287 F. Supp. 2d 355 (S.D.N.Y. 2003)................................................................................... 25

McCall v. Pataki,
  232 F.3d 321 (2d Cir. 2000)................................................................................................... 12

In re Michaels Stores Pin Pad Litig.,
  830 F. Supp. 2d 518 (N.D. Ill. 2011) .................................................................................... 18

Microsoft Corp. v. Logical Choice Computers, Inc., 99 C,
  1300, 2000 WL 1038143 (N.D. Ill. July 24, 2000)............................................................... 29

Muniz v. Kravis,
  59 Conn. App. 704, 757 A.2d 1207 (2000) .......................................................................... 18

Murphy v. Int'l Bus. Machines Corp., No. 10 Civ. 6055 (LAP),
  2012 WL 566091, at *5 (S.D.N.Y. Feb. 21, 2012).......................................................... 13, 37

Mycone Dental Supply Co. v. Creative Nail Design, Inc.,
  No. 11-4380 (JBS/KMW), 2012 WL 3599368 (D.N.J. Aug. 17, 2012) ................................ 34

N. Ins. Co. of N.Y. v. Silverton Marine Corp.,
  No. 10 CV 345, 2010 WL 2574225 (N.D. Ill. June 23, 2010) .............................................. 29

N.J. Citizen Action v. Schering-Plough Corp.,
  842 A.2d 174 (N.J. App. Div. 2003)...................................................................................... 23

Naporano Iron & Metal Co. v. Am. Crane Corp.,
  79 F. Supp. 2d 494 (D.N.J. 1999) .......................................................................................... 19

Nieto v. Perdue Farms, Inc.,
    No. 08-07399, 2010 WL 1031691 (N.D. Ill. Mar. 17, 2010) ................................... 35

Normand Josef Enters, Inc. v. Conn. Nat'l Bank,
    230 Conn. 486, 646 A.2d 1289 (1994) .................................................................... 27

Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.,
    865 N.E.2d 334 (Ill. 2007)...................................................................................... 29

Oliveira v. Amoco Oil Co.,
    776 N.E.2d 151 (Ill. 2002)...................................................................................... 17

Omega Eng'g, Inc. v. Eastman Kodak Co.,
    30 F. Supp. 2d 226 (D. Conn. 1998)............................................................. 25, 29, 30

Padilla v. Costco Wholesale Corp.,
    No. 11 C 7868, 2012 WL 2397012 (N.D. Ill. June 21, 2012) ........................... 10, 13

Paradigm Contract Mgmt. Co. v. St. Paul Fire & Marine Ins. Co.,
    No. 3:10cv211 (MRK), 2011 WL 4348132 (D. Conn. Sept. 16, 2011) ............. 33, 34

In re Parcel Tanker Shipping Servs. Antitrust Litig.,
    541 F. Supp. 2d 487 (D. Conn. 2008)...................................................................... 13

Parker v. Colgate-Palmolive Co.,
    X08CV030193798S, 2003 WL 22205061 (Conn. Super. Ct. Aug. 8, 2003) ........... 34

Payton v. Cnty. of Kane,
    308 F.3d 673 (7th Cir. 2002) ..................................................................................... 9

Pearson v. Target Corp.,
    No. 11 CV 7972, 2012 WL 7761986 (N.D. Ill. Nov. 9, 2012).................................. 9

In re Picard,
    339 B.R. 542 (Bankr. D. Conn. 2006) ..................................................................... 19

Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,
    631 F.3d 436 (7th Cir. 2011) .............................................................................. 19, 20

Popp v. Cash Station, Inc.,
    613 N.E.2d 1150 (Ill. App. Ct. 1992) ................................................................. 11, 12

Rait v. Sears, Roebuck & Co.,
    No. 08-2461 (JLL), 2009 WL 250309 (D.N.J. Feb. 3, 2009) .................................. 31

Rizzo Constr. Pool Co. v. Riefler,
    No. 391537, 2003 WL 22962196 (Conn. Super. Ct. Dec. 3, 2003).......................... 26

Romag Fasteners, Inc. v. Fossil, Inc.,
    No. 3:10-CV-1827 CFD, 2011 WL 2446404 (D. Conn. June 15, 2011).................. 20

Rosenthal Collins Group, LLC v. Trading Techs. Int'l, Inc., No. 05 C 4088,
    2005 WL 3557947 (N.D. Ill. Dec. 26, 2005) ............................................................................ 25

Saltzman v. Pella Corp.,
    No. 06 C 4481, 2007 WL 844883 (N.D. Ill. Mar. 20, 2007) ..................................................... 26

In re Salvatore,
    No. 10-16449/JHW, 2011 WL 2115816 (Bankr. D.N.J. May 26, 2011) ............................. 18, 25

Santiago v. Warminster Twp.,
    629 F.3d 121 (3d Cir. 2010) ..................................................................................................... 13

Scheuerman v. Nestle Healthcare Nutrition, Inc.,
    No. 10 C 3684 (FSH) (PS), 2012 WL 2916827 (D.N.J. July 17, 2012) ................................... 18

Shannon v. Boise Cascade Corp.,
    805 N.E.2d 213 (Ill. 2004) ....................................................................................................... 23

Siegel v. Shell Oil Co.,
    656 F. Supp. 2d 825 (N.D. Ill. 2009) (citation omitted), ........................................................... 35

Skelton v. General Motors Corp.,
    500 F. Supp. 1181 (N.D. Ill. 1980), ......................................................................................... 31

Sportmart, Inc. v. Spirit Mfg., Inc., 97 C,
    7120, 1999 WL 350662 (N.D. Ill. May 17, 1999) .................................................................... 31

Springfield Heating & Air Conditioning, Inc. v. 3947-55 King Drive At Oakwood, LLC,
    901 N.E.2d 978 (Ill. App. Ct. 2009) ........................................................................................ 34

Stewart v. Smart Balance, Inc., CIV.A. 11-6174 JLL, 2012
    WL 4168584 (D.N.J. June 26, 2012) ....................................................................................... 10

Suddreth v. Mercedes-Benz, LLC,
    No. 10-CV-05130 (DMC-JAD), 2011 WL 5240965 (D.N.J. 2011) ......................................... 32

Time Warner Cable, Inc. v. DIRECTV, Inc.,
    497 F.3d 144 (2d Cir. 2007) ............................................................................................... 24. 26

In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig.,
    Civ. No. 08-939, 2009 WL 2940081 (D.N.J. Sept. 11, 2009) ................................................. 31

Travelers Prop. & Cas. Ins. Corp. v. Yankee Gas Servs. Co.,
    No. CV 990266606S, 2000 WL 775558 (Conn. Super. Ct. May 19, 2000) ............................ 32

VRG Corp. v. GKN Realty Corp.,
    641 A.2d 519 (N.J. 1994) ......................................................................................................... 33

Walsh v. Seaboard Sur. Co.,
    94 F. Supp. 2d 205 (D. Conn. 2000), ....................................................................................... 18

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................................... 9

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990) ............................................................................. 24

*White v. DaimlerChrysler Corp.*,
   856 N.E.2d 542 (Ill. App. Ct. 2006) ................................................................ 27

*Wilson v. Merrill Lynch & Co.*,
   671 F.3d 120 (2d Cir. 2011) ............................................................................. 12

*Wood ex rel. United States v. Applied Research Assocs., Inc.*,
   328 F. App'x 744 (2d Cir. 2009) ..................................................................... 23

*Zawacki v. Realogy Corp.*,
   628 F. Supp. 2d 274 (D. Conn. 2009) ............................................................. 12

**Statutes and Rules**

Ga. Code Ann. § 11-2-314(1), 11-2-315 (West 2003) ........................................... 31

810 Ill. Comp. Stat. Ann. 5/2-607 (3) (West 2009) .............................................. 29

815 Ill. Comp. Stat. Ann. 505/10(a) (West 2008) ................................................ 10

815 Ill. Comp. Stat. Ann. 505/2 (West 2008) ................................................. 11, 18

815 Ill. Comp. Stat. Ann. 505/2-12 (West 2008) ................................................. 17

815 Ill. Comp. Stat. Ann. 510/2(a)(5) (West 2008) ............................................. 18

Conn. Gen. Stat. Ann § 42a-2-607 (West 2009) .................................................. 29

Conn. Gen. Stat. Ann. § 42-110b(a) (West 2012) ................................................ 17

Conn. Gen. Stat. Ann. § 42-110g(a) (West 2012) ................................................ 10

Conn. Gen. Stat. Ann. §§ 42-110a-42-110q (West 2012) .................................... 17

N.J. Stat. Ann. § 56:8-19 (West 2012) ................................................................. 10

N.J. Stat. Ann. § 56:8-2 (West 2012) ................................................................... 17

Federal Rules of Civil Procedure Rule 9(b) .................................................. passim

Federal Rules of Civil Procedure Rule 12(b)(1) ................................................. 1, 8

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................... 1, 12

Federal Rules of Civil Procedure Rule 12(f) .......................................................... 1

**Other Authorities**

ABC Television Network,
    Advertising Standards and Guidelines (Oct. 2012) ................................................... 15

Complaint, In Re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Lit.,
    No. 1:13-cv-00150-JPO (S.D.N.Y. filed Jan. 8, 2013) (ECF No. 1) .................................... 5, 35

Master Consolidated Complaint, In re L'Oréal Wrinkle Cream Mktg. & Sales Practice Lit.,
    No. 2:12-cv-03571-WJM-MF (D.N.J. filed March 3, 2013) (ECF No. 3) ........................... 5, 35

NBC Universal, Inc., Advertising Guidelines (2011) ................................................... 16

Complaint, Ohayon v. Estée Lauder, Inc.,
    No. 2:13-CV-00218-KM-MAH (D.N.J. filed Jan. 11, 2013) (ECF No. 1) ........................... 4, 8

Order, Scott v. GlaxoSmithKline Consumer Healthcare, L.P.,
    No. 05 C 3004 (N.D. Ill. Jan. 17, 2007) (ECF No. 33)................................................ 36

Complaint, Stein v. Estée Lauder, Inc., No. 1:13-CV-00073
    (N.D. Ill. filed Jan. 4, 2013) (ECF No. 1) .............................................................. 4, 8

Defendants The Estée Lauder Companies Inc. and Clinique Laboratories, LLC (collec-

tively, "Clinique" or "Defendants") submit this memorandum of law in support of their motion,

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss with prejudice

each of the claims asserted in the Consolidated Class Action Complaint and Demand for Jury

Trial, dated April 8, 2013 (ECF No. 44) (the "Amended Complaint" or "Am. Compl.").[1]

## PRELIMINARY STATEMENT

Defendants are marketers of Clinique products, a leading brand of cosmetics.  Each

Plaintiff alleges she purchased a single product in the Clinique "Repairwear" collection, i.e., a

line marketed to improve consumers' appearance by, inter alia, reducing the appearance of wrin-

kles and other signs of aging.   (See, e.g., Am. Compl. ¶ 29.)  Plaintiffs assert that Defendants

disseminated false and misleading advertising for those three specific products, as well as for

four other Repairwear products which none of the Plaintiffs allege they ever purchased.

