# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELLEN DIMURO, MARGARET OHAYON, DANA STEIN and all others similarly situated, <br><br><br> Plaintiffs, <br><br> v. <br><br> THE ESTÉE LAUDER COMPANIES, INC., CLINIQUE LABORATORIES, LLC, <br><br> Defendants. | Civil Action No. 3:12-cv-01789-AVC |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................. 1

LEGAL ARGUMENT ......................................................................................... 4

I.      PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS.............................4

II.     STANDARD OF REVIEW...........................................................................8

    A.   Plaintiffs Have More Than Plausibly Alleged Their Claims .................................. 9

III.    PLAINTIFFS' STATE CONSUMER PROTECTION CLAIMS ARE
      SUFFICIENTLY PLEADED.......................................................................10

    A.   Elements of Claims Under State Consumer Protection Laws ............................. 10

    B.   Rule 9(b) Applies Only to Allegations Concerning Defendants' Fraud............... 12

    C.   Plaintiffs' Allegations Satisfy Rule 9(b)............................................... 13

        1.   Plaintiffs Provide Sufficient Details Regarding Their Purchases and
            Usage of Defendants' Products ....................................................13

        2.   Plaintiffs Sufficiently Identify the Statements That Deceived Them............15

        3.   Plaintiffs Allege Facts Sufficient to Show Defendants' Statements
            Were False and Misleading ...........................................................16

    D.   Defendants' Misrepresentations are Statements of Fact ..................................... 16

    E.   Plaintiffs Allege That Defendants Omitted Material Facts.................................. 19

IV.     PLAINTIFFS ADEQUATELY PLEAD CLAIMS FOR BREACH OF
      EXPRESS WARRANTY.............................................................................22

    A.   Plaintiff Stein has Established the Existence of Privity, or an Exception Thereto,
        Under Illinois Law ........................................................................ 22

        1.   Plaintiff Stein has Alleged an Express Warranty Directly Between
            Defendants and Herself Because of Defendants' Statements Which
            Formed the Basis of the Bargain ....................................................22

        2.   Plaintiff Stein has Alleged an Express Warranty Directly Between
            Defendants and Herself Because She Purchased Directly From
            Defendants or Defendants' Agent ..................................................23

        3.   If the Express Warranty is Between Defendants and the Retailers,
            Plaintiff Stein is a Third Party Beneficiary Entitled to Enforce the

i

Warranty ...............................................................................................24

B.   Plaintiffs Have Satisfied Pre-Suit Notice ............................................... 25

1.   Pre-Suit Notice was Provided to Defendants....................................25

2.   Defendants Have Actual Knowledge of the Breach of Warranty
Because They Knew the Repairwear Products Could Not Provide the
Results Claimed ............................................................................25

C.   Plaintiffs Have Alleged the Advertisements That Formed the Basis of the Bargain,
Thereby Creating an Express Warranty. ................................................. 26

D.   Plaintiffs Have Adequately Alleged a Breach of the Express Warranty, Causation,
and Damages ...........................................................................................27

V.   PLAINTIFFS HAVE PROPERLY ALLEGED CLAIMS FOR BREACH OF
IMPLIED WARRANTY ...........................................................................28

A.   Legal Standard ........................................................................................ 28

1.   Defendants' Repairwear Products are Not Fit for Their Ordinary
Purpose .........................................................................................29

VI.   PLAINTIFFS ADEQUATELY ALLEGE A CAUSE OF ACTION FOR
UNJUST ENRICHMENT ........................................................................33

A.   Pleading Standard and Legal Standard ................................................. 33

B.   Plaintiffs Allege Defendants Were Unjustly Benefitted When Plaintiffs Were
Deprived of the Benefit of Their Bargain as a Result of Defendants' Product
Misrepresentations ................................................................................. 34

C.   Privity Is Not Required ........................................................................... 38

VII.   DISMISSAL WITH PREJUDICE IS UNWARRANTED........................................39

CONCLUSION....................................................................................................... 40

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Agostino v. Quest Diagnostics, Inc.*,
   2011 WL 5410667 (D.N.J. Nov. 3, 2011) ...........................................................37

*Agrella v. Ford Motor Co.*,
   2005 WL 6148051 (Conn. Super. Ct. July 25, 2005) ..........................................36

*Allen v. V & A Bros., Inc.*,
   26 A.3d 430 (N.J. 2011)........................................................................................11

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................................5

*Ampat/Midwest, Inc. v. Ill. Tool Works, Inc.*,
   1988 WL 53222 (N.D. Ill. May 12, 1988) ...........................................................23

*Arista Records LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)...................................................................................8

*Arlandson v. Hartz Mountain Corp.*,
   792 F. Supp. 2d 691 (D.N.J. 2011) ......................................................................28

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................8

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).....................................................................................12

*Azimi v. Ford Motor Co.*,
   977 F. Supp. 847 (N.D. Ill. 1996) ........................................................................24

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007)......................................................................................8, 9, 12

*Benchmark Bldg. Corp. v. United Builders Supply Co., Inc.*,
   1992 WL 124139 (Conn. Super. Ct. May 29, 1992)............................................26

*Callano v. Oakwood Park Homes Corp.*,
   219 A.2d 332 (N.J. Super. Ct. App. Div. 1966)...................................................36

*Clapper v. Amnesty Int'l USA, Inc.*,
   133 S. Ct. 1138 (2013)............................................................................................4

*Clark v. McDonalds, Corp.*,
   213 F.R.D. 198 (D.N.J. 2003) .................................................................5

*Cooper v. Samsung Elecs. Am., Inc.*,
   2008 WL 4513924 (D.N.J. Sept. 30, 2008) ...........................................38

*Crete v. Resort Condos. Int'l, LLC*,
   2011 WL 666039 (D.N.J. Feb. 14, 2011) ..............................................34

*Cripe v. Leiter*,
   703 N.E.2d 100 (Ill. 1998) .....................................................................11

*Criscuolo v. Mauro Motors, Inc.*,
   754 A.2d 810 (Conn. App. Ct. 2000) ...............................................28, 29

*Crotty v. Shartenberg's-New Haven, Inc.*,
   162 A.2d 513 (Conn. 1960) ...............................................................29, 33

*Est. of Axelrod v. Flannery*,
   476 F. Supp. 2d 188 (D. Conn. 2007) ...................................................12

*Faber v. Metropolitan Life Ins. Co.*,
   648 F.3d 98 (2d Cir. 2011)........................................................................8

*Ferrari v. Am. Honda Motor Co., Inc.*,
   2009 WL 211702 (N.J. Super. Ct. App. Div. Jan. 30, 2009)..................30

*Fink v. Golenbock*,
   680 A.2d 1243 (Conn. 1996) ..................................................................11

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007).............................................................12, 15

*Gagne v. Vaccaro*,
   766 A.2d 416 (Conn. 2001) ....................................................................35

*Glazer v. Dress Barn, Inc.*,
   873 A.2d 929 (Conn. 2005) ....................................................................20

*Hammer v. Vital Pharms., Inc.*,
   2012 WL 1018842 (D.N.J. Mar. 26, 2012)........................17, 18, 38, 39

*Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*,
   649 A.2d 518 (Conn. 1994) ...............................................................34, 35

*Haught v. Motorola Mobility, Inc.*,
   2012 WL 3643831 (N.D. Ill. Aug. 23, 2012) ...................................38, 39

iv

*Hecht Co. v. Bowles,*
    321 U.S. 321 (1944) ........................................................................................................35

*Hinchliffe v. Am. Motors Corp.,*
    440 A.2d 810 (Conn. 1981) ............................................................................................25

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,*
    545 N.E.2d 672 (Ill. 1989) .......................................................................................34, 35

*Hughes v. Panasonic Consumer Electrs. Co.,*
    2011 WL 2976839 (D.N.J. July 21, 2011) ....................................................................30

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.,*
    701 F. Supp. 2d 356 (E.D.N.Y. 2010) .............................................................................5

*In re Craftmatic Sec. Litig.,*
    890 F.2d 628 (3d Cir. 1989) ....................................................................................20, 21

*In re Digital Music Antitrust Litig.,*
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ..............................................................................5

*In re Grand Theft Auto Video Game Consumer Litig.,*
    2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006) ...................................................................5

*In re Lord Abbett Mutual Funds Fee Litig.,*
    407 F. Supp. 2d 616 (D.N.J. 2005) ..................................................................................5

*In re McDonald's French Fries Litig.,*
    503 F. Supp. 2d 953 (N.D. Ill. 2007) .............................................................................23

*In re Vivendi Universal, S.A. Sec., Litig.,*
    2004 WL 876050 (S.D.N.Y. Apr. 22, 2004) ..................................................................33

*Jamison v. Summer Infant (USA), Inc.,*
    778 F. Supp. 2d 900 (N.D. Ill. 2011) .............................................................................39

*Johnson v. Sears Roebuck & Co.,*
    2007 WL 2491897 (D. Conn. Aug. 29, 2007) ...............................................................28

*Jorden v. Chris' Auto Clinic,*
    2012 WL 3089381 (Conn. Super. Ct. June 28, 2012).....................................................30

*Kuzian v. Electrolux Home Prods., Inc.,*
    2013 WL 1314722 (D.N.J. Mar. 28, 2013)...............................................................29, 32

*Lee v. Nationwide Cassel, L.P.,*
    660 N.E.2d 94 (Ill. App. Ct. 1995) ..................................................................................8

*Lentini v. Fidelity Nat. Title Ins. Co. of N.Y.*,
    479 F. Supp. 2d 292 (D. Conn. 2007) ...................................................................14

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
    865 F. Supp. 2d 529 (D.N.J. 2011) ......................................................................31

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................................4

*Lynch v. Tropicana Prods., Inc.*,
    2013 WL 2645050 (D.N.J. June 12, 2013) .....................................................38, 39

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ...................................................................................7

*Meyer v. Snyders Lance, Inc.*,
    2012 WL 6913724 (M.D. Ga. Dec. 12, 2012) ......................................................8

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*,
    848 F.2d 674 (6th Cir. 1988) ...............................................................................13

*Microsoft Corp. v. Logical Choice Computers, Inc.*,
    2000 WL 1038143 (N.D. Ill. July 24, 2000) .......................................................26

*Midland Supply Co., Inc. v. Ehret Plumbing & Heating Co.*,
    440 N.E.2d 153 (Ill. App. Ct. 1982) ....................................................................28

*Montich v. Miele USA, Inc.*,
    849 F. Supp. 2d 439 (D.N.J. 2012) ................................................28, 29, 30, 31

*Muehlbauer v. Gen. Motors Corp.*,
    431 F. Supp. 2d 847 (N.D. Ill. 2006) ..................................................................11

*Mycone Dental Supply Co., Inc. v. Creative Nail Design, Inc.*,
    2012 WL 3599368 (D.N.J. Aug. 17, 2012) ........................................................37

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
    2013 WL 1809767 (S.D.N.Y. Apr. 30, 2013) .......................................................7

*N.J. Cit. Action v. Schering-Plough Corp.*,
    842 A.2d 174 (N.J. Super. Ct. App. Div. 2003) ..................................................11

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012) ..............................................................................6, 7

*Nelson v. Xacta 3000 Inc.*,
    2010 WL 1931251 (D.N.J. May 12, 2010) ................................................. passim

*Nieto v. Perdue Farms, Inc.*,
    2010 WL 1031691 (N.D. Ill. Mar. 17, 2010)...........................................................................34

*Okla. Police Pension & Retirement Sys., v. U.S. Bank N.A.*,
    2013 WL 2369674 (S.D.N.Y. May 31, 2013) ..................................................................6, 7

*Omega Eng'g, Inc. v. Eastman Kodak Co.*,
    30 F. Supp. 2d 226 (D. Conn. 1998)..................................................................................22

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)............................................................................................................5

*Palmeri v. LG Electrs. USA, Inc.*,
    2008 WL 2945985 (D.N.J. July 30, 2008)..........................................................................35

*Paradigm Contract Mgmt. Co., Inc. v. St. Paul Fire and Marine Ins. Co.*,
    2011 WL 4348132 (D. Conn. Sept. 16, 2011) ..................................................................36