The prolix Amended Complaint, containing 171 separate paragraphs covering 62 pages,

asserts allegations that have become standard and commonplace for consumer lawsuits.  Thus,

Plaintiffs seek to represent nationwide and statewide classes of purchasers.  (Am. Compl. ¶¶ 73-

82.)  Counts I through IV assert claims under the state consumer protection/fraud statutes of

three states:  Connecticut (Count I), New Jersey (Count II), and Illinois (Counts III and IV).

---

[1]     The initial "Class Action Complaint and Demand for Jury Trial" herein, naming only one
plaintiff (Ms. DiMuro), was filed December 20, 2012.  (See ECF No. 1.)  Though Plaintiffs char-
acterize their amended pleading as "consolidated," no Court has issued a consolidation order.
Rather, as described below, two of the plaintiffs herein (Ms. Stein and Ms. Ohayon) first filed,
then voluntarily dismissed, very similar lawsuits in federal court in Illinois and New Jersey, and
then joined in the amended pleading herein.

Defendants recognize that with respect to a few of their arguments, their position may be
more properly considered a motion to strike under Rule 12(f) of the Federal Rules of Civil Pro-
cedure.  See D'Amore v. Stangle & DeNigris, Inc., Civ. No. 3:94CV01087(AVC), 1995 WL
704687, at *4 (D. Conn. May 19, 1995) (Covello, J.) (granting motion to strike).

(Am. Compl. ¶¶ 83-126.)  Counts V and VI set forth claims based on alleged breaches of express and implied warranties.  (Id. ¶¶ 127-151.)  Count VII is based on the common law doctrine of unjust enrichment.  (Id. ¶¶ 152-157.)  Finally, in support of a putative nationwide class action, Count VIII alleges "Violation of the Consumer Fraud Laws of the Various States" (id. ¶¶ 158-171, citing 37 statutes).

## Plaintiffs' Complete Failure To
## Provide Plausible Factual Assertions

These legal theories and putative class action claims are hardly novel, nor are the boiler-plate, conclusory assertions and the colorful ad hominems which accompany such allegations (e.g., labeling Clinique a "quintessential snake-oil salesman," see Am. Compl. ¶ 6).  But the Amended Complaint is notable for being extremely sparse in, if not outright devoid of, any facts that might arguably provide a plausible basis for this lawsuit or any of its claims.

Thus, the Amended Complaint challenges as false and/or misleading literally dozens of promotional claims for Clinique Repairwear products (see Am. Compl. ¶ 29), but fails to cite to a single test, study, or scientific analysis (or any other affirmative evidence) that might support the allegations.  Indeed, the Amended Complaint brazenly disavows any argument that Clinique's own clinical or other scientific evidence that may form the basis for the challenged claims is in any way faulty, promising only to try to find plausibility later in discovery.  (See Am. Compl. ¶ 71.)

Whether or not this "fire away now, hope to find support later" approach to the com-mencement of a consumer fraud class action was ever sanctioned, it certainly is not permitted any more, in light of the Supreme Court's Twombly/Iqbal mandate requiring a plaintiff to plead – now, not later – factual allegations that make her claims plausible.  For this reason alone, the Amended Complaint should be dismissed in its entirety.  The other principal grounds for dismis-sal are briefly summarized below:

2

## Lack of Standing

As Plaintiffs never purchased four of the seven Clinique Repairwear cosmetics at issue, they have no standing to complain about promotional claims for those four products.

## Failure To Plead Fraud With Particularity

In no uncertain terms, Plaintiffs accuse Defendants of fraudulent conduct, in alleged violation of the consumer protection/fraud statutes of Connecticut, New Jersey, and Illinois. Having done so, they must meet the requirement of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") to plead fraud with particularity. They fall far short of this requirement.

Other than stating that they each purchased, on one or more occasions, one specific Clinique product, Plaintiffs provide virtually no additional details relevant to their purchase or use. For example, no Plaintiff even alleges that she used the Clinique product she purchased, no less experienced results that she believed failed to measure up to those allegedly promised by any advertising claims she personally saw. Nor does any Plaintiff state what, if any, specific challenged advertising claim influenced her decision to purchase the product.

This missing information is essential because, among other reasons, consumers are able to determine if use of cosmetics products improves their appearance. Yet, no Plaintiff alleges that her use of the Repairwear product she purchased did not help improve her appearance.

## Other Reasons Asserted Claims Are Legally Insufficient

Other grounds for dismissing claims or striking allegations include the following:

- **Puffery**: A number of the advertising claims challenged by Plaintiffs are, as a matter of law, non-actionable puffing, including "fountain of youth," "de-aging," and "a second chance for every skin."

- **Omissions**: The alleged non-disclosures do not state a claim because Plaintiffs merely assert that Defendants failed to disclose that their affirmative product claims are false, or that Defendants in effect failed to promote the products of their competitors.

- **Breach of express warranty**: Plaintiffs' breach of warranty claims are legally insufficient because Plaintiffs do not even plead an express warranty (i.e., a specific promise) that formed the basis of the bargain, no less plausibly claim a breach of that warranty which caused them harm. Nor does Plaintiff Stein allege privity of contract, as

3

required by Illinois law.  Finally both Plaintiffs Stein and DiMuro fail to allege the requisite pre-lawsuit notice provided for under their respect states' laws.

- **Breach of implied warranty**:  Plaintiffs' implied warranty theory fails because Plaintiffs have not plausibly alleged that the Clinique cosmetics products did not meet "a minimum level of quality" for products in this category.  Moreover, as with the express warranty claim, Plaintiffs DiMuro and Stein fail to allege privity of contract or pre-lawsuit notice.

- **Unjust enrichment**:  Plaintiffs' claim for unjust enrichment suffers from the same plausibility issues as do their consumer protection/fraud claims.  Furthermore, Plaintiffs Ohayon and Stein did not have the necessary direct relationship (privity) with Defendants, as they purchased their products from third-party retailers.

**The Amended Complaint
Should Be Dismissed With Prejudice**

For several reasons, the dismissal here should be with prejudice.  First, Plaintiffs are, to say the least, well-represented – pages 61-62 of the Amended Complaint identify nineteen lawyers from seven law firms (located in five separate states).  This same group of lawyers represented Plaintiff Stein in her initial lawsuit in federal court in Illinois (later voluntarily dismissed), and Plaintiff Ohayon in her initial lawsuit in federal court in New Jersey (also later voluntarily dismissed).[2]  Thus, the Amended Complaint, while only the second version in this Court, is, in reality, Plaintiffs' fourth pleading in this dispute.  Four should be enough, given the size of Plaintiffs' legal team.  The Amended Complaint, moreover, was filed 3½ months after the initial Complaint herein, thus providing Plaintiffs with ample opportunity to prepare revisions – particularly given that much of the withheld/missing information is or should be known to Plaintiffs, including some information (e.g., personal experience with the challenged products) that is exclusively within the personal knowledge of Plaintiffs.

Finally, many of the law firms representing Plaintiffs herein are also spearheading consumer fraud class action/multidistrict lawsuits against other manufacturers of anti-aging products,

---

[2]     See Complaint, Stein v. Estée Lauder, Inc., No. 1:13-CV-00073 (N.D. Ill. filed Jan. 4, 2013) (ECF No. 1); Complaint, Ohayon v. Estée Lauder, Inc., No. 2:13-CV-00218-KM-MAH (D.N.J. filed Jan. 11, 2013) (ECF No. 1).

4

with similar allegations and virtually identical "snake-oil salesmen" characterizations.  See Master Consolidated Complaint, In re L'Oréal Wrinkle Cream Mktg. & Sales Practice Litig., No. 2:12-cv-03571-WJM-MF (D.N.J. filed Mar. 11, 2013) (ECF No. 36); Complaint, In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Lit., No. 1:13-cv-00150-JPO (S.D.N.Y. filed Jan. 8, 2013) (ECF No. 1).   Thus, counsel for Plaintiffs herein, having invested in a cosmetics business lawsuit "cottage industry," certainly cannot complain that they are unfamiliar with the consumer fraud class action pleading requirements.

It is readily apparent what has happened here.  A "consortium" of attorneys, having set their sights on the cosmetics business, selected Clinique as one of its targets – not because there is a plausible basis for believing that the challenged advertising claims are false or misleading, but because Clinique is a convenient target with a successful, well-known consumer brand and a "deep pocket."  If this Amended Complaint is legally sufficient, then every major U.S. consumer products company could fall victim to the same tactics.

For all of these reasons, if the Court agrees with Defendants that the Amended Complaint is not legally sustainable, the dismissal should be with prejudice – Plaintiffs and their extensive network of attorneys do not deserve a fifth chance here.

## STATEMENT OF FACTS

Clinique acknowledges that for purposes of this motion, the facts pled in the Amended Complaint must be accepted as true, see H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 249-50 (1989), and therefore assume the validity of Plaintiffs' factual assertions herein, without conceding their accuracy.

### A.    The Parties

#### 1.    Defendants

Defendant The Estée Lauder Companies Inc. is a Delaware corporation with a principal place of business in New York, New York.  (Am. Compl. ¶ 24.)  Defendant Clinique Laboratories, LLC is a subsidiary of The Estée Lauder Companies Inc.  (Id. ¶ 25.)  Defendants market Clinique-branded cosmetics products.  (Id. ¶ 2.)

#### 2.    Plaintiffs

Plaintiff DiMuro, a resident of Connecticut, alleges that on or about November or December 2010 she purchased a single Clinique skincare product, Repairwear Intensive Night Cream ("Repairwear Night Cream"), from a Macy's department store in Milford, Connecticut, as well as on the Clinique website.  (Am. Compl. ¶ 21.)

Plaintiff Ohayon, a resident of New Jersey, asserts that "[o]ver the course of the last two years," she has purchased Repairwear Laser Focus Wrinkle & UV Wrinkle Damage Corrector ("Repairwear Laser Focus") from a Bloomingdale's department store in Paramus, New Jersey.  (Id. ¶ 22.)  It is not disclosed whether Ms. Ohayon has continued to purchase that product notwithstanding her lawsuit.

Plaintiff Stein, an Illinois resident, alleges that on or about February 2011 she purchased Repairwear Intensive Eye Cream ("Repairwear Eye Cream") from a Macy's department store in Vernon Hills, Illinois.  (Id. ¶ 23.)