*Parker v. Colgate-Palmolive Co.*,
    2003 WL 22205061 (Conn. Super. Ct. Aug. 8, 2003) .........................................................36

*Pauly v. Houlihan's Restaurants, Inc.*,
    2012 WL 6652754 (D.N.J. Dec. 20, 2012)....................................................................37, 38

*Rhodes Pharmacal Co. v. Cont'l Can Co.*,
    219 N.E.2d 726 (Ill. App. Ct. 1966) ..................................................................................24

*Rothe v. Maloney Cadillac, Inc.*,
    518 N.E.2d 1028 (Ill. 1988)..............................................................................................23

*Rubin v. Marshall Field & Co.*,
    597 N.E.2d 688 (Ill. App. Ct. 1992) ..................................................................................29

*Scanlon v. Food Crafts, Inc.*,
    193 A.2d 610 (Conn. Cir. Ct. 1963) ..................................................................................29

*Selbst v. McDonald's Corp.*,
    2005 WL 2319936 (N.D. Ill. Sept. 21, 2005) ....................................................................17

*Semitekol v. Monaco Coach Corp.*,
    582 F. Supp. 2d 1009 (N.D. Ill. 2008) ...............................................................................24

*Shoop v. DaimlerChrysler Corp.*,
    864 N.E.2d 785 (Ill. App. Ct. 2007) ..................................................................................32

*Smajlaj v. Campbell Soup Co.*,
    782 F. Supp. 2d 84 (D.N.J. 2011) ...............................................................................14, 15

*Smith v. Boehringer Ingelheim Pharm., Inc.*,
   886 F. Supp. 2d 911 (S.D. Ill. 2012)..............................................................28, 30

*Springfield Heating & Air Conditioning, Inc. v. 3947-55 King Drive at Oakwood, LLC*,
   901 N.E.2d 978 (Ill. App. Ct. 2009) ........................................................................39

*State v. Moody's Corp.*,
   2012 WL 2149408 (Conn. Super. Ct. May 10, 2012)...............................................17

*Stefan v. P.J. Kids, LLC*,
   2005 WL 834208 (Conn. Super. Ct. Mar. 1, 2005) ..................................................36

*Stelco Indus., Inc. v. Cohen*,
   438 A.2d 759 (Conn. 1980) ......................................................................................26

*Stella v. LVMH Perfumes & Cosmetics USA, Inc.*,
   564 F. Supp. 2d 833 (N.D. Ill. 2008) .......................................................................26

*Stephenson v. Hartford Life & Annuity Ins. Co.*,
   2004 WL 2260616 (N.D. Ill. Oct. 1, 2004)..............................................................20

*Stevelman v. Alias Research Inc.*,
   2000 WL 888385 (D. Conn. Jun. 22, 2000).........................................................5, 7

*Stevenson Lumber Co.-Suffield, Inc., v. Chase Assoc., Inc.*,
   932 A.2d 401 (Conn. 2007) ......................................................................................11

*Stewart v. Beam Global Spirits Wine, Inc.*,
   877 F. Supp. 2d 192 (D.N.J. 2012) ....................................................................38, 39

*Stichting Pensioenfonds ABP v. Merck & Co., Inc.*,
   2012 WL 3235783 (D.N.J. Aug. 1, 2012) ................................................................13

*Suddreth v. Mercedes-Benz, LLC*,
   2011 WL 5240965 (D.N.J. Oct. 31, 2011)................................................................33

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009).....................................................................................................5

*Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*,
   2013 WL 1337303 (N.D. Ill. Mar. 29, 2013)............................................................14

*VRG Corp. v. GKN Realty Corp.*,
   641 A.2d 519 (N.J. 1994)...........................................................................................34

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)..................................................................................................5

*Wendt v. Handler, Thayer & Duggan, LLC*,
    613 F. Supp. 2d 1021 (N.D. Ill. 2009) ...................................................................12

*Weng v. Allison*,
    678 N.E.2d 1254 (Ill. App. Ct. 1997) ...................................................................27

*Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp.*,
    717 A.2d 77 (Conn. 1998) ...................................................................................20

*Ziegler v. Sony Corp. of America*,
    849 A.2d 19 (Conn. Super. Ct. 2004) ...........................................................36, 38

*Zurich Capital Markets Inc. v. Coglianese*,
    332 F. Supp. 2d 1087 (N.D. Ill. 2004) .................................................................34

## STATUTES

810 Ill. Comp. Stat. 5/2-313 ...........................................................................................22, 27

810 Ill. Comp. Stat. 5/2-607(3)(a). ........................................................................................25

815 Ill. Comp. Stat. 505/1, *et seq*. .........................................................................................10

815 Ill. Comp. Stat. 505/2 ........................................................................................................8

Conn. Gen. Stat. Ann. §§ 42-110a, *et seq* ...........................................................................10

Conn. Gen. Stat. Ann. § 42-110b(a) .......................................................................................11

Conn. Gen. Stat. Ann. § 42-110g(a) .......................................................................................11

Conn. Gen. Stat. Ann. § 42a-2-607 ........................................................................................25

Conn. Gen. Stat. Ann. § 42a-2-607(3)(a) ...............................................................................25

N.J. Stat. Ann. §§ 58:8-1, *et seq.* ...........................................................................................10

U.C.C. § 2-313, comment 3 ....................................................................................................27

U.C.C. § 2-314 ........................................................................................................................28

U.C.C. § 2-607(3)(a) ...............................................................................................................25

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 ..............................................................................................................9, 13, 14

Fed. R. Civ. P.  8(a) ...............................................................................................10, 12, 13, 34

Fed. R. Civ. P. 9(b) ................................................................................................. passim

Fed. R. Civ. P. 12 ....................................................................................................24

Fed. R. Civ. P. 12(b)(6)..............................................................................................8

Fed. R. Civ. P. 23 ..............................................................................................4, 5, 6

x

## PRELIMINARY STATEMENT

Defendants mass market and sell Clinique-brand "Repairwear Products" to consumers as providing certain, specific "de-aging" results.  Plaintiffs allege that Repairwear Products cannot provide these promised "de-aging" results because the products do not contain any ingredients or combinations of ingredients that are actually able to achieve the results Defendants promise.  Not knowing this, however, Plaintiffs paid a price premium to purchase the Repairwear Products to obtain the promised results — results they expected based on their exposure to Defendants' advertisements and marketing materials.  Accepting all the allegations in the Consolidated Complaint ("CC") as true, drawing all reasonable inferences therefrom, and as further described below, Plaintiffs have more than sufficiently and plausibly alleged that Defendants' "de-aging" efficacy claims and guaranteed results promises are false and misleading, violate state consumer fraud and warranty laws, and support claims for unjust enrichment.  Indeed, a complete reading of the CC makes clear that Plaintiffs have alleged with specificity which statements are false and deceptive, where those statements were made, why those statements are false or deceptive, and that Plaintiffs were exposed to those statements prior to their purchases of the Repairwear Products.  Plaintiffs have therefore provided Defendants complete information as to the claims against them.  Accordingly, Defendants' motion to dismiss, which in large part ignores entire sections of the CC, asks the Court to make factual determinations, and resorts to rhetoric, inapplicable standards, and piecemeal arguments should be denied in its entirety.

## STATEMENT OF FACTS

Defendants The Estee Lauder Companies Inc., and Clinique Laboratories, LLC (collectively, "Defendants" or "Estee Lauder") produce, distribute, market, and sell "Repairwear Products," a line of Clinique-branded "de-aging" wrinkle creams.  (CC ¶¶ 2-3, 8) (all further

1

references to "¶ _" are to the CC).  Repairwear Products include Zero Gravity Repairwear Lift Firming Cream, Repairwear Laser Focus Wrinkle & UV Wrinkle Damage Corrector, Repairwear Uplifting Firming Cream, Repairwear Uplifting Firming Cream Broad Spectrum SPF 15, Repairwear Intensive Night Cream, Repairwear Intensive Eye Cream, and Repairwear Laser Focus Wrinkle Correcting Eye Cream.  (¶ 3.)

"De-aging" is the central theme for all of Defendants' Repairwear Product marketing.  (¶ 28.)  Indeed, "de-aging" is a term used throughout Defendants' advertising and marketing materials to describe features of the Repairwear Products, such as "De-aging powerhouses work to repair and help slow visible signs of aging 24/7."  (¶ 12.)

Defendants promote all of the Repairwear Products as having the ability to "de-age" consumers' skin, thus making consumers look younger by, among other things, blocking and mending lines and wrinkles, rebuilding stores and boosting the production of natural collagen, strengthening and creating firmer skin, and repairing and preventing lines and wrinkles.  (¶¶ 12, 28-29.)  The name "Repairwear" and the individual product names (*e.g.*, "Uplifting Firming," "Wrinkle Damage Corrector") reinforce these purported "de-aging" reparative and restorative features.   Moreover, Defendants guarantee that the Repairwear Products will perform as promised.  (¶¶ 44-45.)  Plaintiffs allege that they, along with the other members of the Class and Subclasses, purchased the Repairwear Products to obtain these "de-aging" results.   (¶ 9.)  However, unbeknownst to Plaintiffs, but known to Defendants, the Repairwear Products do not, and cannot provide the results that Defendants promise.  (¶¶ 10, 32.)  Indeed, Plaintiffs allege that Repairwear Products do not contain any ingredient or combination of ingredients that is actually able to "de-age" the skin.  (¶ 8.)

Defendants advertise and mass market the Repairwear Products, and make their thematic

2

"de-aging" efficacy claims nationally, throughout and across all marketing and advertising media, including print, television, the Internet, point-of-sale materials, and product packaging. (¶¶ 4, 15, 16, 28, 51.)  Defendants design their national marketing and advertising campaign for Repairwear Products to include references to scientific research and discovery, patents, comparisons to dermatological solutions like professional laser procedures, and "dramatized" photos that supposedly show "real" results.  Defendants know that utilizing such purportedly scientific- or medical-sounding references will create a more credible impression of the Repairwear Products' de-aging efficacy in the eyes of consumers, which in turn will result in greater sales.  (¶¶ 31-33.)  Nonetheless, the CC describes in detail how the Repairwear Products' efficacy claims are false and misleading, including the misleading "drug-like" language of the efficacy claims themselves (¶¶ 11, 29, 32, 58-59); misleading references to purported patents (¶¶ 29); misleading comparisons to dermatological procedures (¶¶ 29, 36, 53); and misleading references to dramatizations that purport to show real results (¶¶ 35-43, 53).

Plaintiffs Ellen DiMuro, Margaret Ohayon, and Dana Stein purchased Repairwear Products at full retail price for personal use.[1]  (¶¶ 21-23.)  Prior to their purchases, Plaintiffs observed and were exposed to Defendants' "de-aging" efficacy claims in print advertisements in national magazines, on the Clinique website, at the point of sale, and on product packaging.  (*Id.*)

---

[1]  Defendants argue that Plaintiffs do not claim that they actually used the products they purchased or that the products failed to meet expectations.  (*See, e.g.*, Def. Br. ("DB") at 3, 4, 6.)  This is a red herring.  First, each Plaintiff alleges that she purchased the product for personal use. (¶¶ 21-23.)  The reasonable inference is that she did in fact use the product and that it did not perform as promised (hence the reason for filing suit).  Second, Plaintiffs allege that the Repairwear Products do not and cannot work as Defendants claim they do.  (¶¶ 10, 32, 67, 70-71.)  Thus, the harm to Plaintiffs and the other members of the putative Class and Subclasses occurred at the point of purchase, not use.  Indeed, use of the product is irrelevant to the analysis of whether Plaintiffs have stated viable claims because their allegations are that the products could never work as promised for anyone.

The advertisements and marketing materials to which Plaintiffs were exposed contained the same de-aging efficacy claims as those identified in the CC.  (*Id.*; *see also* ¶ 29.)  Plaintiffs paid a premium for the promised de-aging results, but did not get what they paid for, because the Repairwear Products do not and cannot provide the results promised.  (¶¶ 69-70.)