None of the three Plaintiffs state whether they ever actually used the Clinique products they purchased, and if they did, what results they observed.  Based on the face of the Amended Complaint, one cannot rule out that one or more Plaintiffs were, and remain, satisfied users of a Clinique Repairwear product.

As respects any specific advertising or promotional claim for the purchased Clinique products that Plaintiffs saw and were influenced by, the Amended Complaint alleges only the

following with respect to Plaintiff DiMuro (and makes substantially similar allegations with re-spect to Plaintiffs Ohayon and Stein):

> Plaintiff . . . saw, read, and received Estée's material misrepresentations in print advertisements, on the Clinique website, and at the point of sale, as described more fully herein, including Estée's many false, misleading, and/or deceptive product claims and relied on those material mis-statements in making her decision to purchase [the Clinique products].

(See Am. Compl. ¶¶ 21-23.)  It is also alleged that "Plaintiff DiMuro and Plaintiff Ohayon read and were exposed to Estée's advertisements for Repairwear Products in magazines including Good Housekeeping, Redbook, and Ladies Home Journal, among others, prior to and after mak-ing their purchase."  (Id. ¶ 56.)  In other words, the Amended Complaint contains only sweeping, all-inclusive, conclusory allegations, and completely fails to identify a single specific claim any Plaintiff allegedly relied on, or where she saw that specific claim.

**B.     Nature of Plaintiffs' Allegations**

Generally, Plaintiffs allege that Clinique promoted the three Repairwear products alleg-edly purchased by any Plaintiff, as well as the four other Repairwear products that none of them ever purchased, with "deceptive, false, or misleading claims and promises to consumers about the efficacy of its Repairwear Products." (Am. Compl. ¶ 4.)  The Amended Complaint proceeds to identify several dozen specific claims, many with content that would of necessity require sub-stantiating support from tests or studies.  (See id. ¶ 29.)

Notwithstanding, nowhere in the lengthy Amended Complaint is there a cite to any factu-al basis – scientific, clinical, or otherwise – for the conclusory assertions that any of these claims are false and/or misleading.  Equally as important, as noted, Plaintiffs explicitly disavow basing the plausibility of their factual allegations on challenging the reliability of any of Clinique's sci-entific substantiation:

> Plaintiffs' claims are not based on the inherent faults of Estée's purported clinical data, studies, or surveys.

(Am. Compl. ¶ 71.)

7

### C.     Procedural Background

As noted, Plaintiff DiMuro, a Connecticut resident, commenced this lawsuit on December 20, 2012.  (ECF No. 1, "DiMuro Complaint".)  Thereafter, counsel for Ms. DiMuro, representing Plaintiff Stein, filed a similar lawsuit in federal court in Illinois.  See Complaint, Stein v. Estée Lauder, Inc., No. 1:13-CV-00073 (N.D. Ill. filed Jan. 4, 2013) (ECF No. 1, "Stein Complaint").  This was followed by a similar lawsuit filed by Plaintiff Ohayon on January 11, 2013 in federal court in New Jersey.  See Complaint, Ohayon v. Estée Lauder, Inc., No. 2:13-CV-00218-KM-MAH (D.N.J. filed Jan. 11, 2013) (ECF No. 1, "Ohayon Complaint").  All three complaints sought to certify identical nationwide classes of purchasers of fourteen Clinique products.  (See DiMuro Compl. ¶ 70; Stein Compl. ¶ 70; Ohayon Compl. ¶ 70.)

On February 27, 2013, Ms. Stein's Illinois federal court lawsuit and Ms. Ohayon's New Jersey federal court lawsuit were voluntarily withdrawn without prejudice and without explanation.  Those two Plaintiffs were then added as party plaintiffs in the Amended Complaint herein, which dropped seven of the Clinique products previously challenged.

### ARGUMENT

### DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE SHOULD BE GRANTED

### I.     LACK OF STANDING

Lack of standing is properly raised on a motion under Rule 12(b)(1).  See Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 87-88 n.6 (2d Cir. 2006).

#### A.     Plaintiffs Lack Standing to Challenge Advertising Claims Made For Products Other Than the Ones They Allegedly Purchased

In order to have constitutional (Article III) standing to bring a claim, a plaintiff must (1) have suffered an injury in fact that is "concrete and particularized" and "actual," not "'conjectural' or 'hypothetical'"; (2) plead a causal connection between the injury and the conduct com-

plained of; and (3) plead an injury that can be redressed by a favorable decision. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).

Here, Plaintiffs plead that the Defendants made false representations about seven products in the Repairwear "collection." But each only alleges that she bought one product: Repairwear Night Cream (DiMuro), Repairwear Laser Focus (Ohayon), and Repairwear Eye Cream (Stein). (<u>See</u> Am. Compl. ¶¶ 21-23.) For the remaining four products, Plaintiffs did not make any such purchase, and thus do not plead facts capable of establishing that they suffered any injury in fact from advertising statements promoting those products. Plaintiffs accordingly have no injury that could confer standing with respect to those products.

Allegations of injury to absent putative class members do not satisfy the requirement that named plaintiffs allege "that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." <u>Warth v. Seldin</u>, 422 U.S. 490, 502 (1975). As one federal judge has explained, "'[t]he standing inquiry does not change in the context of a putative class action . . . . [S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action.'" <u>Koronthaly v. L'Oréal USA, Inc.</u>, No. 07-CV-5588, 2008 WL 2938045, at *4 (D.N.J. July 29, 2008) (citation omitted), <u>aff'd</u>, 374 F. App'x 257 (3d Cir. 2010); <u>see also</u> <u>Payton v. Cnty. of Kane</u>, 308 F.3d 673, 682 (7th Cir. 2002).

Although no Connecticut federal court decision appears to have squarely addressed this issue, numerous other courts, including those in New Jersey and Illinois, have dismissed on Article III standing grounds claims asserted by a plaintiff for products the plaintiff did not personally use. <u>See, e.g.</u>, <u>Pearson v. Target Corp.</u>, No. 11 CV 7972, 2012 WL 7761986, at *1 (N.D. Ill. Nov. 9, 2012) (plaintiff lacked standing under both Article III and the Illinois consumer protection statute because he did not purchase the challenged product); <u>Lieberson v. Johnson & Johnson Consumer Cos.</u>, 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (plaintiff lacked standing to pursue

claims regarding two of four baby bath products in the "Bedtime" line); Hoffman v. UBS-AG, 591 F. Supp. 2d 522, 532 (S.D.N.Y. 2008) ("Plaintiffs lack standing for claims relating to funds in which they did not personally invest."); In re Eaton Vance Corp. Sec. Litig., 219 F.R.D. 38, 41 (D. Mass. 2003) (dismissing named plaintiffs' claims against mutual funds which they did not personally purchase).[3]

Those courts that have declined to dismiss claims based on a product a plaintiff did not purchase have done so only after finding that the products, the alleged misrepresentations at issue, and the nature of the required substantiation for the misrepresentations were "sufficient[ly] similar" or "closely related."[4] Here, however, the four identified Clinique products not purchased, and the advertising statements made for each, cannot be considered "closely related" to the purchased products.

First, there are obvious product differences among the products, which include, inter alia, eye creams, night creams, serums. Moreover, the scientific evidence pertinent to each separate advertising claim, whether or not the product was purchased by any of the Plaintiffs, is quite distinct and different. For instance, the following advertising claims are identified in Paragraph 29

---

[3]    In addition to the Article III requirements, each of the consumer protection/fraud statutes cited in Counts I-IV in the Amended Complaint contains a standing requirement under which a plaintiff must establish that she sustained "actual damage as a result of a violation" of such act in order to bring an action.  815 Ill. Comp. Stat. Ann. 505/10(a) (West 2008); see also Conn. Gen. Stat. Ann. § 42-110g(a) (West 2012); N.J. Stat. Ann. § 56:8-19 (West 2012).  Courts thus have dismissed lawsuits on the basis of lack of statutory standing in addition to, or in lieu of, Article III standing where the plaintiff did not purchase the product at issue.  See, e.g., Padilla v. Costco Wholesale Corp., No. 11 C 7868, 2012 WL 2397012, at *3-4 (N.D. Ill. June 21, 2012) (dismissing plaintiffs' claim based on statutory standing because he did not allege that he purchased the product at issue).

[4]    See, e.g., Colucci v. ZonePerfect Nutrition Co., No. 12-2907-SC, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012) (allowing plaintiffs to assert challenges based on alleged false nutritional claims for nutritional bars where "the only obvious difference between the bars is their flavor"); Stewart v. Smart Balance, Inc., CIV.A. 11-6174 JLL, 2012 WL 4168584 (D.N.J. June 26, 2012) (dismissal of claims based on products plaintiffs did not purchase to be premature because, inter alia, the products were "closely related" and the basis for the advertising claims was the same).

of the Amended Complaint, allegedly made for Repairwear Uplifting Firming Cream, just one of the four products Plaintiffs did not purchase:

- "Moisture-rich cream boosts natural elastin and collagen − the stuff that gives skin its snap."

- "Helps organize skin into a tighter, stronger network."

- "Helps rebuild elasticity and firmness, helps visibly smooth out laugh lines from nose to mouth."

Even if these advertising claims were not − as they are here − substantively distinct from those made for the three purchased products (see Am. Compl. ¶ 29), demonstrating (or disproving) the veracity of these three claims would require scientific studies conducted on that specific product. In other words, addressing in this lawsuit even one of the four products never purchased by Plaintiffs would greatly expand and complicate the factual issues, with no savings in time and effort, no meaningful overlap, and, of course, no party plaintiff who could step forward and say she used the product.

In sum, although, for the reasons set forth below, Plaintiffs have woefully failed to state a claim for any of their legal theories, it is clear that at a minimum, Plaintiffs do not plead facts capable of establishing that they suffered any injury in fact from the advertising representations about the four products that they did not purchase.

**B.**     **Plaintiffs Lack Standing to Assert a Claim Under the Illinois UDTPA**

In order to maintain a claim under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"),[5] "the consumer must allege facts which would indicate that he is likely to be damaged in the future." Popp v. Cash Station, Inc., 613 N.E.2d 1150, 1157 (Ill. App. Ct. 1992) (internal citations omitted); see also Camasta v. Jos. A Bank Clothiers, Inc., No. 12 C 7782, 2013

---

[5]     Though Plaintiffs do not cite the UDTPA in their Amended Complaint, it appears that Count III of the Amended Complaint may in fact be based on an alleged violation of that statute, which would in turn be a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. See 815 Ill. Comp. Stat. Ann. 505/2 (West 2008).