In sum, Plaintiffs' allegations are sufficient to support their claims for relief for the Repairwear Products.

## LEGAL ARGUMENT

### I.   PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS

Defendants do not dispute that Plaintiffs have standing to assert their individual claims based on the three Repairwear Products they individually purchased.[2]  Defendants argue instead that "for the remaining four products Plaintiffs did not make any such purchase, and thus do not plead facts capable of establishing that they suffered any injury in fact from advertising statements promoting those products."  (DB at 9.)  Defendants' argument improperly conflates Article III standing with the requirements of Rule 23; namely, Plaintiffs' typicality and adequacy to represent absent class members who purchased the other Repairwear Products.

Constitutional standing requires:  (1) an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *See Clapper v. Amnesty Int'l USA, Inc.*, 133 S. Ct. 1138, 1147 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The doctrine of standing "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his*

---

[2] Plaintiff DiMuro purchased Repairwear Intensive Night Cream; Plaintiff Ohayon purchased Repairwear Laser Focus Wrinkle & UV Wrinkle Damage Corrector; and Plaintiff Stein purchased Repairwear Intensive Eye Cream.  (¶¶ 21-23.)

invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)) (emphasis in original).[3]  In a class action, this means that a litigant must be a member of the class he or she seeks to represent.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).  Moreover, in the class-action context, where a standing issue would not arise but for class certification, those class certification issues are logically antecedent to Article III standing and should be decided in advance of any standing issues.  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997).  In other words, if the standing issue in question arises solely because of class certification, then the class certification issue should be decided first and the standing question is determined with respect to the class as a whole, not just with respect to the named plaintiffs.  *See Stevelman v. Alias Research Inc.,* 2000 WL 888385, at *6 (D. Conn. Jun. 22, 2000); *see also In re Grand Theft Auto Video Game Consumer Litig.*, 2006 WL 3039993, at *1 (S.D.N.Y. Oct. 25, 2006); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 406-07 (S.D.N.Y. 2011); *Clark v. McDonalds, Corp.*, 213 F.R.D. 198, 204 (D.N.J. 2003) (quoting *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002)); *In re Lord Abbett Mutual Funds Fee Litig.*, 407 F. Supp. 2d 616, 624 (D.N.J. 2005) (denying motion to dismiss claims relating to funds plaintiffs did not own), *vacated on other grounds*, 463 F. Supp. 2d 505 (D.N.J. 2006), *rev'd* 553 F.3d 248 (3d Cir. 2009).

Courts in this Circuit have recognized that "the issue of standing is a constitutional one and should not be conflated with Rule 23 class action requirements."  *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 376-77

---

[3] Unless otherwise indicated, all internal citations and quotation marks are omitted and emphasis is added.

(E.D.N.Y. 2010) (quoting *Ramirez v. Dollar Phone Corp.*, 2009 WL 3171738, at *9 (E.D.N.Y. Oct. 1, 2009) (citing and quoting 1 William B. Rubenstein et al., Newberg on Class Actions § 2:7 (4th ed. 2008) for the proposition that individual standing is a distinct inquiry from the class prerequisites of Rule 23)).   Indeed, the Second Circuit has specifically addressed the tension between Article III standing and Rule 23 requirements in reversing the District Court's decision to dismiss a putative securities class action for lack of standing.   *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012).   As here, the *NECA-IBEW* defendants argued that the plaintiff lacked standing to bring claims on behalf of purchasers of certain certificates because those purchasers' certificates were from Trusts and/or tranches from which plaintiff had not purchased its certificates.   *Id.* at 154.   The Second Circuit correctly recognized that the plaintiff had Article III standing "in its own right" and went on to note that "whether NECA has 'class standing' – that is, standing to assert claims on behalf of purchasers of Certificates from other Offerings, or from different tranches of the same Offering – does not turn on whether NECA would have statutory or Article III standing to seek recovery for misleading statements."   *Id.* at 158.   Rather, the issue was one of class standing.   *Id.* at 158-59 (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("Th[e] conclusion [that a named plaintiff has a case or controversy] does not automatically establish that [she] is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of the examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class.'")).   Ultimately, accepting the plaintiff's allegations as true, the Second Circuit found that the plaintiff's claims raised a "sufficiently similar set of concerns" as to have standing to represent putative class members whose purchases of certain certificates differed from its own.   *Id.* at 164; *see also Okla. Police Pension & Retirement Sys., v. U.S. Bank*

6

*N.A.*, 2013 WL 2369674, at *32-33 (S.D.N.Y. May 31, 2013); *N.J. Carpenters Health Fund v. Residential Capital, LLC,* 2013 WL 1809767, at *4-5 (S.D.N.Y. Apr. 30, 2013).

Likewise, here, Plaintiffs have presented claims of injury to themselves based on their individual purchases of Repairwear Products and thus have alleged facts which present a case or controversy under the Constitution. Defendants do not argue otherwise. Plaintiffs have also alleged that Defendants make uniform false and misleading "de-aging" efficacy claims for all of the Repairwear Products, that Defendants support these uniform false and misleading "de-aging" efficacy claims in a substantially similar manner, and that Defendants broadcast those claims to a national audience. Plaintiffs have supported their allegations of "uniformity" with examples of advertisements containing the efficacy claims that Plaintiffs saw. Taking Plaintiffs' allegations as true, these allegations support class standing for all of the Repairwear Products.[4]  *See NECA-IBEW,* 693 F.3d at 164; *accord Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) ("When a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types.") Accordingly, the Court should deny Defendants' motion to dismiss on the basis of a purported lack of "standing."[5]

---

[4] Courts generally recognize that questions of adequacy and typicality should be resolved at the class certification stage, after discovery on those issues. *See, e.g.*, *Stevelman*, 2000 WL 888385, at *6 (citing *Ortiz*, 527 U.S. at 831); *see also Okla. Police Pension & Retirement Sys.*, 2013 WL 2369674, at *12 (citing cases).

[5] Defendants challenge Plaintiff Stein's standing to assert a claim under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") even though no count or cause of action is asserted under the UDTPA. As Defendants correctly note, "Count III of the Amended Complaint" is based on "a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act" ("ICFA") and not the UDTPA. (DB at 11 n.5.) While it is true that Count III is based on the

7

## II.    STANDARD OF REVIEW

Under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a district court reviewing a motion to dismiss under Rule 12(b)(6) must "assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Thus, "a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility."  *Iqbal*, 556 U.S. at 678.

"A claim has facial plausibility when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id.*  This does not impose a probability requirement at the pleading stage, but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the necessary element.  *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *see also Meyer v. Snyders Lance, Inc.*, 2012 WL 6913724, at *1 (M.D. Ga. Dec. 12, 2012) ("[M]any lawyers fail to appreciate the distinction between determining whether a claim for relief is 'plausibly stated,' the inquiry required by *Twombly/Iqbal*, and divining whether actual proof of that claim is 'improbable,' a feat impossible for a mere mortal, even a federal judge.").  It is still the role of discovery, not the pleadings, to "reveal evidence."  *Twombly*, 550 U.S. at 556.

---

"use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act'" (815 Ill. Comp. Stat. 505/2), nowhere in the text of the ICFA does it state that a plaintiff first must establish a violation of the UDTPA as a prerequisite to a finding of a violation of the ICFA, and Defendants have not cited any case law to the contrary.  This is so because to be actionable, the ICFA only requires allegations that the defendant engage in "practice[s] described in Section 2 of the [UDTPA]" and not that a defendant has been found to violate the UDTPA.  As Defendants have not challenged Plaintiff Stein's standing under the ICFA, Count III of the CC should not be dismissed.

Thus, at the pleading stage, a plaintiff need not demonstrate that the defendant's conduct is "probably" unlawful; it need only allege facts (taken as true) that raise a right to relief 'above the speculative level.'"[6] *Id.* at 555. Here, taken as true, Plaintiffs' factual allegations more than adequately raise plausible claims, well above the speculative level, and therefore meet the pleading standards set forth in Rules 8 and 9(b).

### A.  Plaintiffs Have More Than Plausibly Alleged Their Claims

Defendants incorrectly assert that Plaintiffs must support their allegations with scientific evidence at the pleading stage in order to withstand a motion to dismiss.  (DB at 14-16.) However, as the well-pleaded allegations illustrate, Plaintiffs have alleged (1) that Defendants make certain specific and uniform age-negating promises regarding the Repairwear Products; (2) that the Repairwear Products do not and cannot provide the promised results; (3) that the reason that the Repairwear Products do not and cannot provide the promised results is because none of the ingredients in those products, or any combination of them, can perform as Defendants promise; and (4) that despite knowing that their Repairwear Products cannot provide the promised results, Defendants nevertheless design studies and tests to support claims for results that they know will not translate to consumers. Such allegations certainly meet the basic pleading requirements and allege a plausible basis for the claims asserted.  Defendants seek to rewrite the Federal Rules of Civil Procedure and impose a burden well above the legal requirements and would have this Court require Plaintiffs to include "scientific testing and analysis" in the CC.  Such a requirement would turn the pleading standard on its head and force

---

[6] The *Twombly* Court was clear, however, that this is not intended to be an onerous or even a heightened requirement, explaining that it "comports with [the] Court's statements in the years since [1957]."  *Twombly*, 550 U.S. at 563 n.8.

Plaintiffs to provide *evidence* at the pleading stage.[7]

## III.   PLAINTIFFS' STATE CONSUMER PROTECTION CLAIMS ARE SUFFICIENTLY PLEADED

Plaintiffs have sufficiently pleaded claims under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. §§ 42-110a, *et seq.* ("CUTPA"), the New Jersey Consumer Fraud Act, N.J.S.A. §§ 58:8-1, *et seq.* ("NJCFA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.* ("ICFA").  Defendants argue that Plaintiffs' claims under these statutes are inadequately pleaded based on Defendants' faulty assumption that Rule 9(b)'s heightened pleading standard applies to every allegation in the CC. However, as set forth below, that standard applies only to allegations setting forth the "circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Plaintiffs' allegations as to their own conduct, which does not constitute fraud, are subject only to Rule 8(a)'s pleading standard. Moreover, even if Defendants' argument were correct, Plaintiffs' allegations as to their conduct satisfy Rule 9(b)'s requirements.  Defendants' further arguments challenging the adequacy of Plaintiffs' allegations regarding Defendants' misrepresentations and omissions also fail because the CC more than meets the Rule 9(b) standard for such allegations.  Therefore, Plaintiffs' CUTPA, NJCFA, and ICFA claims are sufficiently pleaded.

### A.  Elements of Claims Under State Consumer Protection Laws

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," Conn. Gen. Stat. Ann. § 42-110b(a), and

---

[7] Oddly, Defendants refer to ABC and NBC Television Network Guidelines, which provide that advertisements must accurately depict the product or service involved.  Notwithstanding the unlikely relevance of these guidelines to Plaintiffs' consumer fraud claims, whether Defendants' advertisements accurately depict the product or service (Plaintiffs allege they do not) is a question of fact not suitable for adjudication at this stage.

provides a cause of action to "[a]ny person who suffers any ascertainable loss of money or property . . . as a result of the use or employment of a [prohibited] method, act or practice," Conn. Gen. Stat. Ann. § 42-110g(a). CUTPA "is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." *Fink v. Golenbock*, 680 A.2d 1243, 1259-60 (Conn. 1996). CUTPA's causal element is "[a]n actual cause that is a substantial factor in the resulting harm," not the sole or exclusive cause of that harm. *Stevenson Lumber Co.-Suffield, Inc., v. Chase Assoc., Inc.*, 932 A.2d 401, 406 (Conn. 2007).

The NJCFA is also "remedial legislation, which should be construed liberally in favor of consumers." *Allen v. V & A Bros., Inc.*, 26 A.3d 430, 438 (N.J. 2011). NJCFA requires allegations of "unlawful conduct by the defendants," "an ascertainable loss" of plaintiff, and "a causal relationship" between them. *N.J. Cit. Action v. Schering-Plough Corp.*, 842 A.2d 174, 176 (N.J. Super. Ct. App. Div. 2003), *cert. denied* 837 A.2d 1092 (N.J. 2003).