WL 474509, at *6-*7 (N.D. Ill. Feb. 7, 2013).  Under the facts alleged, Plaintiff Stein cannot

plausibly assert that she is likely to be harmed in the future by Defendants' marketing practices

because she alleges that the so-called harm has already occurred – when she purchased Repair-

wear Eye Cream (Am. Compl. ¶ 23).  The UDTPA claim should therefore be dismissed.  See,

e.g., Popp, 613 N.E.2d at 1157 (dismissing UDTPA claim because the plaintiff was unable to

show that he was likely to be damaged again in the future).

## II.   PLAINTIFFS' ALLEGATIONS FAIL TO SATISFY TWOMBLY PLAUSIBILITY STANDARDS

The Amended Complaint asserts four legal theories:  (i) violations of state consumer pro-

tection/fraud statutes; (ii) breach of express warranty; (iii) breach of implied warranty; and (iv)

unjust enrichment.  But, the factual predicate for all four are the same – that promotional claims

for Clinique Repairwear cosmetics products are allegedly false and/or misleading.  Because that

factual predicate is not plausible based on the pleaded facts, the Amended Complaint should be

dismissed in its entirety.

### A.   Legal Standards Applicable to a Motion to Dismiss Under Rule 12(b)(6)

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  See McCall v.

Pataki, 232 F.3d 321, 322 (2d Cir. 2000).  When considering such a motion, the court construes

the complaint "in the light most favorable to the plaintiff," accepts all well-pled factual allega-

tions as true, and makes all reasonable inferences in the plaintiff's favor.  Zawacki v. Realogy

Corp., 628 F. Supp. 2d 274, 278 (D. Conn. 2009).

To survive a motion to dismiss, however, a complaint must contain sufficient factual mat-

ter that, if true, states a claim for relief that is plausible on its face.  See, e.g., Wilson v. Merrill

Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011) (plausibility standard requires "'more than a

sheer possibility that a defendant has acted unlawfully'") (quoting Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009)).  To that end, a plaintiff must plead "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft

v. Iqbal, 556 U.S. 662, 678, 1949 (2009).  Thus, a complaint must contain "more than an una-
dorned, the-defendant-unlawfully-harmed-me accusation," and bare assertions that merely list
the elements of a cause of action are insufficient when supported only by conclusory statements.
Id.  Furthermore, in deciding a motion to dismiss, courts will not presume such conclusory
statements to be true.  Id. at 686.

A number of federal Circuit Court decisions have upheld the dismissal of complaints
where plaintiffs have not alleged sufficient facts to render their claims "plausible," as opposed to
just "possible."  See Benzman v. Whitman, 523 F.3d 119, 129 (2d Cir. 2008) (dismissing "bare
allegation" that defendant, head of the Environmental Protection Agency, knowingly issued false
press releases, "in the absence of some supporting facts"); see also Khalik v. United Air Lines,
671 F.3d 1188, 1193 (10th Cir. 2012) ("[T]he Twombly/Iqbal standard recognizes a plaintiff
should have at least some relevant information to make the claims plausible on their face."); Ar-
gueta v. United States Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011)
(plausibility standard requires "'more than a sheer possibility that a defendant has acted unlaw-
fully'") (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); Santiago v. Warminster Twp.,
629 F.3d 121, 133 (3d Cir. 2010) ("'[P]ossibility' is no longer the touchstone for pleading suffi-
ciency after Twombly and Iqbal.  Plausibility is what matters.").  Indeed, as early as 2008, this
Court dismissed a complaint because it failed to meet the plausibility standards of Twombly.
See In re Parcel Tanker Shipping Servs. Antitrust Litig., 541 F. Supp. 2d 487, 491-92 (D. Conn.
2008) (Covello, J.).[6]

---

[6]     Numerous district courts have made similar findings.  See, e.g., Padilla, 2012 WL
2397012, at *4 (while complaint alleged that "'numerous clinical studies'" showed the state-
ments were false, "some level of detail of the fraud beyond what [was] pled is required," includ-
ing "'how' Costco's product labels were fraudulent"); Murphy v. Int'l Bus. Machines Corp., No.
10 Civ. 6055 (LAP), 2012 WL 566091, at *5 (S.D.N.Y. Feb. 21, 2012) (holding allegations that
defendant made "false and inaccurate" statements to be insufficient under Iqbal); Grimaldi v.
Paggioli, No. 3:08CV599 (SRU), 2010 WL 2698284, at *3 (D. Conn. July 8, 2010) ("It is not
*(cont'd)*

**B.      Plaintiffs Have Failed To Provide A Plausible Basis For The Allegations That Defendants Made False Or Misleading Advertising Claims**

As noted, Plaintiffs challenge several dozen advertising claims, for seven separate products.  (See Am. Compl. ¶ 29.)  Based on the wording and content of the challenged claims themselves, these alleged misrepresentations implicate scientific and technical issues.  It is readily apparent that, without their own relevant scientific testing or analysis, Plaintiffs can have no plausible basis for challenging these advertising claims as false and/or misleading.  Yet, there can be no question that Plaintiffs have failed to plead any such evidence.[7]

As noted, as respects supporting clinical evidence Clinique may have in its files, Plaintiffs explicitly disavow any challenge to such evidence and instead advise the Court that they "intend to prove" their position "through expert testimony and through information they believe will be revealed in discovery" (Am. Compl. ¶ 71.)  However, Plaintiffs cannot, as they seek to do here, simply file a complaint (or in this case, four complaints), as a pretext for discovery and future investigation and analysis.  See Coal. for a Level Playing Field, L.L.C. v. Autozone, Inc., 813 F. Supp. 2d 557, 568 (S.D.N.Y. 2011) ("The crux of plaintiffs' motion to amend is . . . their contention that they need discovery to develop the necessary factual content to plausibly plead (and eventually prove) their claims. . . .  Plaintiffs' implicit plea for discovery runs contrary to the pleading requirements of Iqbal and Twombly."); see also DM Research, Inc. v. Coll. of Am.

---

*(cont'd from previous page)*

enough to allege conduct alone, the factual allegations must be sufficient to raise the claim above the level of speculative and assert a cause of action that demonstrates an entitlement to relief.")

[7]      Nor have Plaintiffs even bothered to allege that they used the products and achieved unsatisfactory results.  Notably, at least two of the Plaintiffs have acknowledged purchasing their Repairwear products more than once (see Am. Compl. ¶¶ 21, 22), further undermining the plausibility of their claims that such products do not work.  See Greene v. BMW of N. Am., No. 2:11-04220 (WJM), 2012 WL 5986457, at *1, *3 (D.N.J. Nov. 28, 2012) (in claim under New Jersey Consumer Fraud Act, holding that it was "simply implausible" that the tires at issue were dangerous, given the absence of proof proffered by plaintiff and the fact that plaintiff had purchased the same tires repeatedly).

Pathologists, 170 F.3d 53, 55 (1st Cir.1999) ("[T]he price of entry, even to discovery, is for the plaintiff to allege a <u>factual</u> predicate concrete enough to warrant further proceedings, which may be costly and burdensome. Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.").

The "fishing expedition" concern expressed in <u>DM Research</u>, 170 F.3d at 55, is certainly applicable here. Assertions such as that "the Repairwear Products do not and cannot live up to the efficacy claims [Clinique] made and continues to make" (Am. Compl. ¶ 5), or that such products "do not, and cannot, provide the results [Clinique] promises" (<u>id.</u> ¶ 10), are nothing more than extreme examples of conclusory allegations – not the supportive facts required by the <u>Twombly</u> plausibility standards. Also inadequate are lengthy sections of the Amended Complaint that accuse Defendants of enhancing their alleged deception by using scientific references (<u>id.</u> ¶¶ 6, 13) or visual demonstrations (<u>id.</u> ¶¶ 35-43), and frequently introducing new products (<u>id.</u> ¶¶ 46-50). These are all common, and neutral, marketing devices or business practices – they have no bearing on the truth or falsity of any advertising claim. <u>Cf.</u> <u>Coal. For a Level Playing Field</u>, 813 F. Supp. 2d at 560. Nor does the fact that Clinique profits from the sales of its skincare products, one of Plaintiffs' repeated themes. (<u>See, e.g.</u>, Am. Compl. ¶¶ 6 ("reaping enormous profits"), 68 ("reaped massive profits").)[8]

As respects visual demonstrations, provided that they are representative of the results consumers can expect to achieve, they are widely accepted. <u>See, e.g.</u>, ABC Television Network, <u>Advertising Standards and Guidelines</u>, at 35 & 62 (Oct. 2012), <u>available at</u> http://abcallaccess.com/wp-content/uploads/2012/10/BSP-Advertising-Guidelines-2012.pdf ("ABC Television") ("Advertising which utilizes a reenactment or simulation must accurately

---

[8]      Defendants are aware of no legal precedent indicating that sales success is probative of consumer deception. <u>Cf.</u> <u>Chiste v. Hotels.com L.P.</u>, 756 F. Supp. 2d 382, 405 (S.D.N.Y. 2010).

depict the product or service involved"; "Demonstrations should depict product performance in a way that accurately reflects how the product performs when used by consumers."); see also, NBC Universal, Inc., Advertising Guidelines, at 14 (2011), available at https://nbcuadstandards.com/files/NBC_Advertising_Guidelines.pdf;jsessionid=C3D196F33C8E 5646AFF7670D5453F971 (requiring demonstrations to be "accurate").  Here, though Plaintiffs vehemently protest the visual demonstrations in Clinique's advertising (see, e.g., Am. Compl. ¶ 42), conspicuously missing from the Amended Complaint is any allegation whatsoever that Clinique's demonstrations are not accurate and representative of consumer results.

Plaintiffs also try to anchor several of their "false and/or misleading" allegations on im-plausible word games.  For example, pointing out that Clinique used "dramatization" tools to il-lustrate potential product benefits (Am. Compl. ¶¶ 39-40), Plaintiffs then flatly assert that con-sumers "are left with the impression that they will obtain, on average, the results 'dramatized' in the picture, which are, in reality, impossible to obtain."  (Id. ¶ 40.)  Of course, Plaintiffs do not explain why the results depicted are "impossible" to obtain, but rather rely on the nonsensical assertion that "a dramatization, by its very nature, does not depict actual or real results – it is a fictional interpretation."  Id.  This is nonsense – ABC Television Network's Advertising Stand-ards and Guidelines specifically define a dramatization as "a fictionalized depiction created sole-ly for the purpose of the advertising to portray the event, product or service involved."  ABC Television Network at 35 (emphasis added).  It is readily apparent that all Plaintiffs have tried to do here is to create something out of nothing, either by twisting words or by ignoring their ac-cepted meaning.