Illinois ICFA law adheres to the same principles of construction. *Cripe v. Leiter*, 703 N.E.2d 100, 103 (Ill. 1998) (ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers and business persons" that is "to be liberally construed to effectuate its purpose."). ICFA requires allegations of (1) the defendant's "deceptive act or practice," (2) "the defendant's intent that the plaintiff rely on the deception," (3) that the deception occurred "in the course of conduct involving trade or commerce," and (4) "actual damage to the plaintiff" that is (5) "proximately caused by the deception." *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 867 (N.D. Ill. 2006).

The CC alleges that, in marketing their Repairwear Products to Plaintiffs and other consumers, Defendants misrepresented and omitted to state important facts regarding the efficacy of those products, (¶¶ 28-62), specifically to induce consumers, including Plaintiffs, to

11

purchase the products.  (¶¶ 63-68.)  Plaintiffs did, in fact, purchase Defendants' products because

of Defendants' misrepresentations or omissions, paying a premium for the purportedly superior

"de-aging" efficacy Defendants promised.  (¶¶ 21-23, 69-72.)  Plaintiffs were thereby deprived

of the benefit of the bargain, suffering damages as a result of their purchases.  (¶¶ 87-89, 97-99,

112-113.)  Plaintiffs therefore satisfy all elements of these statutes.

### B. Rule 9(b) Applies Only to Allegations Concerning Defendants' Fraud

Rule 9(b) requires plaintiffs asserting claims under CUTPA, NJCFA, and ICFA to plead

"with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  While

Rule 8(a)'s notice pleading standard requires a "short and plain statement" sufficient to put the

defendant on notice of the claim and the grounds on which it rests, *Twombly*, 550 U.S. at 555,

Rule 9(b)'s heightened standard requires allegations sufficient to provide a defendant with notice

of the specific fraudulent misconduct with which it is charged.  *Est. of Axelrod v. Flannery*, 476

F. Supp. 2d 188, 196 (D. Conn. 2007) (Rule 9(b) requires allegations sufficient "to put a

defendant on notice of the specific fraudulent acts that the plaintiff alleges"); *see also Frederico

v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)); *Wendt v. Handler, Thayer & Duggan, LLC*,

613 F. Supp. 2d 1021, 1033 (N.D. Ill. 2009).

The purpose of Rule 9(b) is to protect defendants from groundless accusations of fraud.

*See, e.g.*, *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (purpose of

Rule 9(b) is "to provide a defendant with fair notice of a plaintiff's claim, safeguard his

reputation from improvident charges of wrongdoing, and protect him against strike suits.").  As a

mechanism for protecting defendants from such abuses, Rule 9(b) is directed to allegations of

defendants' misconduct, not plaintiffs' behavior.  Plaintiffs' own actions are not alleged to

"constitut[e] fraud" and need not be pleaded with particularity.  With respect to all facts not

"constituting fraud," the operative pleading standard is Rule 8(a).  *See Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988) ("Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony."); *Stichting Pensioenfonds ABP v. Merck & Co., Inc.*, 2012 WL 3235783, at *4 (D.N.J. Aug. 1, 2012) (applying Rule 8(a) pleading standard to allegations of plaintiff's purchases of securities in securities fraud action).

### C.  Plaintiffs' Allegations Satisfy Rule 9(b)

Defendants contend that the CC fails to satisfy Rule 9(b)'s pleading requirements because:  (1) Plaintiffs fail to provide sufficient details regarding their purchase and usage of Defendants' products[8]; (2) Plaintiffs fail to identify which statements deceived them; and (3) Plaintiffs fail to allege facts showing Defendants' statements were, in fact, false and misleading. (DB at 21-24.)  These arguments fail because they are directly contradicted by the allegations in the CC, which are more than sufficient under Rule 9(b).

### 1.  *Plaintiffs Provide Sufficient Details Regarding Their Purchases and Usage of Defendants' Products*

Plaintiffs' allegations about their purchases and use of Defendants' products are subject to Rule 8's notice pleading standard.  Rule 9(b) requires that details *of the defendant's fraud*, not the plaintiff's conduct, be pleaded with particularity.  Defendants object that Plaintiffs have not set forth precisely how many times they have purchased Defendants' products and precisely how they used the products.  (DB at 21-22.)  However, Defendants point to no authority holding that such allegations are necessary to survive a motion to dismiss.  The Connecticut, New Jersey, and Illinois consumer protection statutes, as interpreted by the courts, unequivocally do not require a

---

[8] *See supra* note 1 for additional discussion on why Defendants' usage argument fails.

plaintiff to enumerate superfluous details such as the number of purchases, or to detail their use of the misrepresented product, to state a claim, because such extraneous information does not constitute part of the fraud alleged.  *See Lentini v. Fidelity Nat. Title Ins. Co. of N.Y.*, 479 F. Supp. 2d 292, 298 (D. Conn. 2007) ("Where allegations of fraud are made [in a CUTPA claim], they must (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent."); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 104 (D.N.J. 2011) ("[T]he law does not require specificity just for specificity's sake.  [. . .]  In other words, to satisfy the specificity requirement of [Rule 9(b)] the pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss."); *Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*, 2013 WL 1337303, at *3 (N.D. Ill. Mar. 29, 2013) ("Rule 9(b), read in conjunction with Rule 8, requires that the plaintiff plead the time, place and contents of the purported fraud.").

Alternatively, even if Defendants' argument that Rule 9(b) requires particularity regarding Plaintiffs' purchases and use of Defendants' products is correct, which it is not, Plaintiffs' purchase and use allegations more than satisfy that heightened pleading standard.  In addition to setting forth the specific misrepresentations and omissions Defendants made with respect to the products in question and explaining why they are false, each Plaintiff identified the product(s) she purchased, why she purchased the product(s), the location(s) from which she purchased the product(s), the approximate date(s) on which she purchased the product(s), the purchase price(s), and the nature of the Plaintiff's use of the product(s).  (*See, e.g.*, ¶ 21 (Plaintiff DiMuro purchased Defendants' Repairwear Intensive Night Cream from a Macy's at the

14

Westfield Shopping Town Mall in Milford, Connecticut and on the Clinique website in November-December 2010 for full retail price, for her own personal use); *see also* ¶ 22 (Plaintiff Ohayon); ¶ 23 (Plaintiff Stein).)  These specific purchase- and use-related allegations suffice to "inject precision or some measure of substantiation" into the claim asserted.  *Frederico*, 507 F.3d at 200.  Defendants' objection to the sufficiency of these allegations seeks to impose pleading requirements on the CUTPA, NJCFA, and ICFA that simply do not exist.

### 2.  *Plaintiffs Sufficiently Identify the Statements That Deceived Them*

Plaintiffs have identified the affirmative statements and omissions of material fact that deceived them as required under Rule 9(b).  Defendants contend that Plaintiffs have not alleged that they "personally saw even one of these specific claims [alleged to be misleading], or that [their] decision to purchase the products was influenced by any of them."   (DB at 22.) Defendants are incorrect.  As evidenced by a plain reading of the CC, each Plaintiff has alleged that she saw, read, and received Defendants' print, website, and/or point of sale statements and omissions concerning the products she purchased.  (*See* ¶¶ 21, 22, 23.)  In addition, the CC further alleges that each Plaintiff has personally seen and relied upon the specific misrepresentations concerning the product(s) they purchased.  (*Id.*)  Plaintiffs DiMuro and Ohayon also alleged that they reviewed the false statements contained in Defendants' *Good Housekeeping*, *Redbook*, and *Ladies Home Journal* print ads, and that such statements further influenced their decisions to purchase Defendants' products.  (¶ 56.)  These are not conclusory allegations; rather, they put Defendants on notice of precisely what misconduct Plaintiffs charge against them.  *Frederico*, 507 F.3d at 200.  Again, Defendants' objection, which demands "specificity just for specificity's sake," *Smajlaj*, 782 F. Supp. 2d at 104, is not grounded in Rule 9(b)'s pleading requirement, and simply ignores the well-pleaded allegations in the CC.

### 3. *Plaintiffs Allege Facts Sufficient to Show Defendants' Statements Were False and Misleading*

Plaintiffs allege that Defendants' marketing statements for its Repairwear Products are false and misleading because they use pseudo-scientific language that promises "repair," and that, if true, would render the products drugs, subject to regulation, rather than cosmetics. (*See, e.g.*, ¶ 32.) The core of Plaintiffs' unfair, deceptive, and fraud-based allegations lies, therefore, in Defendants' campaign of deceptively overselling the efficacy of its products. That the products are not classified and regulated as drugs is itself substantial evidence of the falsity of Defendants' statements. Furthermore, Plaintiffs have alleged that Defendants' accelerated product cycle – in which Defendants systematically discontinue purportedly effective products purportedly based on patented formulae proven to repair the skin, reduce wrinkles, etc., replacing them with new products making yet bolder efficacy claims – supports Plaintiffs' falsity allegations. (*See, e.g.*, ¶¶ 46-50.) Additionally, Plaintiffs have alleged that the products they purchased *did not in fact deliver the de-aging results promised* by Defendants, (*see, e.g.*, ¶ 70), and further that the Repairwear Products cannot provide the promised results for anyone (*see, e.g.*, ¶¶ 43, 65, 71). It is unclear how any additional factual allegations of this nature would serve the purposes of Rule 9(b); Defendants are thoroughly advised as to why Plaintiffs claim the statements and omissions set forth in the CC were false and misleading.

### D. Defendants' Misrepresentations are Statements of Fact

Trapped by the false and misleading nature of their own statements about the products' efficacy, Defendants attempt to evade liability for their illegal conduct by downplaying those statements as mere unreliable bluster and inactionable puffery.[9] (DB at 26.) While it is true that

---

[9] Plaintiffs included Defendants' "fountain of youth" language as used in ¶ 2 of the CC because Defendants actually claim that one of their other Clinique-branded products – Youth Surge Night

16

Defendants' statements are, in fact, overblown and unjustifiable, the scope and content of those statements far exceed the puffery safe harbor where Defendants, *ex post facto*, desperately try to cabin them.   Defendants' entire argument on this point,[10] however, misconstrues the legal standard for puffery and misapplies it to the facts of this case.   When a false or misleading statement that is otherwise too vague to merit a reasonable consumer's reliance is uttered in a context that provides it with an objectively verifiable meaning, it is actionable.   *See State v. Moody's Corp.*, 2012 WL 2149408, at *7 (Conn. Super. Ct. May 10, 2012) (finding defendant's representations about its own independence were not puffery where context could reasonably lead consumers to believe that it was doing more than it was to protect its objectivity); *Hammer v. Vital Pharms., Inc.*, 2012 WL 1018842, at *8 (D.N.J. Mar. 26, 2012) (finding defendant's "use of the term 'certified by science,' transforms a subjective statement that might otherwise be considered puffery . . . , into something that appears both specific and measurable."); *Selbst v. McDonald's Corp.*, 2005 WL 2319936, at *16 (N.D. Ill. Sept. 21, 2005) (finding that purported puffing statements must be "examin[ed] . . . collectively in the context in which they were made," for purposes of determining actionability).

In their brief, Defendants abstract their statements from their actual contexts to suggest, wrongly, that certain phrases (*e.g.*, "De-Aging," "Defy gravity") were uttered with no surrounding indicia of verifiable fact.   For example, Defendants argue that their description of

Age Decelerating Moisturizer – has "youth conserving agents" that are "quite like a fountain of youth."   While this term was clearly never meant to be a basis for Plaintiffs' claims here, it does illustrate the lengths to which Defendants will go to deceive consumers about the efficacy of their products.

[10] Plaintiffs note that Defendants' limit their puffery arguments to only a small subset of the false and misleading statements in the CC, and therefore admit that many of their statements in the CC are actionable.