Finally, provocative language – accusing Defendants of being "snake-oil" salesmen, "reaping enormous profits" by intentionally "dup[ing]" innocent consumers, and "prey[ing] on consumers' primal fear of aging and their eternal hope that products exist that can eliminate the

signs of aging and effectively turn back time" (Am. Compl. ¶¶ 2, 6) – is not a proper substitute for the missing factual allegations.

## III.  PLAINTIFFS' CLAIMS UNDER EACH OF THE ENUMERATED CONSUMER PROTECTION/FRAUD STATUTES ARE LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED

### A.  Elements Of Claims Asserted Under The Relevant Consumer Protection/Fraud Statutes

The Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. Ann. §§ 42-110a to 42-110q (West 2012), provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a) (West 2012).  Thus, a plaintiff must allege and establish that (1) the defendant has engaged in a "prohibited act," and (2) as a result of this act, the plaintiff suffered an injury (i.e., "the prohibited act was the proximate cause of a harm to the plaintiff"). Abrahams v. Young & Rubicam, Inc., 240 Conn. 300, 306, 692 A.2d 709, 712 (1997).

In order to state a claim under New Jersey's Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2 (West 2012), a plaintiff "must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007).

With respect to Illinois law, a proper claim under the Illinois Consumer Fraud Act ("ICFA"), 815 Ill. Comp. Stat. Ann. 505/2 to 505/12 (West 2008), requires that a plaintiff allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." Oliveira v. Amoco Oil Co., 776 N.E.2d 151, 160 (Ill. 2002).  The Uniform Deceptive Trade Practices Act ("UDTPA") provides that "[a] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person . . . represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities

that they do not have . . . ." 815 Ill. Comp. Stat. Ann. 510/2(a)(5) (West 2008). A defendant is liable under ICFA if it used or employed any practice listed in Section 2 of UDTPA. Id. at 505/2.

A violation under these statutes may be established either by showing a deceptive practice, or a practice that violates public policy. Frederico, 507 F.3d at 202; In re Michaels Stores Pin Pad Litig., 830 F. Supp. 2d 518, 525 (N.D. Ill. 2011); Muniz v. Kravis, 59 Conn. App. 704, 713, 757 A.2d 1207, 1213-14 (2000). This could include affirmative acts, knowing omissions, or violations of regulations. Frederico, 507 F.3d at 202; Jamison v. Summer Infant (USA), Inc., 778 F. Supp. 2d 900, 907 (N.D. Ill. 2011); Walsh v. Seaboard Sur. Co., 94 F. Supp. 2d 205, 213 (D. Conn. 2000), aff'd, 23 F. App'x 66 (2d Cir. 2001).

To be actionable under the "deceptive" prong of any of the statutes, an affirmative misrepresentation or knowing omission must be likely to mislead the "reasonable" consumer. See In re Salvatore, No. 10-16449/JHW, 2011 WL 2115816, at *7 (Bankr. D.N.J. May 26, 2011); Tylka v. Gerber Products Co., No. 96 C 1647, 1999 WL 495126, at *6 (N.D. Ill. July 1, 1999); Caldor, Inc. v. Heslin, 215 Conn. 590, 597, 577 A.2d 1009, 1013 (1990). With respect to a plaintiff's burden of proof, a number of courts have adopted the Lanham Act standard that a plaintiff must affirmatively prove that each of the challenged advertising claims is false and misleading, and not simply assert that the defendant lacks substantiation. See, e.g., Scheuerman v. Nestle Healthcare Nutrition, Inc., No. 10 C 3684 (FSH) (PS), 2012 WL 2916827, at *7 (D.N.J. July 17, 2012); Empire Today, LLC v. Nat'l Floors Direct, Inc., 788 F. Supp. 2d 7, 26 (D. Mass. 2011).

### B. Plaintiffs' Amended Complaint Lacks The Requisite Specificity Mandated By Rule 9(b)

#### 1. Legal Standards

A number of decisions have held that Rule 9(b) applies to CUTPA claims that are grounded in fraud.  See, e.g., Allstate Ins. Co. v. Advanced Health Professionals, P.C., 256 F.R.D. 49, 52 n.3 (D. Conn. 2008); see also Aviamax Aviation Ltd. v. Bombardier Aerospace Corp., No. 3:08-CV-1958(CFD), 2010 WL 1882316 (D. Conn. May 10, 2010), at *9 (dismissing CUTPA claim alleging fraudulent misrepresentations in the context of a contractual breach because of plaintiff's failure to plead the claim with particularity).  Moreover, it is well-settled that the heightened pleading standards of Rule 9(b) apply to NJCFA claims, see Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999), as well as to any claim brought under the Illinois statutes that alleges deception or sounds in fraud, see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co., 631 F.3d 436, 441 (7th Cir. 2011); Camasta, 2013 WL 474509, at *2.

Under Rule 9(b), a party who alleges fraud or mistake "must state with particularity the circumstances constituting fraud or mistake."  Thus, a plaintiff must plead "'the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation.'"  In re Picard, 339 B.R. 542, 550 (Bankr. D. Conn. 2006) (citation omitted); Luce v. Edelstein, 802 F.2d 49, 54-55 (2d Cir. 1986) (dismissing allegations of fraudulent misrepresentations where plaintiffs did not identify the alleged misrepresentations or why they were false); Crozier v. Johnson & Johnson Consumer Cos., No. 12-0008 (JBS/KMW), 2012 WL 4507381, at *12 (D.N.J. Sept. 28, 2012) (applying Rule 9(b) and dismissing complaints where they contained "no information about when Plaintiffs saw [defendants'] advertising, when or where they bought the [product], why they bought the [product], whether they bought the [product] because [of advertising], or whether Plaintiffs even noticed the [advertising]").

Stated another way, the plaintiff must plead the "who, what, where, when, and how" of the alleged conduct. Romag Fasteners, Inc. v. Fossil, Inc., No. 3:10-CV-1827 CFD, 2011 WL 2446404, at *3 (D. Conn. June 15, 2011); see also Pirelli Armstrong, 631 F.3d at 442 (allegations require precision); DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990) ("circumstances" require detail).

### 2.   Rule 9(b) Applies To Plaintiffs' Allegations Because They Sound In Fraud

There can be no doubt that Plaintiffs' allegations sound in fraud, and that Plaintiffs allege that Defendants engaged in deceptive activities.[9] For instance, the Amended Complaint alleges the following:

- Defendants' promotional claims are "the same as that of the quintessential snake-oil salesman." (Am. Compl. ¶ 6.)

- "[Clinique] dupes consumers with false, misleading, and/or deceptive promises of specific results it knows its products cannot deliver, and does so with one goal in mind – reaping enormous profits." (Id.)

- "[Clinique]'s marketing campaign for each of the Repairwear Products follows the same deceptive pattern and practice." (Id. ¶ 13.)

- Clinique has a "short product cycle" in order to "perpetuate its deceptive and misleading scheme." (Id. ¶ 46.)

- "[Clinique] intentionally makes the choice to convey a more highly efficacious – and more misleading – message in order to convince consumers that its products are superior to its competitors, and therein drive greater sales and profits." (Id. ¶ 59.)

- Clinique is "in a position to actually know, or should know," that the results it represents its products can deliver are impossible to obtain. (Id. ¶ 65.)

- "As a result of its deceptive conduct, Estée has enjoyed increased sales and thus has reaped massive profits." (Id. ¶ 68.)

---

[9]    While Plaintiffs appear to make a half-hearted attempt to state a claim under the "unfair" prong of ICFA (see Am. Compl. ¶ 122 ("Defendants' acts and practices, alleged herein, constitute unfair, deceptive, and/or fraudulent business practices . . . .")), merely including the word "unfair" in the Amended Complaint is not sufficient to relieve Plaintiffs of the pleading requirements of Rule 9(b). See Pirelli, 631 F.3d at 446-47 (applying Rule 9(b) to plaintiff's "unfair" claim under ICFA).

- "Defendants knew, or should have known, that their representations and omissions were false, untrue, misleading, deceptive and/or likely to deceive." (Id. ¶ 166.)

Indeed, the Amended Complaint includes a claim for "Violation of the Consumer Fraud Laws of the Various States." (Am. Compl. Count VIII, p. 55, citing 37 statutes (emphasis added).) Accordingly, Plaintiffs must satisfy the heightened pleading standards of Rule 9(b) for all of their state consumer protection/fraud claims.

### 3.     The Details of Plaintiffs' Allegations Are Woefully Inadequate

There are three reasons why Plaintiffs have failed to satisfy the Rule 9(b) pleading requirements, any one of which by itself justifies dismissal of their claims under the cited state consumer protection/fraud statutes.

### (a)     Plaintiffs Failed To Provide Sufficient Details Regarding Their Purchase and Usage

First, as noted, despite a lengthy Amended Complaint, with respect to their personal claims for relief, Plaintiffs provide little detail regarding their purchase of the Clinique products. For instance, Plaintiff Ohayon alleges that, "[o]ver the course of the last two years," she purchased Repairwear Laser Focus at a Bloomingdale's department store in New Jersey. (Am. Compl. ¶ 22.) There are no allegations whatsoever identifying even approximately how many times Ohayon purchased the product, or whether she was a product user, at any time, for that entire period of time, or for some longer period of time. Indeed, as noted, it may be that Ms. Ohayon was, and continues to be, a satisfied user.

The same holds true for Plaintiffs DiMuro and Stein, both of whom acknowledge purchasing the product over two years ago, but make no allegations regarding more recent purchase or usage, or, if they stopped using the product, why. (Am. Compl. ¶¶ 21, 23.) Though the Amended Complaint added certain information regarding the Plaintiffs' purchases of the Clinique products which was absent from the original Complaints (for instance, that the products were purchased for "full retail price and for personal use"), Plaintiffs still fail to state whether

they even used the products, and if so, whether the results they obtained were not satisfactory.
(Id. ¶¶ 21-23.)

### (b)   Plaintiffs Fail To Identify Which Statements Allegedly Deceived Them

Second, as noted, while the Amended Complaint challenges several dozen marketing claims for Clinique Repairwear products as allegedly false and/or misleading (see, e.g., Am. Compl. ¶ 29), no Plaintiff alleges that she personally saw even one of these specific claims, or that her decision to purchase the products was influenced by any of them. Instead, Plaintiffs allege that each "saw, read, and received [Clinique's] material misrepresentations in print advertisements, on the Clinique website, and at the point of sale, as described more fully herein . . . ." (E.g., id. ¶ 21.)  Additionally, the Amended Complaint states that Plaintiffs DiMuro and Ohayon "read and were exposed to" Clinique's advertisements "in magazines including Good Housekeeping, Redbook, and Ladies Home Journal, among others, prior to and after making their purchases." (Id. ¶ 56.)  Essentially, then, Plaintiffs' only identification of advertising statements they may have seen is to list three well-known publications and assert that two of the Plaintiffs saw advertisements in those publications at some point prior to or during the previous two years. This type of conclusory pleading cannot be considered sufficient for purposes of Rule 9(b).