Repairwear Products as "De-Aging" constitutes "obvious puffery."  (DB at 26.)   However, unlike the Defendants, the CC places this pseudo-scientific term in its proper context: Defendants state that, "[d]e-aging powerhouses work to repair and help slow visible aging 24/7." (¶ 12.)  This is not meaningless bluster; it is a concrete, affirmative statement that any reasonable consumer would understand as a fact (although it is untrue) that the Repairwear Products will both repair past damage and slow visible future aging.  Similarly, Defendants argue that their statement, "[s]kin's future is brighter," constitutes puffery.  (DB at 26.)  But in context, this statement is concrete and specific, because the full sentence reads:  "[a]nd skin's future is brighter because antioxidants impede future damage," and it appears in a bullet list under the heading, "Research results."  (¶ 29.)  The language, "skin's future is brighter," thereby acquires a specific meaning that any reasonable consumer would understand as a fact (*i.e.*, that the product will protect against future damage, although, again, it is untrue).

Defendants also mistakenly claim that "Defy gravity" constitutes puffery.  (DB at 26.)  In fact that phrase appears in the following statement:  "Firm, lift contours.  With formulas that help empower skin to 'defy' gravity by helping rebuild firming natural collagen.  Skin appears smoother, more lifted." (¶ 60 (truncated in ¶¶ 29, 65, 86, 93).)  Defendants do not dispute that the remainder of the statement constitutes an actionable statement of fact, and for good reason:  it is an obviously factual assertion about a product's capacity to firm skin, lift facial contours, and rebuild collagen.  By inserting the phrase "defy gravity" into that statement, Defendants have transformed that phrase into a verifiable statement of fact on which reasonable consumers rely. *See Hammer*, 2012 WL 1018842, at *8.

Defendants also incorrectly contend that the phrases, "[f]orgive the past, protect the future," and "[a] second chance for every skin," constitute puffery.  (DB at 26.)  These two

18

phrases appear in a single ad, reproduced at ¶ 53.  The full copy is:

> Now Clinique says, forgive the past, protect the future.  A serum
> that helps visibly repair UV damage, improves skin's texture, and
> smoothes eye-area lines and wrinkles.  The difference will astound
> you.   See 63% of the visible wrinkle reducing power of a
> dermatological laser procedure.  Now a second chance for every
> skin.  Repairwear Laser Focus from Clinique.

There can be no question that, in context, the whole statement takes on the appearance of an

objective factual assertion:  Defendants compare the product's wrinkle-reducing efficacy to a

"dermatological laser procedure," even quantifying the exact results the product purports to offer

(63%), and specifically describe the product's ability to "repair UV damage," "improve skin's

texture," and "smoothe[] eye-area lines and wrinkles."   All of these points are verifiable and,

thus, Defendants' attempt to parse a few words out of the entire statement fails.

Finally, the "second chance for every skin" language reappears in Defendants' in-store

brochure reproduced at ¶ 60.  The quoted language appears on the cover and is accompanied by

detailed representations about product efficacy (*e.g.*, "In 4 weeks, see obvious reduction in

wrinkles and improved texture from sun damage.  At 12 weeks, see 63% of the wrinkle-reducing

power of a dermatological laser procedure.").  Thus, Defendants transform this otherwise vague

statement into something that Defendants claim is specific and measurable, and therefore

actionable.

### E.  Plaintiffs Allege That Defendants Omitted Material Facts

Plaintiffs allege that, in addition to their affirmative misrepresentations about the

products, Defendants also omitted material facts.  (¶ 67.)  Defendants argue that, under CUTPA,

they had no duty to Plaintiffs to disclose the omitted facts.[11]  (DB at 27.)  Defendants are wrong.

---

[11] Defendants concede that neither NJCFA nor ICFA requires a duty to disclose as a condition to
stating an omissions-based claim.

They acquired such a duty to disclose the omitted facts (no Repairwear Product provides unique benefits; "Real Before and After" images are not typical of consumer results; no Repairwear ingredient can de-age skin) by virtue of their affirmative misrepresentations on those same topics, as well as express and implied warranties.  While the "general rule" is that "silence" cannot give rise to a CUTPA action, "[a] duty to disclose will be imposed . . . on a party insofar as he voluntarily makes disclosure."  *Glazer v. Dress Barn, Inc.*, 873 A.2d 929, 961 (Conn. 2005).  By deciding to make affirmative statements regarding the products' efficacy, Defendants became obligated to provide complete and truthful efficacy information.  *See Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp.*, 717 A.2d 77, 106 (Conn. 1998) (finding express and implied warranties gave rise to "duty not to conceal information within [defendant's] knowledge").

Defendants argue that Plaintiffs' omission claims under NJCFA and ICFA must be dismissed because Plaintiffs have not pleaded facts suggesting Defendants knew the facts they are alleged to have concealed.  (DB at 27.)  Under Rule 9(b), knowledge "may be alleged generally."  Moreover, where "[i]nformation that might allow a more particularized pleading is exclusively in defendants' possession," Rule 9(b) permits "further particulars to be obtained by discovery."  *Stephenson v. Hartford Life & Annuity Ins. Co.*, 2004 WL 2260616, at *6 (N.D. Ill. Oct. 1, 2004) (citing *Emery v. Am. Gen. Fin.*, 134 F.3d 1321, 1323 (7th Cir. 1998)); *see also In re Craftmatic Sec. Litig.*, 890 F.2d 628, 645 (3d Cir. 1989) (observing that, "[p]articularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs," and that courts "relax[]" application of Rule 9(b) "when factual information is peculiarly within the defendant's knowledge or control").  Here, Plaintiffs have alleged that they "intend to prove, through expert testimony and through information they

believe will be revealed in discovery, that [Defendants'] advertising and marketing for the Repairwear Products . . . is profit driven and contains efficacy promises that the products simply cannot and do not deliver." (¶ 71.) Thus, to the extent necessary, Plaintiffs are entitled to rely on this "exception," *In re Craftmatic*, 890 F.2d at 645, with respect to their omissions-based NJCFA and ICFA claims.

Aware of this, Defendants mischaracterize Plaintiffs' allegation at ¶ 71. Plaintiffs there allege that Defendants' purported supporting research – "clinical data, studies, and surveys" – "is part and parcel of the false, misleading, and/or deceptive advertising" complained of, but that this "research" does not form the basis of Plaintiffs' claims. It cannot form the basis of Plaintiffs' claims because this research is proprietary, non-public, and exclusively in Defendants' possession. Thus, Defendants are incorrect to assert that Plaintiffs have renounced "any attempt to prove that Clinique's substantiating scientific studies are invalid." (DB at 27.) Plaintiffs plainly allege that the scientific research purportedly supporting Defendants' claims about de-aging skin, in fact, does not support those claims. (¶ 71.) Rather, as Plaintiffs allege, Defendants design their supporting research in a deceptive manner to elicit results purportedly supportive of their "de-aging" efficacy claims, when in fact they know that such results will not occur.

Defendants' remaining omissions-related arguments also fail. Defendants mischaracterize the omissions described in the CC as "an attempt to recast Clinique's alleged affirmative misrepresentations," and rely on cases involving affirmative statements cast as "omissions" of the falsity of those statements. (DB at 27.) That is not what Plaintiffs have alleged. Plaintiffs allege that Defendants omitted to state that their Repairwear Products confer no unique benefits on their users; that certain promotional images fail to disclose that the depicted results are atypical; and that no Repairwear Product ingredient can de-age skin. (¶ 67.)

21

Each of these is distinct from a simple failure to state that Defendants' affirmative advertising claims are false.

Finally, Defendants' throwaway argument that it is not liable for these omissions because "Clinique is under no obligation to promote the products of its competitors," (DB at 28), relies on the same mischaracterization and merits little discussion. The omissions set forth in ¶ 67 identify specific facts that Defendants failed to disclose, over and above the falsity of their affirmative statements about efficacy.

## IV.   PLAINTIFFS ADEQUATELY PLEAD CLAIMS FOR BREACH OF EXPRESS WARRANTY

### A.   Plaintiff Stein has Established the Existence of Privity, or an Exception Thereto, Under Illinois Law

#### 1.   *Plaintiff Stein has Alleged an Express Warranty Directly Between Defendants and Herself Because of Defendants' Statements Which Formed the Basis of the Bargain*

Plaintiff Stein has alleged, and Defendants acknowledge, that an express warranty is created based on "[a]ny affirmation of fact or promise" or "[a]ny description of the goods" that is "part of the basis of the bargain."  810 Ill. Comp. Stat. 5/2-313; *see also Omega Eng'g, Inc. v. Eastman Kodak Co.*, 30 F. Supp. 2d 226, 246 (D. Conn. 1998) ("advertisements can be part of the basis of the bargain") (cited by Defendants).

Here, Plaintiff Stein has identified the affirmations of fact or promises and the description of goods that she reviewed and relied upon in purchasing Defendants' products, (*see*, *e.g.*, ¶¶ 23, 28-29), and she has alleged that such advertisements/marketing materials were viewed at the "point of sale." (¶ 23.)  These point of sale marketing tools and advertisements, present at each counter in the various department stores, are directed to the consumer who ultimately purchases Defendants' product. (¶¶ 44-45, 57-58, 60-62.)  Such statements created an express warranty

22

directly between Defendants and Plaintiff Stein, which she can legally enforce. *See Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1030-31 (Ill. 1988) ("[W]e recognized in *Szajna* the privity of contract which exists between a manufacturer and consumer when the manufacturer makes a contractual promise (express warranty) directly to the consumer [even though] this is not the direct buyer-seller relationship."); *Ampat/Midwest, Inc. v. Ill. Tool Works, Inc.*, 1988 WL 53222, at *3-4 (N.D. Ill. May 12, 1988) (denying motion for summary judgment on breach of express warranty claim for lack of privity, court stated that "a statement which 'relates to the goods and becomes part of the basis of the bargain' *may*, under Illinois law, give rise to an express warranty *regardless* of whether the parties are in privity.  In this case, plaintiff claims that prior to its initial purchase of the Tapcons, it relied on various statements contained in sales literature and technical brochures provided to it by ITW") (emphasis in original); *see also In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007)).[12]

### 2.   Plaintiff Stein has Alleged an Express Warranty Directly Between Defendants and Herself Because She Purchased Directly From Defendants or Defendants' Agent

Defendants argue Plaintiff Stein lacks privity under Illinois law[13] because she purchased the product from a department store and not from Clinique itself.  (DB at 29.)  However, that

---

[12] That the product was allegedly sold by a third party (*i.e.* at a department store like Macy's) does not alter this conclusion because the manufacturer, in offering the warranty to the purchaser, agreed to be bound by it.  The advertising and marketing material Plaintiff Stein relied on was directed at consumers.  This was not the marketing that Defendants used to get department stores to carry the Repairwear Products.  This was consumer marketing and as such the warranty was made separate from the sale of the product itself. To hold otherwise would mean that virtually every consumer product warranty would be unenforceable unless it was sold directly by a manufacturer to a consumer.  In other words, every single item sold at Wal-Mart, Sam's Club, Costco, Best Buy and Target would not actually carry an enforceable warranty because the manufacturer has sold the product to the consumer through these mass merchandising retailers.

[13] Defendants' privity argument is limited to Illinois law.

assertion ignores the allegations of the CC, which establish that the "counters" at these high-end department stores where Plaintiffs made their purchases are staffed with people who: (1) "are specifically trained and compensated by Estee to sell its Repairwear Products"; (2) "are provided with a regularly updated reference "Sourcebook" touting the efficacy claims for each of its products; and (3) these counters are stocked with Defendants' "product displays and sales brochures." (¶¶ 14, 57-58, 60-62.) Thus, these salespeople are alleged to be employees or agents of Defendants thereby establishing privity. At this Rule 12 stage, such allegations are sufficient. *Cf. Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1024-25 (N.D. Ill. 2008) ("whether an agency relationship has been established between the parties is one of fact which is not properly resolved on a motion to dismiss); *Azimi v. Ford Motor Co.*, 977 F. Supp. 847, 851 (N.D. Ill. 1996) (holding that "a dealership may be an agent of the manufacturer" and finding that plaintiff's allegations regarding manufacturer's logo displays, training program for dealership personnel, and outsourcing of repairs were "sufficient to assert the existence of 'apparent' agency relationship" between the manufacturer and dealer).