As just one illustrative example of this pleading failure, Plaintiffs take specific issue with the advertising claim, "Repair and prevent the appearance of lines and wrinkles," arguing that "[c]onsumers are . . . left with [a] false, misleading, and/or deceptive impression." (Id. ¶ 58.) This assertion was made for Repairwear Eye Cream, which Plaintiff Stein says she purchased. (Id. ¶ 23.)  Yet, conspicuously absent from the Amended Complaint is any allegation whatsoever that Ms. Stein herself saw the claim, interpreted it as the Amended Complaint purports consumers would, and as a consequence was damaged. (Nor is there any evidence pleaded that might plausibly show that the claim is false.)

Without alleging which of the advertising claims "actually deceive[d]" the Plaintiffs (as well as how Plaintiffs were deceived and damaged by such statements), the Amended Complaint fails to allege the necessary actual damage and proximate cause elements required by all of the consumer protection/fraud statutes at issue here.  See Shannon v. Boise Cascade Corp., 805 N.E.2d 213, 217 (Ill. 2004); N.J. Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 178 (N.J. App. Div. 2003); cf. Abrahams, 240 Conn. at 306, 692 A.2d at 712.  Plaintiffs' attempt to excuse these deficiencies by asserting that "[t]he specific dates and places of each of [Clinique's] advertisements for Repairwear Products are in the possession of Defendants" is not acceptable. See Wood ex rel. United States v. Applied Research Assocs., Inc., 328 F. App'x 744, 747 (2d Cir. 2009) (affirming dismissal with prejudice pursuant to Rule 9(b) on the grounds that "'[o]ne of the . . . purposes of Rule 9(b) is to discourage the filing of complaints as a pretext for discovery of unknown wrongs'" (citation omitted)); Madonna v. United States, 878 F.2d 62, 66 (2d Cir. 1989) (plaintiff's "contention, that discovery will unearth information tending to prove his contention of fraud, is precisely what Rule 9(b) attempts to discourage"); Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 526-27 (D.N.J. 2008) (holding that "these facts are uniquely within Plaintiffs' control and discovery will not enable Plaintiffs to allege reliance on these statements with any additional specificity").

### (c)    Plaintiffs Fail To Cite Facts That Might Show the Statements About Repairwear Products Were False or Misleading

Third, as discussed above, Plaintiffs offer no evidence whatsoever as to why any of the dozens of claims they challenge, including those for the three products any of the Plaintiffs actually purchased, are false.  Their numerous conclusory, boilerplate assertions that all the claims are false or misleading (dressed up with ad hominem attacks such as "snake-oil salesman") are no substitute for actual evidence.  While fraud allegations may be based on information and belief when facts are "'peculiarly within the opposing party's knowledge,'" Luce, 802 F.2d at 54 n.1 (citation omitted), that is certainly not the case here, given that the benefits of cosmetics

23

products are consumer-perceptible.  Even where such pleading is permitted, "a complaint must

adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed

pleading standard."  Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990); see also

Andreo v. Friendlander, Gaines, Cohen, Rosenthal & Rosenberg, 651 F. Supp. 877, 880 (D.

Conn. 1986) ("[W]here allegations are based on information and belief the complaint must set

forth the source of the information and the reasons for the belief.  Thus, conclusory allegations

that defendants participated in a scheme to defraud are insufficient." (citation omitted)).

*      *      *

    In sum, the Amended Complaint is woefully lacking in the "who, what, where, when, and

how" required for fraud allegations.  The missing information is particularly critical in a lawsuit

such as this, as it is precisely the information that Plaintiffs have not disclosed in this, their

fourth version of a complaint, that could well demonstrate clearly (and early in the proceeding)

that individual issues will necessarily overwhelm alleged common issues and defeat any effort to

certify a class.  See, e.g., Chow v. Neutrogena Corp., No. CV 12-04624 R (JCx) (C.D. Cal. Jan.

22, 2013) (ECF No. 100) (denying class certification for claims made under California consumer

protection and warranty law challenging as false and misleading wrinkle repair advertising

claims).

### C.    Certain of the Allegedly Deceptive Claims Cited by Plaintiffs Constitute Nonactionable Puffery

#### 1.    Legal Standards

    Advertising claims that fall into the category of "puffing" do not constitute false advertis-

ing.  "'Puffery is an exaggeration or overstatement expressed in broad, vague, and commendato-

ry language.'"  Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 159 (2d Cir. 2007)

(citation omitted).  It generally falls into one of two forms – "'a general claim of superiority over

comparable products that is so vague that it can be understood as nothing more than a mere ex-

pression of opinion,'" or "'an exaggerated, blustering, and boasting statement upon which no

24

reasonable buyer would be justified in relying.'" Id. at 160 (citations omitted). Relatedly, subjective claims about products that cannot be proven either true or false constitute puffery. Malaco Leaf, AB v. Promotion In Motion, Inc., 287 F. Supp. 2d 355, 379 (S.D.N.Y. 2003).[10]

Thus, many courts have dismissed allegations of false advertising on the grounds that the challenged advertising constitutes puffery as a matter of law. See, e.g., Rosenthal Collins Group, LLC v. Trading Techs. Int'l, Inc., No. 05 C 4088, 2005 WL 3557947, at *10 (N.D. Ill. Dec. 26, 2005) (computer software that is "innovative" and "leveling the playing field" is puffery); Cytyc Corp. v. Neuromedical Sys., Inc., 12 F. Supp. 2d 296, 300 (S.D.N.Y. 1998) (statements that a product designed to detect cervical cancer "presents cells with unprecedented clarity" or that it is "the new 'Gold Standard' for cytology laboratories" is puffery); Gillette Co. v. Wilkinson Sword, Inc., No. 89 CIV. 3586 (KMW), 1989 WL 82453, at *4 (S.D.N.Y. July 6, 1989) (claim that new wet razor represents "a major technological breakthrough" is puffery).

Because the consumer protection/fraud statutes at issue herein apply the "reasonable consumer" standard to allegedly false or misleading advertising claims (see In re Salvatore, 2011 WL 2115816, at *7 (applying NJCFA); Tylka, 1999 WL 495126, at *6 (applying ICFA); Caldor, Inc., 215 Conn. At 597, 577 A.2d at 1013 (applying CUTPA)), it necessarily follows that any advertising properly categorized as puffery cannot be actionable under those statutes. See, e.g., Hammer v. Vital Pharmaceuticals, Inc., No. 11-4124, 2012 WL 1018842, at *7 (D.N.J. Mar. 26, 2012) ( "[T]he world's fastest, hardest hitting fat incinerator" and "an authentic synergistic blend of ingredients…[that] leave[s] scientists wondering how amazing this stuff is," "are the epitome of vague and highly subjective claims of superiority."); Saltzman v. Pella Corp., No. 06 C 4481, 2007 WL 844883, at *4 (N.D. Ill. Mar. 20, 2007) (dismissing ICFA claims on the grounds that

---

[10]     Because they cannot be proven true or false, such vague promises by advertisers also cannot be enforced as a contract or create a claim for breach of express warranty. Bologna v. Allstate Ins. Co., 138 F. Supp. 2d 310, 324 (E.D.N.Y. 2001); Omega, 30 F. Supp. 2d at 247-48.

"durable," "manufactured to high quality standards," and "maintenance free," are subjective and non-quantifiable claims, and therefore puffery); cf. <u>Rizzo Constr. Pool Co. v. Riefler</u>, No. 391537, 2003 WL 22962196, at *7 (Conn. Super. Ct. Dec. 3, 2003) (holding "perfection is our tradition" to be "mere puffing").

**2.      The Challenged Claims That Are
<u>Obvious "Puffery" Should Be Dismissed</u>**

Several of the advertising statements identified by Plaintiffs in the Amended Complaint can be clearly categorized as puffery, as defined by <u>Time Warner</u>, 497 F.3d at 160, as a matter of law.  These include:

- "Fountain of youth." (Am. Compl. ¶ 2.)

- "De-Aging." (<u>Id.</u> ¶¶ 8, 12.)

- "Skin's future is brighter." (<u>Id.</u> ¶ 29.)

- "Forgive the past, protect the future."  (<u>Id.</u> ¶ 53.)

- "A second chance for every skin."  (<u>Id.</u> ¶¶ 53, 60.)

- "Defy gravity."  (<u>Id.</u> ¶¶ 29, 60, 65, 86, 93.)

In addition, though Plaintiffs also take issue with Clinique's use of the terms "youth con-serving agents" and "youth-extending agents" (<u>see</u> Am. Compl. ¶¶ 2, 60), in addition to clearly being exaggerated puffery, the inclusion of these advertising claims in the Amended Complaint is particularly curious because Plaintiffs allege those claims were made for a product in the Clinique Youth Surge collection, not the Repairwear collection at issue herein.[11]  (<u>See id.</u>)

Accordingly, each of Plaintiffs' claims should be dismissed (or stricken) with respect to these advertising statements.

---

[11]      The original DiMuro Complaint in this Court (and the original Stein and Ohayon Com-plaints) did challenge Youth Surge products, and Plaintiffs may have simply missed this refer-ence when redrafting the allegations to eliminate the references to Youth Surge. (<u>Compare</u> Di-Muro Compl. ¶ 3 <u>with</u> Am. Compl. ¶ 2.)

26

**D.      Plaintiffs' Omissions-Based Allegations Should Be Dismissed**

With respect to Plaintiffs' allegations regarding material omissions (e.g., Am. Compl. ¶ 67), a failure to disclose information violates CUTPA only when "in light of all the circumstances, there is a duty to disclose." Normand Josef Enters., Inc. v. Conn. Nat'l Bank, 230 Conn. 486, 523, 646 A.2d 1289, 1307 (1994). Plaintiffs have made no allegation of an existing duty here, nor could they – there was no fiduciary relationship between the parties or other source from which such "duty" could arise.

Plaintiffs' omissions-based claims under the NJCFA and ICFA fare no better, as both require that defendant knows of the material fact being concealed. See Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 297-99 (D.N.J. 2009); White v. DaimlerChrysler Corp., 856 N.E.2d 542, 549 (Ill. App. Ct. 2006). Both of those statutes thus require a plaintiff to plead facts that would suggest that Clinique knew that its marketing claims were false. See, e.g., Ibarolla v. Nutrex Research, Inc., No. 12 C 4848, 2012 WL 5381236, at *4-5 (N.D. Ill. Oct. 31, 2012) (plaintiff must provide additional information other than just conclusory statements to support its claim that defendant knew of statement's falsity). While Plaintiffs do make boilerplate, conclusory assertions of Clinique's knowledge and intent (e.g., Am. Compl. ¶¶ 6, 8, 33, 65), given Plaintiffs' renunciation of any attempt to prove that Clinique's substantiating scientific studies are invalid (id. ¶ 71), these are nothing more than empty allegations.