### 3. Even If the Express Warranty is Between Defendants and the Retailers, Plaintiff Stein is a Third Party Beneficiary Entitled to Enforce the Warranty

If it is true that the "warranty" regarding the purported "de-aging" benefits of Defendants' products is between Defendants and the retailers like Macy's, Plaintiff Stein, as the actual consumer/purchaser/end user is an intended third party beneficiary of the warranty and is thus entitled to enforce it. *See Rhodes Pharmacal Co. v. Cont'l Can Co.*, 219 N.E.2d 726, 730 (Ill. App. Ct. 1966) ("It is not essential to the third person's right to enforce a contract made for his benefit that he be expressly named in the contract if he is otherwise sufficiently described or designated, and he may *even be one of a class of persons* if the class is sufficiently indicated.").

### B.   Plaintiffs Have Satisfied Pre-Suit Notice Requirements

#### 1.   *Pre-Suit Notice Was Provided to Defendants*

Despite Defendants' assertion otherwise, pre-suit notice (the "Notice") was sent to Defendants on behalf of a nationwide class prior to the filing of this lawsuit.  (*See* Exhibit A to the Declaration of Caroline F. Bartlett ("Bartlett Decl.")).  In particular, pursuant to Conn. Gen. Stat. Ann. §42a-2-607, counsel for Plaintiff DiMuro sent the Notice to Defendants on December 12, 2012.  (*Id.*)  The Notice detailed the issues raised in this action, including the specific products being challenged and the advertising/marketing claims that were considered to be false and misleading.  (*Id.*)  The Notice advised Defendants that Plaintiff DiMuro, and all other members of a nationwide class, intended to file legal actions under the state consumer fraud and warranty provisions listed therein.  Thus, Defendants were provided with actual pre-suit notice prior to the filing of the initial complaint.[14]

#### 2.   *Defendants Have Actual Knowledge of the Breach of Warranty Because They Knew the Repairwear Products Could Not Provide the Results Claimed*

In addition to actual notice, the element of pre-suit notice also is satisfied where the defendant has actual knowledge of the defect of the particular product.[15]  In this case, Plaintiffs have alleged that, despite their multifaceted advertising campaign and numerous representations

---

[14] There is a legitimate question as to whether the pre-suit notice requirement even applies to Defendants here.  Defendants have argued that Plaintiff Stein is not in privity with the Defendants because she did not purchase the product directly from Clinique; rather, she purchased it from Macy's.  Given that position, Defendants would not be a "seller" of any product such that notice is required to be given to them.  *See* 810 Ill. Comp. Stat. 5/2-607(3)(a); Conn. Gen. Stat. Ann. § 42a-2-607(3)(a) ("Section 2–607(3)(a) of the Uniform Commercial Code provides that a buyer must within a reasonable time after he discovers or should have discovered any breach ***notify the seller*** of breach or be barred from any remedy.").

[15] It is unclear whether notice is actually required under Connecticut law.  *See Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 817 (Conn. 1981).

about the "de-aging" efficacy of their products, Defendants knew that none of their products can

achieve the results they claim.  (*See, e.g.*, ¶¶ 5, 6, 8.)  Such allegations are more than sufficient to

satisfy the notice requirement under Illinois and Connecticut law.  *Cf. Stella v. LVMH Perfumes*

*& Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 837 (N.D. Ill. 2008) ("Direct notice is not required

when (1) the seller has actual knowledge of the defect of the particular product . . .  Counts II and

III allege that 'LVMH knew or should have known that the concerned lipstick products did not

meet the capabilities as represented and marketed.'  This is enough to fit the claim under the first

identified exception to the direct notice requirement."); *Stelco Indus., Inc. v. Cohen*, 438 A.2d

759, 761 (Conn. 1980) ("The standard by which notice is measured for the purposes of § 42a-2-

607(4) is not as rigorous a standard as that which governs notice of rejection under §§ 42a-2-602

and 42a-2-605.").[16]

### C.    Plaintiffs Have Alleged the Advertisements That Formed the Basis of the Bargain, Thereby Creating an Express Warranty

Defendants' argument that Plaintiffs have not pleaded "that they even saw any of these

specific representations prior to purchase" is based on nothing more than a gross misreading (or

non-reading) of the allegations of the CC.  The CC specifically identifies each Plaintiff and

alleges that each Plaintiff "saw, read, and received" the advertisements/statements that formed

---

[16] Defendants' cited cases are clearly distinguishable.  *Microsoft Corp. v. Logical Choice Computers, Inc.*, 2000 WL 1038143, at *4 (N.D. Ill. July 24, 2000) involved a plaintiff who was "not a typical consumer, but rather a merchant buyer" asserting an infringement claim where "notice is particularly important . . . because the UCC allows the seller to exercise its option to demand that the buyer turn control of the litigation, including settlement, to him."  *Benchmark Bldg. Corp. v. United Builders Supply Co., Inc.*, 1992 WL 124139, at *1 (Conn. Super. Ct. May 29, 1992) involved "defective construction products."  Here, this is not a product defect case such that whether any particular consumer's product is defective is at issue because all products may not have the defect or the defect can be cured thereby making pre-suit notice beneficial.  Instead, Plaintiffs assert fraudulent misrepresentations related to the very nature and purpose of all the products: de-aging.  There can be no attempt to cure here because Defendants cannot replace or repair the Repairwear products.  Thus, requiring notice would represent the extreme elevation of form at the expense not just of substance but of common sense.

the basis of the bargain.   For each Plaintiff, the CC identifies where she saw the advertisements/statements, (*see*, *e.g.*, ¶¶ 21-23), and identifies examples of such advertisements/statements that contain the same statements seen by Plaintiffs, (*see, e.g.*, ¶ 21 ("Repairwear Intensive Night Cream is 'guaranteed' to 'rebuild[] stores of firming natural collagen'; 'work[] all night to help block and mend the look of lines and wrinkles'; and provide other guaranteed 'de-aging' results")).   Plaintiffs also identify other specific "affirmations of fact or promise" and "description of goods" that created the express warranty.  (¶¶ 28-29.)  *See Weng v. Allison*, 678 N.E.2d 1254, 1256 (Ill. App. Ct. 1997) ("Affirmations of fact made during the bargain are presumed to be part of the basis of the bargain unless clear, affirmative proof otherwise is shown.  It is not necessary, therefore, for the buyer to show reasonable reliance upon the seller's affirmations in order to make the affirmations part of the basis of the bargain. Section 2-313, Uniform Commercial Code Comment, comment 3, at 169 (S.H.A. 810 ILCS 5/2-313 (Michie 1994)).").

### D.   Plaintiffs Have Adequately Alleged a Breach of the Express Warranty, Causation, and Damages

Again, Defendants' summary assertion that the existence of a breach of the express warranty and the element of causation has not been sufficiently alleged completely ignores the allegations of the CC.  (*See*, *e.g.*, ¶ 21 (Plaintiff DiMuro alleges that she paid "full retail price" for the Repairwear Intensive Night Cream, that the claims about the product's efficacy were "false, misleading, and/or deceptive," that she "relied on those material mis-statements in making her decision to purchase" the product, and that she "would not have purchased [the product] had Estee not made such false, misleading, and/or deceptive claims"); ¶ 70 ("although Plaintiffs [] paid for these unique and specific Repairwear benefits, they did not get what they

paid for.  Instead, the products . . .  could not, and did not, provide the promised 'de-aging' results.").).  Defendants' citation to *Johnson v. Sears Roebuck & Co.*, 2007 WL 2491897 (D. Conn. Aug. 29, 2007) does not advance their position since *Johnson* was decided on summary judgment, and not on a motion to dismiss, and because the plaintiff in *Johnson* "provided no expert testimony or other evidence that would support her claim that the furnace was malfunctioning and that it caused her basement to flood." *Id*. at *5.  As alleged here, "Plaintiffs intend to prove, through expert testimony and through information they believe will be revealed in discovery, that Estee's advertising and marketing for the Repairwear Products . . .  contains efficacy promises that the products simply cannot and do not deliver." (¶ 71.)

## V.   PLAINTIFFS HAVE PROPERLY ALLEGED CLAIMS FOR BREACH OF IMPLIED WARRANTY

### A.   Legal Standard

A warranty of merchantability is implied in every contract for the sale of goods.  *See Criscuolo v. Mauro Motors, Inc.*, 754 A.2d 810, 816 (Conn. App. Ct. 2000); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 705 (D.N.J. 2011); *Midland Supply Co., Inc. v. Ehret Plumbing & Heating Co.*, 440 N.E.2d 153, 156 (Ill. App. Ct. 1982).  To succeed on a breach of implied warranty of merchantability claim "a plaintiff must establish (1) a sale of goods, (2) that the seller of the goods is a merchant with respect to those goods, and (3) that the goods were not of merchantable quality." *Smith v. Boehringer Ingelheim Pharm., Inc.*, 886 F. Supp. 2d 911, 929 (S.D. Ill. 2012); *see also Criscuolo*, 754 A.2d at 816; *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 458 (D.N.J. 2012).

Connecticut, Illinois, and New Jersey are among the states that have adopted U.C.C.  §2-314 – Implied  Warranty;  Merchantability;  Usage of  Trade.   "The  implied  warranty of merchantability holds merchants liable to the extent their goods fail to conform to the ordinary

purpose for which they are supposed to be used." *Criscuolo*, 754 A.2d at 816; *see also Boehringer Ingelheim Pharm., Inc.*, 886 F. Supp. 2d at 929; *Montich*, 849 F. Supp. 2d at 458. To establish a breach of the implied warranty of fitness for a particular purpose, a plaintiff must show that the good purchased from a defendant was defective. *See Kuzian v. Electrolux Home Prods., Inc.*, 2013 WL 1314722, at *7 (D.N.J. Mar. 28, 2013); *Scanlon v. Food Crafts, Inc.*, 193 A.2d 610, 611-12 (Conn. Cir. Ct. 1963); *Rubin v. Marshall Field & Co.*, 597 N.E.2d 688, 691 (Ill. App. Ct. 1992). Claims for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose "may coexist, and where this is shown, recovery may be based on either one." *Crotty v. Shartenberg's-New Haven, Inc.*, 162 A.2d 513, 515 (Conn. 1960); *see also Nelson v. Xacta 3000 Inc.*, 2010 WL 1931251, *8 (D.N.J. May 12, 2010) (holding that the plaintiffs stated a claim for breach of implied warranty after alleging the same defect for the ordinary and intended purpose of the product at issue).

### 1. Defendants' Repairwear Products Are Not Fit for Their Ordinary Purpose[17]

Plaintiffs have properly alleged a breach of the implied warranty of merchantability. The CC alleges that the ordinary purpose of the Repairwear Products is to provide the "de-aging" benefits promised by Defendants. (¶¶ 148-149.) Plaintiffs further allege that the Repairwear Products do not "de-age" the skin as promised. (¶¶ 10, 32, 71, 140.) The CC supports this allegation by attesting to Plaintiffs' complete dissatisfaction with the Repairwear Products (¶¶ 21-23) and by displaying an expansive record of false, misleading and/or deceptive representations made by Defendants regarding the efficacy of its Repairwear Products. (¶¶ 10-

---

[17] Defendants claim all three Plaintiffs' breach of implied warranty of fitness for the products' ordinary purpose claims fail, but only cite to New Jersey law to support their arguments. (*See* DB at 32-33.) Despite the fact that Defendants only rely on New Jersey law, the law of each state is addressed herein.