In addition, Plaintiffs' omissions theory seems to be essentially premised upon an attempt to recast Clinique's alleged affirmative misrepresentations as a failure to disclose that such advertising claims were false. See, e.g., Am. Compl. ¶ 67 (alleging Clinique failed to disclose that the "Real Before and After" pictures are not in fact typical of actual results, and that the Repair-

27

wear products could not in fact "de-age" the skin).[12]  This effort must fail, as the law is clear that

affirmative, misleading statements cannot be challenged as an omission of the statements' falsity.

See, e.g., Caleb & Co. v. E.I. DuPont de Nemours & Co., 599 F. Supp. 1468, 1474-75 (S.D.N.Y.

1984); Gennari v. Weichert Co. Realtors, 691 A.2d 350, 366 (N.J. 1997).

Further, to the extent that Plaintiffs are contending that Defendants should have disclosed

that there were less expensive products on the market that might satisfy consumers' needs (e.g.,

Am. Compl. ¶ 67), Clinique is under no obligation to promote the products of its competitors.

See Adamson v. Ortho-McNeil Pharm., Inc., 463 F. Supp. 2d 496, 504 (D.N.J. 2006) ("[C]ourts

have routinely held that competitors have no duty to advertise or sell a competitor's products.");

Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801, 857 (Ill. 2005) ("Under plaintiffs' rea-

soning, it would appear that to avoid liability under the Act, every knowing sale of a brand of

product which is not the top brand would have to carry a disclaimer: 'Notice, our brand is not, on

the whole, as good as our competitor's.'").

In sum, all alleged "omissions" claims should be dismissed or stricken.

## IV.   PLAINTIFFS' CLAIM FOR BREACH OF EXPRESS WARRANTY IS LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED

### A.   Legal Standards

For purposes of this motion, the elements of a breach of express warranty claim are in

principal respects the same in Connecticut, New Jersey, and Illinois:  (1) the existence of an ex-

press warranty that is part of the basis of the bargain, (2) the failure of the seller to adhere to that

warranty, and (3) damages proximately caused by the breach.[13]  See Latraverse v. Kia Motors of

---

[12]   As noted, the "de-aging" claim is non-actionable puffery, and making an omissions claim on the basis of puffing is simply not plausible.

[13]   Though certain of the differences in the requirements for this and Plaintiffs' remaining claims in each of the three states are discussed below, the remaining discrepancies need not be addressed at this time.

Am., Inc., No. 10-6133 (RBK/AMD), 2011 WL 3273150, at *3 (D.N.J. July 27, 2011); Oggi

Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc., 865 N.E.2d 334, 340 (Ill. 2007); Omega

Eng'g, Inc. v. Eastman Kodak Co., 30 F. Supp. 2d 226, 246 (D. Conn. 1998).

**B.    Plaintiffs' Express Warranty Claim Should be Dismissed**

Plaintiffs' breach of express warranty claim (Count V) should be dismissed for several

reasons.

**1.    Failure to Allege the Required Privity
of Contract and Pre-Lawsuit Notice**

With respect to Plaintiff Stein (Illinois), the law is clear that privity of contract is required

in actions for breach of warranty.  N. Ins. Co. of N.Y. v. Silverton Marine Corp., No. 10 CV 345,

2010 WL 2574225, at *2 (N.D. Ill. June 23, 2010).  Thus, her breach of warranty claim must be

dismissed, as it is based on one or more purchases made in a department store, and not from

Clinique itself.  (See Am. Compl. ¶¶ 23.)

Moreover, the Amended Complaint – which seeks recovery only for so-called economic

harm – fails to allege that Plaintiffs gave the Defendants timely notice of breach and a reasonable

opportunity to cure, as required under both Connecticut and Illinois law.  See Conn. Gen. Stat.

Ann § 42a-2-607 (West 2009); 810 Ill. Comp. Stat. Ann. 5/2-607 (3) (West 2009).  Here, there is

no allegation that Defendants were given pre-suit notice, and therefore the breach of warranty

count should be dismissed as to both Plaintiffs DiMuro and Stein for this reason as well.  See,

e.g., Microsoft Corp. v. Logical Choice Computers, Inc., 99 C 1300, 2000 WL 1038143, at *3-4

(N.D. Ill. July 24, 2000); Benchmark Bldg. Corp. v. United Builders Supply Co., 1992 Conn.

Super. LEXIS 1629, at *5 (May 28, 1992) ("The plaintiff's amended complaint fails to allege

notice as required by [42a-607(3)], and the breach of warranty claims . . . are therefore legally

insufficient and are stricken.").

### 2. Failure to Plead Specific Language That Could Constitute an Express Warranty

It is clear that the Amended Complaint fails to plead sufficiently specific language that could constitute an express warranty. In the express warranty count (Am. Compl. ¶¶ 127-36), the scattershot Amended Complaint repeats a number of advertising claims about the seven Clinique Repairwear products identified earlier in the pleading, only some of which are representations about products Plaintiffs actually bought. (Compare Am. Compl. ¶ 29 with id. ¶ 133.) Plaintiffs, however, do not plead that they even saw any of these specific representations prior to purchase. Plaintiffs thus have failed to allege a statement that formed part of the basis of the bargain. Omega Eng'g, Inc., 30 F. Supp. 2d at 246 ("While advertisements can be part of the basis of the bargain, the plaintiff must show, at a minimum[,] that he or his agent knew of and relied on the statement.").

### 3. Failure to Plausibly Claim a Breach of Warranty

Finally, the Amended Complaint fails to plausibly claim that the alleged warranty was breached, or that such breach caused Plaintiffs' injury. Did any Plaintiff actually use a Repairwear product as directed? Did the product fail to deliver the results that a Plaintiff alleges she believes she was promised, based on a specific statement made by the advertiser? The Amended Complaint does not say. Without such allegations, there can be no plausible breach or plausible proximate cause. See Johnson v. Sears Roebuck & Co., 2007 U.S. Dist. LEXIS 63657, at *15-16 (D. Conn. Aug. 29, 2007) (granting summary judgment on warranty claim where plaintiff proffered no evidence that subject furnace malfunctioned and caused her injury).

## V. PLAINTIFFS' CLAIM FOR BREACH OF IMPLIED WARRANTY IS LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED

### A. Legal Standards

Under the theory of implied warranty of merchantability, goods must be "'fit for the ordinary purposes for which such goods are used.'" Sportmart, Inc. v. Spirit Mfg., Inc., 97 C 7120,

30

1999 WL 350662, at *3 (N.D. Ill. May 17, 1999) (quoting 810 Ill. Comp. Stat. Ann 5/2-314

(West 2009)).  "In order for the implied warranty of merchantability to be breached, the product

at issue must have been defective or not fit for the ordinary purpose for which it was intended."

In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig., Civ. No. 08-939, 2009 WL

2940081, at *16 (D.N.J. Sept. 11, 2009).

　　　However, the "implied warranty of merchantability does not impose a general require-

ment that goods precisely fulfill the expectation of the buyer."  Lieberson v. Johnson & Johnson

Consumer Cos., Inc., 865 F. Supp. 2d 529, 542 (D.N.J. 2011) (emphasis added) (internal quota-

tions and citation omitted); Skelton v. General Motors Corp., 500 F. Supp. 1181, 1191 (N.D. Ill.

1980), rev'd on other grounds, 660 F.2d 311 (7th Cir. 1981).  "Instead, it provides for a mini-

mum level of quality."  Hughes v. Panasonic Consumer Elects. Co., No. 10-846 (SDW), 2011

WL 2976839, at *22 (D.N.J. July 21, 2011).  Thus, courts will look to the *general* purpose for

which a product is being sold, see Ferrari v. Am. Honda Motor Co., 2009 WL 211702, at *3

(N.J. Super. Ct. Jan. 30, 2009), rather than specifically advertised claims.  See Lieberson, 865 F.

Supp. 2d at 543 ("Indeed, although the Products may have been advertised as helping babies

sleep, such advertising alone cannot transform the 'general' purpose of soap and lotion into

something entirely unrelated.")

　　　An implied warranty of fitness for a particular purpose exists "'[w]here the seller at the

time of contracting has reason to know any particular purpose for which the goods are required

and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.'"

Gray v. Abbott Labs., Inc., No. 10 cv 6377, 2011 WL 3022274, at *7 (N.D. Ill. July 22, 2011)

(alteration in original) (citing Ga. Code Ann. § 11-2-314(1), 11-2-315) (West 2003); Rait v.

Sears, Roebuck & Co., No. 08-2461 (JLL), 2009 WL 250309, at *5 (D.N.J. Feb. 3, 2009).  A

"'particular' purpose differs from the ordinary purpose for which the goods are used in that it

envisages a specific use by the buyer."  Gray, 2011 WL 3022274, at *7 (citing § 11-2-315, cm

31

2); <u>Hartford Cas. Ins. Co. v. PureTech Waters of Am., LLC</u>, No. CV116021419S, 2012 WL 1435221, at *2 (Conn. Super. Ct. Mar. 30, 2012).

**B.      <u>Plaintiffs' Implied Warranty Theories Should Be Dismissed</u>**

Plaintiffs DiMuro and Stein's theories of breach of implied warranty must fail for the same reasons their express warranty claim fails: there was no pre-suit notice (as respects both Ms. DiMuro and Ms. Stein) or privity of contract (as respects Ms. Stein).  <u>See, e.g.</u>, <u>Travelers Prop. & Cas. Ins. Corp. v. Yankee Gas Servs. Co.</u>, No. CV 990266606S, 2000 WL 775558, at *2-3 (Conn. Super. Ct. May 19, 2000); <u>Connick v. Suzuki Motor Co.</u>, 675 N.E.2d 584, 589 (Ill. 1996).