12, 29, 32, 36-45.)    Plaintiffs would not have bought the Repairwear Products if the advertisements were not false.  (*Id.*)  Therefore, the Repairwear Products are not merchantable because they failed, and continue to fail, to provide the promised de-aging benefits.  *See, e.g*, *Montich*, 849 F. Supp. 2d at 458; *Jorden v. Chris' Auto Clinic,* 2012 WL 3089381, at *2 (Conn. Super. Ct. June 28, 2012) (The defect in the plaintiff's vehicle "rendered the vehicle unfit for the ordinary purpose for which it was purchased."); *Smith*, 886 F. Supp. 2d at 930 (the good's deficiencies raised by the plaintiff "go to the issue of merchantability and are sufficient for surviving [defendant's] motion to dismiss."). [18]

   *Montich* and *Nelson* are instructive.  The *Montich* court explained that "[b]ecause merchantability only requires 'that the thing sold [be] reasonably fit for the *general* purpose for which it is manufactured and sold,' the Court finds it appropriate to consider the "general" purpose of the washing machines."  *Montich*, 849 F. Supp. 2d at 458 (emphasis in original).  The court held that

> [t]he general purpose of the product at issue here, the Miele

---

[18] Defendants cite to *Hughes v. Panasonic Consumer Electrs. Co.*, 2011 WL 2976839 (D.N.J. July 21, 2011) and *Ferrari v. Am. Honda Motor Co., Inc.*, 2009 WL 211702 (N.J. Super. Ct. App. Div. Jan. 30, 2009), arguing that the implied warranty of merchantability only provides for a "minimum level of quality" and that courts will consider the general purpose for which the product is being sold rather than specifically advertised claims.  (DB at 31.)  *Hughes* and *Ferrari* are inapposite and based on an entirely different factual predicate from the instant matter. In *Hughes*, the plaintiffs alleged that their televisions were prone to severe deterioration of picture quality.  *Hughes*, 2011 WL 2976839, at *1.  The court noted that the complaint alleged the majority of the plaintiffs still used their televisions and, therefore, found "nothing in the Amended Complaint to allege that the Televisions were not fit for their ordinary purpose of creating and maintaining images on-screen for viewers at the time of purchase."  *Id*. at *23.  In *Ferrari*, the plaintiff failed to state a breach of implied warranty where his car, which allegedly made an abnormal tapping noise, had "never broken down, never failed to start, and had never left plaintiff stranded because it failed to operate."  *Ferrari*, 2009 WL 211702, at *3.  Here, unlike *Hughes* and *Ferrari*, the CC alleges that the Repairwear Products never satisfied its ordinary or particular purpose of providing a de-aging benefit, (¶¶ 10, 32, 70, 140, 149, 150), which is the only reason Plaintiffs purchased them, (¶¶ 148-149).

> washing machine, is to wash and clean dirty clothes.  The plaintiff
> alleges that her Miele washing machine leaves clothes smelling
> like mold or mildew and that the machine itself smells like mold or
> mildew.  The Court is satisfied . . . Plaintiff has stated a claim for
> breach of implied warranty.

*Id.*  Similarly, in *Nelson*, the plaintiffs' factual allegations, which "directly addresse[d] the representations made by [defendant] on the [product's] packaging . . .  state[d] a plausible claim that the [product] d[id] not work as advertised on the product packaging."  *Nelson*, 2010 WL 1931251, at *8.

Here, Plaintiffs claim that the ordinary purpose of the Repairwear Products is to provide a "de-aging" benefit.  (¶¶ 148-149.)   In fact, Defendants claim the same thing based on their advertising campaigns which saturate media markets promoting the primary purpose of the Repairwear Products as providing a "de-aging" results.  (¶¶ 28-62.)  The Complaint alleges that the Repairwear Products fail in fulfilling their ordinary purpose.  (¶¶ 148-149.)  Thus, because the ordinary purpose of the Repairwear Products is to facilitate "de-aging," Plaintiffs have stated a claim for breach of implied warranty.[19]

Plaintiffs have also properly alleged that Defendants breached the implied warranty of fitness of a particular purpose.  Plaintiffs allege Defendants developed, manufactured, advertised, marketed and sold the Repairwear Products and specifically represented that the Repairwear Products would deliver specified "de-aging" benefits.  (¶¶ 140, 143, 146-47.)  Plaintiffs further

---

[19] Defendants rely on *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529 (D.N.J. 2011), arguing that the implied warranty of merchantability does not impose a requirement that goods fulfill the expectation of the buyer.  (DB at 31.)  *Lieberson* does not establish the broad standard Defendants suggest and is distinguishable because the court found that "Bedtime Moisture Wash and Bedtime Lotion" had an ordinary purpose as a wash and lotion as described in the product name.  *Id*. at 542.  Here, the Repairwear Products' individual product names do not contain words in their titles that can plausibly be considered a primary descriptor or ordinary purpose as they do not "repair" the skin.

31

allege that Defendants breached their implied warranties in connection with the sale of Repairwear Products, as the products do not and cannot provide the "de-aging" benefits promised and that Plaintiffs and the other members of the proposed classes were injured as a result. (¶¶ 149, 151.) Such allegations state a claim for breach of the implied warranty for a particular purpose. *See Kuzian*, 2013 WL 1314722, at *7; *Nelson*, 2010 WL 1931251, at *8 (holding that the plaintiffs stated a claim for breach of implied warranty after alleging the same defect for the ordinary and intended purpose of the product at issue).

In *Kuzian*, the plaintiffs alleged that "their ordinary use of the refrigerator to properly store perishable food was precluded by the consequences of the defective ice makers." *Kuzian*, 2013 WL 1314722, at *7. Looking in tandem at both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose, the court stated that "[t]hese two warranties 'protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose.'" *Id*. at *7. The court then held the plaintiffs' "allegations adequately state[d] claims for breach of the implied warranties of merchantability and fitness for a particular purchase, and those claims may proceed." *Id*. Here, as in *Kuzian*, the Repairwear Products are not merchantable because they do not fit their ordinary or particular purpose of providing the proffered de-aging benefits. (¶¶ 148-49.)

Defendants' argument that the products had "at least some positive value" because at least two Plaintiffs were repeat purchasers is unavailing. (DB at 32.) Though courts generally consider goods to be fit for their ordinary purpose if they provide a minimum level of quality, continued use of a good is not absolute proof that the good is merchantable (particularly at the motion to dismiss stage). *See Shoop v. DaimlerChrysler Corp.*, 864 N.E.2d 785, 792 (Ill. App. Ct. 2007) (the court held a good unmerchantable where plaintiff used it for years and resold at

32

more than its fair market value because "plaintiff's complaint specifically eliminated any abnormal uses and secondary causes as the source of the defects" in the good).[20]

Finally, Defendants' unsupported argument that the "de-aging" purpose cannot serve as the bases for both the implied warranty claim for a "particular purpose" and "ordinary purpose" must fail.  Plaintiffs sufficiently allege that the "purpose" of the product is to "de-age" the skin. Because the product fails to do so, it is not fit for either the "particular" or "ordinary" purpose. Claims for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose "may coexist, and where this is shown, recovery may be based on either one."  *Crotty*, 162 A.2d at 515; *see also Nelson*, 2010 WL 1931251, at *8 (holding that the plaintiffs stated a claim for breach of implied warranty after alleging the same defect for the ordinary and intended purpose of the product at issue).

## VI. PLAINTIFFS ADEQUATELY ALLEGE A CAUSE OF ACTION FOR UNJUST ENRICHMENT

### A. Pleading Standard and Legal Standard

The Rule 8(a) notice pleading standard applies to an unjust enrichment claim.  *See In re Vivendi Universal, S.A. Sec., Litig.*, 2004 WL 876050, at *2 (S.D.N.Y. Apr. 22, 2004) (applying Rule 9(b) to fraud claims and Rule 8(a) to unjust enrichment claims); *Zurich Capital Markets Inc. v. Coglianese*, 332 F. Supp. 2d 1087, 1119-20 (N.D. Ill. 2004) (same).[21]  A plaintiff "must

---

[20] Defendants' reliance on *Suddreth v. Mercedes-Benz, LLC*, 2011 WL 5240965, at *5 (D.N.J. Oct. 31, 2011) is misplaced.  Unlike in *Suddreth*, where the Court based its analysis on the purported "useful life" of the disputed component (a balance shaft gear), here, the Complaint alleges that the Repairwear products were never "useful," in that they were unable to provide the de-aging benefits Defendants promised.

[21] Defendants stretch the holdings of their cited cases too far.  (DB at 35.)  These cases merely state that where a plaintiff fails to state its fraud-based claim with Rule 9(b) specificity, the derivative unjust enrichment claim also must be dismissed.  *See Crete v. Resort Condos. Int'l,*

prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 649 A.2d 518, 522 (Conn. 1994); *see also HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 678-79 (Ill. 1989) ("a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."); *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (a plaintiff must establish that "defendant received a benefit and that retention of that benefit without payment would be unjust"). Defendants assert that Plaintiffs have failed to adequately allege their unjust enrichment claim under the laws of Connecticut, Illinois and New Jersey because Plaintiffs have failed to allege a direct relationship with and/or an expectation of remuneration from Defendants. (DB at 33-34.) Unjust enrichment is a flexible equitable doctrine, and Plaintiffs have sufficiently pleaded the elements of their cause of action under a denial-of-the-benefit-of-the-bargain theory of unjust enrichment.

### B. Plaintiffs Allege Defendants Were Unjustly Benefited When Plaintiffs Were Deprived of the Benefit of Their Bargain as a Result of Defendants' Product Misrepresentations

Unjust enrichment is an equitable doctrine that provides "*a broad and flexible remedy*" where "in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Hartford Whalers*, 649 A.2d at 521; *see also Palmeri v. LG Electrs. USA, Inc.*, 2008 WL 2945985, at *6 (D.N.J. July 30, 2008) (recognizing

---

*LLC*, 2011 WL 666039, at *5 (D.N.J. Feb. 14, 2011); *Nieto v. Perdue Farms, Inc.*, 2010 WL 1031691, at *5 (N.D. Ill. Mar. 17, 2010). Here, where Plaintiffs adequately plead the underlying conduct (*i.e.*, Defendants' dissemination of false and misleading representations regarding the Repairwear Products) with Rule 9(b) particularity, Rule 8(a) applies to the Court's analysis as to whether Plaintiffs have stated an unjust enrichment claim.

34

unjust enrichment as an equitable remedy); *HPI*, 545 N.E.2d at 678-79 (same).  The Supreme Court counsels that flexibility is one of the fundamental principles of equity:  "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case.  Flexibility rather than rigidity has distinguished it." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944).  As a result, unjust enrichment is a fact-driven doctrine: "All the facts of each case must be examined to determine whether the circumstances render it just or unjust, equitable or inequitable, conscionable or unconscionable, to apply the doctrine." *Gagne v. Vaccaro*, 766 A.2d 416, 428 (Conn. 2001).

Contrary to the flexible nature of equity, Defendants conflate these basic equitable principles in their attempt to pigeonhole Plaintiffs' unjust enrichment claims into an inapposite factual paradigm.  Defendants claim that Connecticut and New Jersey law require a plaintiff to plead "the *defendant* unjustly failed to pay the plaintiff for the benefits conferred" and conclude that the unjust enrichment doctrine "is not meant for a situation such as here."  (DB at 34.)[22] This is simply false.  Connecticut and New Jersey courts uphold unjust enrichment claims where it is alleged that as a result of the defendant's false and misleading product representations the consumer is deprived of the benefit of its bargain to the consumer's detriment and the defendant's unjust benefit.[23]

---

[22] Defendants concede that Illinois law does not require Plaintiff Stein to allege she had an expectation of remuneration, but instead argue her claim fails because she has not pleaded that she used the Repairware Products.  (DB at 34.)  To the contrary, Plaintiff Stein alleged that she "purchased Repairware Intensive Eye Cream . . . for personal use." (¶ 23.)

[23] Defendants' cited cases, *Paradigm Contract Mgmt. Co., Inc. v. St. Paul Fire and Marine Ins. Co.*, 2011 WL 4348132 (D. Conn. Sept. 16, 2011), and *Parker v. Colgate-Palmolive Co.*, 2003 WL 22205061 (Conn. Super. Ct. Aug. 8, 2003), (DB at 34), are easily distinguishable.  In *Paradigm*, the court granted the motion to strike the unjust enrichment claim because the plaintiff had a remedy in contract, 2011 WL 4348132, at *7, and thus the case is inapposite.