In addition, with respect to all three Plaintiffs' claims as to the implied warranty of fitness for the products' ordinary purpose, Plaintiffs have not adequately alleged that the Clinique products did not meet "a minimum level of quality," <u>see</u> <u>Hughes</u>, 2011 WL 2976839, at *22 (internal quotations omitted).  As noted above, Plaintiffs do not assert that they used the products themselves with no success, but rather repeatedly state that the products "do not, and cannot, provide" the advertised results.  (<u>See, e.g.</u>, Am. Compl. ¶ 10; <u>see also</u> <u>id.</u> ¶ 126 (alleging the purchases are "of no value").)  Yet Plaintiffs provide no plausible factual basis whatsoever for these contentions.  <u>See, e.g.</u>, <u>Greene v. BMW of N. Am.</u>, No. 2:11-04220 (WJM), 2012 WL 5986457, *4 (D.N.J. Nov. 28, 2012) ("The Court cannot allow a breach of implied warranty claim to proceed on little more than speculation.").  As at least two of the Plaintiffs were repeat purchasers (<u>see</u> Am. Compl. ¶¶ 21-23), the only factual evidence on the issue strongly suggests that the products had at least some positive value as cosmetics.  <u>See</u> <u>Suddreth v. Mercedes-Benz, LLC</u>, No. 10-CV-05130 (DMC-JAD), 2011 WL 5240965, at *5 (D.N.J. 2011) ("It is simply not plausible that a motor vehicle could be classified as not merchantable when it has been used for its intended purpose for 4 years and 50,000 miles.").

Finally, it is clear that the implied warranty claim based on alleged unfitness of the goods for a purported <u>particular</u> purpose is not legally sufficient, as the "ordinary purpose" and "particular purpose" asserted by Plaintiffs here – "de-aging" – are one and the same (<u>see</u> Am. Compl. ¶¶ 140, 148). Thus, Plaintiffs' particular-purpose allegations are meaningless.

## VI.   PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT IS LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED

### A.   <u>Legal Standards</u>

To prevail on a claim for unjust enrichment under Connecticut law, a plaintiff must show that (1) the defendant benefitted; (2) the defendant unjustly failed to pay the plaintiff for the benefit; and (3) the failure of payment was to the plaintiff's detriment. <u>See</u> <u>Paradigm Contract Mgmt. Co. v. St. Paul Fire & Marine Ins. Co.</u>, No. 3:10cv211 (MRK), 2011 WL 4348132, at *6 (D. Conn. Sept. 16, 2011).

In New Jersey, a plaintiff must show a benefit conferred by plaintiff to defendant, the retention of which would be unjust without payment, as well as plaintiff's expectation of remuneration from defendant at the time the benefit was conferred. <u>See</u> <u>Agostino v. Quest Diagnostics, Inc.</u>, No. 04-4362 SRC, 2011 WL 5410667, at *6 (D.N.J. Nov. 3, 2011); <u>VRG Corp. v. GKN Realty Corp.</u>, 641 A.2d 519, 526 (N.J. 1994).

Finally, in Illinois, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. <u>HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.</u>, 545 N.E.2d 672, 679 (Ill. 1989).

### B.   <u>Plaintiffs' Unjust Enrichment Claim Should Be Dismissed</u>

#### 1.   <u>Failure To Allege The Required Direct Relationship With Defendants</u>

An unjust enrichment claim requires a <u>direct relationship</u> (privity) between the plaintiff and defendant. <u>See, e.g.</u>, <u>Hammer</u>, 2012 WL 1018842, at *10; <u>Springfield Heating & Air Condi-</u>

tioning, Inc. v. 3947-55 King Drive At Oakwood, LLC, 901 N.E.2d 978, 986 (Ill. App. Ct. 2009); Parker v. Colgate-Palmolive Co., X08CV030193798S, 2003 WL 22205061, at *2 (Conn. Super. Ct. Aug. 8, 2003). Thus, where, as here, Plaintiffs Ohayon and Stein only allege that they purchased the challenged products from third party retailers (Bloomingdale's and Macy's – see Am. Compl. ¶¶ 22-23), the unjust enrichment claim must be dismissed as to them. Cooper v. Samsung Elecs. Am., Inc., No. 07-3853 (JLL), 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008), aff'd, 374 F. App'x 250 (3d Cir. 2010).

### 2. No Allegation of Defendants' Failure to Make Payment or Plaintiffs' Expectation of Remuneration

The law is clear in Connecticut and New Jersey that a required element of any unjust enrichment claim is that the defendant unjustly failed to pay the plaintiff for the benefits conferred. See Paradigm, 2011 WL 4348132, at *6; Agostino, 2011 WL 5410667, at *6. There is no, and could not be, any such allegation in a situation where, as here, a consumer purchases a product, even where the consumer later alleges that said product was falsely advertised. Accordingly, the Connecticut and New Jersey standards make clear that the legal doctrine is not meant for a situation such as here. Cf. Parker, 2003 WL 22205061, at *2 (noting that there was "no indication that [advertiser] failed to pay for a benefit," as required under the unjust enrichment standard); Mycone Dental Supply Co. v. Creative Nail Design, Inc., No. 11-4380 (JBS/KMW), 2012 WL 3599368, at *8-9 (D.N.J. Aug. 17, 2012) (dismissing with prejudice plaintiff's unjust enrichment claim because it has not "alleged that it had any reason to expect remuneration from defendants").

Though the phrasing of the Illinois standard is different, the requirement that the defendant unjustly retain a benefit to plaintiff's detriment also shows that an unjust enrichment claim is not appropriate here, given Ms. Stein's failure to plead use of any of the products, no less that such products failed to meet her expectations. Moreover, in Illinois, a claim for unjust enrichment "'is not a separate cause of action,'" and therefore must be dismissed if Plaintiffs' underly-

ing claims are dismissed. <u>Siegel v. Shell Oil Co.</u>, 656 F. Supp. 2d 825, 834 (N.D. Ill. 2009) (citation omitted), <u>aff'd</u>, 612 F.3d 932 (7th Cir. 2010).

### 3.   Plaintiffs Failed To Make Plausible And Sufficiently Particular Allegations

Unjust enrichment claims grounded in fraud must be pled with particularity, as required by Rule 9(b). <u>See</u> <u>Crete v. Resort Condos. Int'l, LLC</u>, No. 09-5665, 2011 WL 666039, at *5 (D.N.J. Feb. 14, 2011); <u>Nieto v. Perdue Farms, Inc.</u>, No. 08-07399, 2010 WL 1031691, at *5 (N.D. Ill. Mar. 17, 2010).  As noted, for the same reasons that the claims asserted under the consumer protection/fraud statutes fail to meet the pleading standards set forth by <u>Twombly</u> and Rule 9(b), so too does the unjust enrichment claim.  If Plaintiffs cannot identify the advertising statements which they actually saw and were influenced by, and provide a plausible basis as to why any of those statements are false, the unjust enrichment claim must fail.

## VII.   THE DISMISSAL SHOULD BE WITH PREJUDICE

Given the factual circumstances and procedural posture here, Plaintiffs should not be afforded yet another "bite at the apple."  As noted, Plaintiffs – represented by no fewer than nineteen lawyers from seven law firms – had previously filed three complaints in connection with this dispute.  Those same law firms, moreover, have filed substantially similar lawsuits against two other major cosmetics companies, even using the same inflammatory language and <u>ad hominem</u> attacks lodged against Clinique.  <u>See</u> Master Consolidated Complaint, <u>In re L'Oréal Wrinkle Cream Mktg. & Sales Practice Litig.</u>, No. 2:12-cv-03571-WJM-MF (D.N.J. filed Mar. 11, 2013) (ECF No. 36); Complaint, <u>In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.</u>, No. 1:13-cv-00150-JPO (S.D.N.Y. filed Jan. 8, 2013) (ECF No. 1).[14]

---

[14]   <u>Appendix A</u> hereto provides a comparison of the first two paragraphs of the pleadings in each of the four Clinique Complaints, as well as (i) in <u>In re L'Oréal</u>, and (ii) in <u>In re Avon</u>.  This comparison shows that all six complaints lead with the same themes and <u>ad hominem</u> attacks.

Yet, even given the number of opportunities Plaintiffs have already taken to set forth their claims herein, they continue to fail to provide any facts which lend plausibility to their allegations. And, many of the facts they refuse to provide are exclusively within the knowledge of Plaintiffs themselves, such as which representations they saw and/or relied upon, and what their experiences with the products were. See, e.g., Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1240 (10th Cir. 2013) ("Where the plaintiff is the one who ostensibly received these communications and is well-positioned to know, for example, the dates they were received and who sent them, the failure to include *any* such detail is fatal to the complaint.").

In an analogous case, a federal judge in Chicago refused to allow a plaintiff to amend a class action complaint after she failed to properly plead fraud. Scott v. GlaxoSmithKline Consumer Healthcare, L.P., No. 05 C 3004 (N.D. Ill.) (Order denying motion to amend dismissal order, dated January 17, 2007, ECF No. 33).[15] There, the court denied plaintiff's motion to replead and allege when and where she saw the advertisements at issue, as well as when and where she purchased the products, noting that the absent information had been "residing in the memory of the class plaintiff and not provided, even though the motion was pending for several months." Id. at 1. The court held that there had been "an undue delay imposing an undue burden on the Court to deal with an issue that could have been mooted easily and quickly." Id.

The logic of the Scott decision is directly applicable here, where Plaintiffs and their highly experienced and extensive team of counsel have repeatedly failed to properly plead their claims, and warrants dismissal with prejudice. See, e.g., Lowden v. T-Mobile USA Inc., 378 Fed. App'x 693, 694-96 (9th Cir. 2010) (affirming district court's dismissal for lack of plausibility and denial of leave to amend complaint); United States v. Applied Research Assocs., 328 F. App'x at 750-51 (affirming dismissal with prejudice for failure to meet requirements of Rule

---

[15]     For the convenience of the Court, a copy of the Scott Order is Appendix B hereto.

9(b)); <u>Murphy</u>, 2012 WL 566091, at *7 (dismissing complaint for lack of plausibility and deny-

ing leave to amend); <u>Andreo</u>, 651 F. Supp. at 883 (dismissing complaint with prejudice for fail-

ure to plead fraud with particularity).

## **CONCLUSION**

Defendants' motion to dismiss this lawsuit and each separate claim in the Amended

Complaint should be GRANTED, with prejudice.

Respectfully submitted,

<br>

/s/ Kenneth A. Plevan
Kenneth A. Plevan (*pro hac vice*, phv05940)
Limor Robinson (*pro hac vice*, phv05941)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY  10036
(212) 735-3000

Email:  kenneth.plevan@skadden.com
Email:  limor.robinson@skadden.com

/s/ David R. Schaefer
David R. Schaefer (ct04334)
Brian Daniels (ct11863)
Rowena A. Moffett (ct19811)
Sean Fisher (ct23087)
BRENNER, SALTZMAN &
  WALLMAN LLP
271 Whitney Avenue
New Haven, CT  06511
(203) 772-2600

Email:  dschaefer@bswlaw.com
Email:  bpdaniels@bswlaw.com
Email:  rmoffett@bswlaw.com
Email:  sfisher@bswlaw.com

Attorneys for Defendants
The Estée Lauder Companies Inc.
and Clinique Laboratories, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2013, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Class Action Complaint and Demand for Jury Trial was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ David R. Schaefer
David R. Schaefer (ct04334)