For example, in *Ziegler v. Sony Corp. of America*, 849 A.2d 19 (Conn. Super. Ct. 2004), where the plaintiff alleged the defendants were unjustly enriched because consumers did not get the benefit of their bargain when they paid for DVD players alleged to be defective, *id.* at 21, the court rejected the same argument Defendants make here, explaining:

> It is disingenuous of the defendants to argue that, because the plaintiff got a Sony DVD player, he received the benefit of his bargain when the player he got is alleged to have been defective. . . . *It is that alleged failure to deliver what the plaintiff believed he would get in return for his payment that operated to his detriment.*

*Id.* at 25; *see also Agrella v. Ford Motor Co*., 2005 WL 6148051, at *19 (Conn. Super. Ct. July 25, 2005) (rejecting argument that Ford received no benefit from its sale of the Explorer, where product was falsely advertised to hide known defects, and denying motion to strike unjust enrichment claim); *Stefan v. P.J. Kids, LLC*, 2005 WL 834208, at *3 (Conn. Super. Ct. Mar. 1, 2005) (denying motion to strike unjust enrichment claim).

Under New Jersey case law, a plaintiff must demonstrate it "expected remuneration from the defendant, *or if the true facts were known to plaintiff, he would have expected remuneration from defendant*, at the time the benefit was conferred." *Callano v. Oakwood Park Homes Corp*., 219 A.2d 332, 334-35 (N.J. Super. Ct. App. Div. 1966). For example, in *Pauly v. Houlihan's Restaurants, Inc*., 2012 WL 6652754, at *7 (D.N.J. Dec. 20, 2012), the court held that the plaintiff adequately stated a claim for unjust enrichment because it would be unjust for the defendant to retain the benefit of the plaintiff's payment for drinks billed at an excessive price

---

Furthermore, the case is factually distinguishable because the claim did not involve consumers who did not receive the benefit of their bargain as a result of a defendant's product misrepresentations. In *Parker*, the plaintiff purchased a teeth whitening product to whiten his artificial teeth. 2003 WL 22205061, at *1. While the product failed to whiten his artificial teeth, the court found that the plaintiff could not have expected to receive anything from the defendant because the packaging specifically stated that the product would not whiten artificial teeth. *Id.*, at *1, *6. Although this fact scenario involves a consumer, the product representations, unlike here, were not false or misleading on the face of the complaint.

36

that the plaintiff would not have purchased had he known the truth (*i.e.* that he was paying too much and/or more than other customers in the restaurant).  *See also Agostino v. Quest Diagnostics, Inc.*, 2011 WL 5410667, at *6 (D.N.J. Nov. 3, 2011) (upholding unjust enrichment claim stating "it is considered unjust enrichment 'to permit the recipient of money paid under mistake of fact to keep it . . . .'").[24]

Here, each Plaintiff alleges that:  (1) Defendants benefited in that they received a premium or the purchase price from each Plaintiff (¶¶ 69, 155-56), who purchased the Repairwear Products in reliance on Defendants' representations that the Repairwear Products would achieve specific "de-aging" results (¶¶ 21-23); (2) Defendants failed to confer the promised benefit on each Plaintiff in exchange for the premium or the purchase price (¶ 156), in that the Repairwear Products do not and cannot perform as represented (*see, e.g.*, ¶¶ 4-10), and (3) Defendants' failure to provide a product that performs as represented was to Plaintiffs' detriment (¶¶ 70, 72, 156).  (*See generally* ¶¶ 63-72, 154-56.)  Each Plaintiff also alleges she would not have purchased the Repairwear Products or paid a premium for the Repairwear Products but for Defendants' representations.  (¶¶ 21-23, 69.)  Plaintiffs did not receive the benefit of the bargain for the premium they paid, since they relied upon Defendants' representations in deciding to purchase the Repairwear Products that do not perform as represented.  Allowing Defendants to retain the premium or purchase price paid would be unjust.

---

[24]  Defendants cite *Agostino*, 2011 WL 5410667 and *Mycone Dental Supply Co., Inc. v. Creative Nail Design, Inc.*, 2012 WL 3599368 (D.N.J. Aug. 17, 2012) to support their argument that Plaintiffs have failed to state claims for unjust enrichment.  (DB at 34.)  *Agostino* was decided at summary judgment, thus a different standard applied.  Moreover *Agostino* supports Plaintiffs' claim because the court upheld the unjust enrichment claim.  2011 WL 5410667, at *7.  *Mycone* is factually inapposite because, as a trademark/patent infringement action, it does not address either the consumer-manufacturer relationship or the "mistake" prong in the expectation of remuneration requirement.

*See, e.g.*, *Ziegler,* 849 A.2d at 25; *Pauly,* 2012 WL 6652754, at *7; *Haught v. Motorola Mobility, Inc.,* 2012 WL 3643831, at *4, *9 (N.D. Ill. Aug. 23, 2012).  Thus, Plaintiffs plainly have stated unjust enrichment claims under the laws of Connecticut, New Jersey, and Illinois.

### C.  Privity Is Not Required

Defendants argue that an unjust enrichment claim requires a direct relationship between a plaintiff and a defendant and that Plaintiffs Ohayon and Stein, who purchased the Repairwear Products from third-party department stores, cannot not meet this requirement.  (DB at 33-34.) Defendants are wrong that a direct relationship between each Plaintiff and Defendants is required under New Jersey and Illinois law.

While New Jersey law does require some relationship between the plaintiff and defendant, this requirement "does not . . . preclude a consumer from ever bringing an unjust enrichment claim against a manufacturer simply because the consumer purchased the product at issue from a third-party retailer."  *Stewart v. Beam Global Spirits Wine, Inc.*, 877 F. Supp. 2d 192, 200 (D.N.J. 2012) (distinguishing contrary case law).  The *Stewart* court held that it "would be inequitable to suggest that the Beam Defendants can insulate themselves from liability on an unjust enrichment claim simply by asserting that retail sales by liquor stores cut off any relationship between the consumers and the manufacturer."  *Id.*;[25] *see also Lynch v. Tropicana Prods., Inc.*, 2013 WL 2645050, at *10 (D.N.J. June 12, 2013) (following *Stewart* and denying motion to dismiss unjust enrichment claim where defendant Pepsi-Co denied consumers the

---

[25] Defendants' reliance on *Cooper v. Samsung Elecs. Am., Inc.*, 2008 WL 4513924 (D.N.J. Sept. 30, 2008), and *Hammer*, *supra*, 2012 WL 1018842, (DB at 33-34), is unavailing.  The *Stewart* court acknowledged the *Cooper* court's holding and rejected it based on its reading of New Jersey state court precedent.  *Stewart*, 877 F. Supp. 2d at 197-202.  *Hammer* simply follows *Cooper* with no analysis of state law precedent.  *Hammer*, 2012 WL 1018842, at *10.  Having extensively discussed and interpreted state law, *Stewart* is more persuasive.

benefit of their bargain through product misrepresentations, despite sales of product by third party retailers).  Illinois law does not require a contrary result.  *See, e.g.*, *Haught*, 2012 WL 3643831, at *4, *9 (upholding unjust enrichment claim where plaintiff purchased deceptively advertised smart phone through a third party vendor); *Jamison v. Summer Infant (USA), Inc*., 778 F. Supp. 2d 900, 904, 914 (N.D. Ill. 2011) (upholding unjust enrichment claim where plaintiff purchased deceptively advertised baby video monitor through third party retailer). [26]

Like the defendants in *Stewart*, Defendants here are alleged "to be something other than [an] innocent third part[y]."  877 F. Supp. 2d at 200.  Indeed, Plaintiffs allege that, like the Beam defendants in *Stewart*, Defendants launched a fraudulent nationwide advertising and marketing scheme on everything from product labels and point-of-sale marketing materials, to Internet and print publications, (¶¶ 4, 51-62), for the purpose of generating retail sales and profits, (¶¶ 3, 6, 7, 14, 15, 64, 68.)  Where it is more than plausible that those retails sales could have the effect of increasing the amount of wholesale sales to Defendants, Plaintiffs have alleged a sufficient relationship between Plaintiffs and Defendants to survive a motion to dismiss.

## VII.   DISMISSAL WITH PREJUDICE IS UNWARRANTED

Like the rest of the arguments in their brief, Defendants' contention that the CC should be dismissed with prejudice fails because it misapplies the case law and ignores entire sections of the CC.  As an initial matter, Plaintiffs note that Defendants' hyperbole regarding other cases and Plaintiffs' Counsel is not only inappropriate and unprofessional but also has no relevance to their argument for dismissal with prejudice.  Considering the factors that actually bear on whether Plaintiffs should be able to re-plead (in the unlikely event that the Court grants the Motion to

---

[26] Defendants' cited case, *Springfield Heating & Air Conditioning, Inc. v. 3947-55 King Drive at Oakwood, LLC*, 901 N.E.2d 978 (Ill. App. Ct. 2009), (DB at 33-34), is factually inapposite, where it involved a subcontractor who sued a real estate owner who failed to pay a general contractor.  *Id.* at 980, 986.

Dismiss) shows that dismissal with prejudice is not appropriate at this juncture.

First, as a professional courtesy, Plaintiffs' Counsel advised Defense Counsel regarding the voluntary dismissals of the Illinois and New Jersey actions and the consolidation of the three actions before this Court.   Bartlett Decl. ¶ 2.   Defendants' repeated references to the CC as "Amended" and suggesting that Plaintiffs have "repeatedly failed to properly plead their claims" is disingenuous, because the sufficiency of the allegations has never been adjudicated.   Second, the one case Defendants rely on, *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, an unpublished opinion that is entirely *dicta* (the court itself notes that the case is moot, or if not moot, pointless), even recognizes that the "fundamental ground for all opinions which deny leave to amend is lack of diligence," which Defendants here have failed to argue.   Instead, Defendants' arguments are simply a regurgitation of their prior points about Plaintiffs' purported failure to provide sufficient facts to support their claims, which, as discussed *supra*, fails upon a review of the actual allegations in the CC.   As the overwhelming majority of the case law dictates, there is simply no basis for dismissal with prejudice at this juncture and Plaintiffs should be permitted to re-plead, if necessary.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss should be denied.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiffs and the Proposed
Classes

By:    /s/ *Caroline F. Bartlett*
        CAROLINE F. BARTLETT
        James E. Cecchi
        Zachary S. Bower
        5 Becker Farm Road
        Roseland, New Jersey 07068

40

(973) 994-1700

DATED:  July 12, 2013

Of Counsel:

| | |
|---|---|
| David R. Scott (ct 16080) | Jay W. Eisenhofer |
| Joseph P. Guglielmo (ct27481) | Robert G. Eisler |
| Erin Green Comite (ct24886) | GRANT & EISENHOFER P.A. |
| SCOTT + SCOTT, | 123 Justison Street |
| ATTORNEYS AT LAW, LLP | Wilmington, Delaware 19801 |
| 156 South Main Street | (302) 622-7000 |
| P.O. Box 192 | |
| Colchester, CT 06415 | Adam J. Levitt |
| (860) 537-5537 | GRANT & EISENHOFER P.A. |
| | 30 North LaSalle Street, Suite 1200 |
| Judy Scolnick | Chicago, Illinois  60602 |
| SCOTT + SCOTT, | (312) 214-0000 |
| ATTORNEYS AT LAW, LLP | |
| The Chrysler Building | Stephen A. Weiss |
| 405 Lexington Avenue, 40th Floor | Jonathan Shub |
| New York, NY  10174 | Scott A. George |
| (212) 223-6444 | SEEGER WEISS LLP |
| | 77 Water Street |
| Paul M. Weiss | New York, New York 10005 |
| Richard J. Burke | (212) 584-0700 |
| COMPLEX LITIGATION GROUP, LLC | |
| 513 Central Avenue, Suite 300 | Joe R. Whatley, Jr. |
| Highland Park, Illinois 60035 | Patrick J. Sheehan |
| (847) 433-4500 | WHATLEY KALLAS |
| | 380 Madison Avenue, 23rd Floor |
| Mark Gardy | New York, New York 10017 |
| Jennifer Sarnelli | (212) 447-7077 |
| Meagan Farmer | |
| GARDY & NOTIS, LLP | |
| 501 Fifth Avenue | |
| New York, New York 10018 | |
| (212) 905-0509 | |

*Attorneys for Plaintiffs and the Proposed Classes*